**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :     **Chapter 11** |
| **WALTER INVESTMENT MANAGEMENT** | : |
| **CORP.,** | :     **Case No. 17-13446 (JLG)** |
| | : |
|          Debtor.[1] | : |
| | : |

----------------------------------------------------------------x

## DEBTOR'S MEMORANDUM OF LAW AND RESPONSE TO OBJECTIONS IN SUPPORT OF (I) APPROVAL OF (A) DISCLOSURE STATEMENT, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORM OF BALLOTS, AND (II) CONFIRMATION OF AMENDED PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF WALTER INVESTMENT MANAGEMENT CORP. AND THE AFFILIATE CO-PLAN PROPONENTS

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C.
Sunny Singh, Esq.
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtor and*
*Debtor in Possession*

Dated: January 5, 2018
       New York, New York

---

[1] The last four digits of the Debtor's federal tax identification number are 0486. The location of the Debtor's corporate headquarters is 1100 Virginia Drive, Suite 100, Fort Washington, PA 19034.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTS ...................................................................................................................9

    General Background of Chapter 11 Case and Development of Prepackaged Plan.............9

    Prepackaged Plan Solicitation..................................................................9

ARGUMENT.........................................................................................................12

I.    DEBTOR'S SOLICITATION AND VOTING PROCEDURES SHOULD
    BE APPROVED.................................................................................12

    A.    Debtor's Prepetition Solicitation Complied with Requirements of
        Bankruptcy Code Sections 1125(g) and 1126(b)...................................13

        1.    Solicitation Was Exempt From Federal and State Securities
            Registration Requirements and Proxy Rules. .............................13

        2.    Disclosure Statement Contains Adequate Information Within
            Meaning of Bankruptcy Code Section 1125(a)(1). ....................15

    B.    Solicitation of Classes Presumed to Accept Prepackaged Plan and Classes
        Deemed to Reject Prepackaged Plan is Not Required. ........................19

    C.    Debtor's Solicitation Package, Ballots, and Solicitation Procedures
        Complied with Requirements of Bankruptcy Rules 3017(d) and 3018(c)............21

        1.    Solicitation Packages...............................................23

        2.    Combined Notice and Publication Notice. .................................23

        3.    Ballots..................................................................24

    D.    Solicitation Period Was Reasonable under Bankruptcy Rule 3018(b). ...............25

    E.    Debtor's Solicitation Procedures Should be Approved under Bankruptcy
        Rule 3017(e). ..................................................................27

II.    PREPACKAGED PLAN SATISFIES BANKRUPTCY CODE SECTION
    1129 AND SHOULD BE APPROVED. ................................................27

    A.    Prepackaged Plan Satisfies Bankruptcy Code Section 1129(a)(1). ......................28

    B.    Classification of Claims and Interests Complies with Bankruptcy Code
        Section 1122. ..................................................................29

    C.    Prepackaged Plan Complies with Bankruptcy Code Section 1123(a). .................31

    D.    Prepackaged Plan Complies with Bankruptcy Code Section 1123(b)..................32

        1.    Prepackaged Plan Permissive Provisions. ..................................32

        2.    Prepackaged Plan Releases Should Be Approved. ........................34

    E.    Debtor Received Substantial Consideration to Support Approval of the
        Affiliate Guarantee Releases. ..................................................41

F.      Affiliate Guarantee Releases Are an Essential Component of Debtor's
        Prepackaged Plan. ............................................................................................43

G.      The Failure to Approve the Affiliate Guarantee Releases Could Have an
        Indirect Negative Impact on the Debtor............................................................45

H.      Court Has Subject Matter Jurisdiction Over Claims to be Enjoined by
        Affiliate Guarantee Releases. ..........................................................................46

I.      Prepackaged Plan Exculpation Provision Should Be Approved. .........................47

J.      Prepackaged Plan Satisfies Bankruptcy Code Section 1129(a)(2). ......................52

K.      Prepackaged Plan Has Been Proposed in Good Faith in Compliance with
        Bankruptcy Code Section 1129(a)(3)..................................................................52

L.      Prepackaged Plan Complies with Bankruptcy Code Section 1129(a)(4).............54

M.      Debtor Complied with Bankruptcy Code Section 1129(a)(5). ............................55

N.      Prepackaged Plan Does Not Contain Any Rate Changes. ...................................55

O.      Prepackaged Plan is in Best Interests of All Creditors of, and Equity
        Interest Holders in, the Debtor.........................................................................56

P.      Prepackaged Plan Has Been Accepted by or Is Presumed to Have Been
        Accepted by All Impaired Classes Entitled to Vote on Prepackaged Plan,
        and As to Such Classes, Requirements of Bankruptcy Code Section
        1129(a)(8) Have Been Satisfied.........................................................................59

Q.      Prepackaged Plan Provides for Payment in Full of All Allowed Priority
        Claims..............................................................................................................60

R.      Prepackaged Plan Satisfies Bankruptcy Code Section 1129(a)(10). ....................61

S.      Prepackaged Plan Is Feasible. ...........................................................................61

T.      Prepackaged Plan Complies with Bankruptcy Code Section 1129(a)(12)............63

U.      Bankruptcy Code Section 1129(a)(13) Is Satisfied. ............................................63

V.      Prepackaged Plan Satisfies "Cram Down" Requirements under
        Bankruptcy Code Section 1129(b) for Non-Accepting Classes. ..........................64

W.      Prepackaged Plan Does Not Discriminate Unfairly............................................64

X.      Prepackaged Plan Is Fair and Equitable.............................................................66

III.    REMAINING OBJECTIONS SHOULD BE OVERRULED AND
        PREPACKAGED PLAN CONFIRMED. .........................................................67

A.      Objection of the United States Trustee (ECF No. 130), dated December
        29, 2017 (the "UST Objection"). .......................................................................67

        1.      Payment of Professional Fees Pursuant to Restructuring Support
                Agreements. .........................................................................................68

        2.      Reorganized Debtor May Exclusively Object to Claims............................72

ii

IV.    CAUSE EXISTS TO WAIVE STAY OF CONFIRMATION ORDER. .........................74

CONCLUSION.......................................................................................................................75

WEIL:\96402895\1\79607.0003

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co.* v. *Chateaugay Corp.* (*In re Chateaugay Corp.*),
    89 F.3d 942 (2d Cir. 1996) ...................................................................................30

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
    526 U.S. 434 (1999) .............................................................................................56

*Cadle Co. II, Inc. v. PC Liquidation Corp.* (*In re PC Liquidation Corp.*),
    383 B.R. 856 (E.D.N.Y. 2008) ....................................................................... 15, 16

*Cartalemi v. Karta Corp.* (*In re Karta Corp.*),
    342 B.R. 45 (Bankr. S.D.N.Y. 2006) ...................................................................44

*Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*),
    416 F.3d 136 (2d Cir. 2005) .........................................................................passim

*In re Adelphia Commc'ns Corp.*,
    352 B.R. 592 (Bankr. S.D.N.Y. 2006) .................................................................16

*In re Adelphia Commc'ns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) .........................................................passim

*In re Affiliated Foods, Inc.*,
    249 B.R. 770 (Bankr. W.D. Mo. 2000) ................................................................56

*In re Almatis, B.V.*,
    Case No. 10-12308 (MG), at 7 (Bankr. S.D.N.Y. Sept. 20, 2010) .......................50

*In re Alpha Natural Resources, Inc.*,
    No. 15-33896 (KRH) (Bankr. E.D. Va. July 12, 2016).........................................71

*In re American Gilsonite Co., et al.*,
    Case No. 16-12316 (CSS), (Bankr. D. Del. Dec. 12, 2016).................................73

*In re Angelica Corp.*,
    Case No. 17-10870 (JLG)............................................................................. 36, 72

*In re Angelica Corp.*,
    Case No. 17-10870 (JLG) (Bankr. S.D.N.Y. Aug. 31, 2017) (ECF No. 544, Ex. 1)..............72

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    Case No. 07-12395 (BRL), 2007 WL 2779438 (Bankr. S.D.N.Y. Sept. 17, 2007).... 14, 37, 48

iv

*In re Basic Energy Servs., Inc., et al.,*
    Case No. 16-12320 (KJC) (Bankr. D. Del. 2016)................................................................70

*In re Basic Energy Servs. LP, LLC,*
    Case No. 16-12320 (KJC), at 25-27 (Bankr. D. Del. Dec. 9, 2016) ......................................20

*In re BearingPoint, Inc.,*
    453 B.R. 486 (Bankr. S.D.N.Y. 2011) ..................................................................................48

*In re BGI, Inc.,*
    772 F.3d 102 (2d Cir. 2014), *reh'g denied* (Aug. 8, 2014*), cert. denied sub nom. Beeman v.
    BGI Creditor's Liquidating Trust,* 136 S. Ct. 155 (2015) ......................................................15

*In re Brookstone Holdings Corp.,*
    No. 14-10752 (Bankr. D. Del. June 24, 2014) ......................................................................72

*In re Calpine Corp.,*
    Case No. 05-60200 (BRL), 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007) ...............38

*In re Cano Petroleum, Inc.,*
    Case No. 12-31549 (BJH), 2012 WL 2931107 (Bankr. N.D. Tex. July 18, 2012)................38

*In re Charter Commc'ns, Inc.,*
    Case No. 09-11435 (JMP), at 44 (Bankr. S.D.N.Y. Nov. 17, 2009)......................................50

*In re Chemtura Corp.,*
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) ............................................................ 28, 48, 52, 53

*In re Colt Holding Co., LLC,*
    No. 15-11296 (Bankr. D. Del. Dec. 16, 2015) ......................................................................72

*In re Copy Crafters Quickprint, Inc.,*
    92 B.R. 973 (Bankr. N.D.N.Y. 1988) ...................................................................................16

*In re DBSD N. Am., Inc.,*
    419 B.R. 179 (Bankr. S.D.N.Y. 2009), *aff'd*, Case No. 90–13061 (REG), 2010 WL 1223109
    (S.D.N.Y. Mar. 24, 2010), *aff'd in part, rev'd in part sub nom. DISH Network Corp. v.
    DBSD N. Am. Inc. (In re DBSD N. Am.),* 634 F.3d 79 (2d Cir. 2011) ...................... 37, 48, 50

*In re Drexel Burnham Lambert Group, Inc.,*
    138 B.R. 714 (Bankr. S.D.N.Y. 1992) ..................................................................................65

*In re Drexel Burnham Lambert Grp., Inc.,*
    138 B.R. 723 (Bankr. S.D.N.Y. 1992) ............................................................... 28, 52, 56

*In re Drexel Burnham Lambert Grp., Inc.,*
    960 F.2d 285 (2d Cir. 1992) ................................................................................................44

v

*In re Eagle Bulk Shipping Inc.*,
  Case No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 22, 2014) ................................................ 14

*In re Eastman Kodak Co.*,
  Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Aug. 23, 2013) ................................................ 50

*In re Enron Corp.*,
  No. 01-16034 (AJG), 2004 Bankr. LEXIS 2549 (Bankr. S.D.N.Y. July 15, 2004) ......... 30, 51

*In re Excel Maritime Carriers Ltd.*,
  No. 13-23060 (Bankr. S.D.N.Y. Jan. 27, 2014) .................................................................... 72

*In re Fairway Group Holdings Corp., et al.*,
  Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 8, 2016) ................................... 47, 70, 73

*In re Ferretti*,
  128 B.R. 16 (Bankr. D. N.H. 1991) ...................................................................................... 17

*In re Finlay Enters. Inc.*,
  2010 WL 6580628 ................................................................................................................ 66

*In re Genco Shipping & Trading Ltd.*,
  513 B.R. 233 (Bankr. S.D.N.Y. 2014) ........................................................... 40, 44, 45, 50

*In re Genco Shipping & Trading Ltd.*,
  No. 14-11108 (Bankr. S.D.N.Y. July 2, 2014) .................................................................... 72

*In re Granite Broad. Corp.*,
  369 B.R. 120 (Bankr. S.D.N.Y. 2007) .................................................................................. 51

*In re Halcon Resources Corp., et al.*,
  Case No. 16-11724 (BLS), at 24-25 (Bankr. D. Del. Sept. 8, 2016) .................................... 20

*In re Halcon Resources Corp., et al*,
  Case No. 16-11724 (BLS), at 54 (Bankr. D. Del. 2016) ....................................................... 70

*In re Hercules Offshore, Inc., et al.*,
  Case No. 16-11385 (KJC), at 32-33 (Bankr. D. Del. Nov. 15, 2016) .................................. 20

*In re Inversiones Alsacia S.A.*,
  No. 14-12896 (Bankr. S.D.N.Y. Dec. 4, 2014) .................................................................... 72

*In re Johns-Manville (Manville I)*,
  837 F.2d 89 (2d Cir. 1988) .................................................................................................. 36

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R.

407 (S.D.N.Y. 1986), *aff'd sub nom*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir.
1988) ...................................................................................................................................... 65

*In re Journal Register Co.*,
407 B.R. 520 (Bankr. S.D.N.Y 2009) .......................................................................... 54, 62

*In re Kent Terminal Corp.*,
166 B.R. 555 (Bankr. S.D.N.Y. 1994) ............................................................................... 28

*In re Key Energy Serv., Inc.*,
Case No. 16-12306 (BLS), at 38-39 (Bankr. D. Del. Oct. 24, 2016) .................................... 20

*In re Lear Corp.*,
Case No. 09-14326 (ALG), 2009 WL 6677955 (Bankr. S.D.N.Y. Nov. 5, 2009) ................ 38

*In re Lehman*,
508 B.R. 283 (S.D.N.Y. 2014) ...................................................................................... 69, 70

*In re Lodgenet Interactive Corporation*,
Case No. 13-10238 (SCC) (Bankr. S.D.N.Y. Mar. 7, 2013) ................................................ 14

*In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930 (Bankr. W.D. Mo. 1994) ............................................................................... 35

*In re Metro. 885 Third Ave Leasehold, LLC*,
Case No. 10-16103 (SCC), 2010 WL 6982778 (Bankr. S.D.N.Y. Dec. 22, 2010) ............... 42

*In re Momentum Mfg. Corp.*,
25 F.3d 1132 (2d Cir. 1994) ............................................................................................... 16

*In re Motors Liquidation Co.*,
447 B.R. 198 (Bankr. S.D.N.Y. 2011) ................................................................................ 37

*In re Movie Gallery, Inc.*,
No. 07-33849 (Bankr. E.D. Va. Apr. 10, 2008) .................................................................. 72

*In re MPM Silicones, LLC*,
Case No. 14-22503 (RDD), at 18, 30-31 (Bankr. S.D.N.Y. Sep. 11, 2014) .......................... 40

*In re Neff Corp.*,
Case No. 10-12610 (SCC), at 42 (Bankr. S.D.N.Y. Sept. 20, 2010) .................................... 50

*In re Penn Va. Corp.*,
No. 16-32395 (KLP) (Bankr. E.D. Va. Aug. 11, 2016) ....................................................... 71

*In re Phoenix Petroleum Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001) ........................................................................... 16, 17

WEIL:\96402895\1\79607.0003

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ............................................................52

*In re Quigley Co., Inc.*,
    676 F.3d 45 (2d Cir. 2012) ..............................................................46

*In re RCS Capital Corp.*,
    No. 16-10223 (Bankr. D. Del. May 19, 2016) ....................................71

*In re Residential Capital, LLC*,
    Case No. 12-12020 (MG), at 27-28 (Bankr. S.D.N.Y. Dec. 11, 2013)............... 40, 43, 44, 48

*In re Residential Capital, LLC*,
    Case No. 12-12020 (MG), at ¶ 291 (Bankr. S.D.N.Y. Dec. 11, 2013) ..................................48

*In re Residential Capital, LLC, et al.*,
    Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11 2013) .................................................73

*In re Resorts Int'l, Inc.*,
    145 B.R. 412 (Bankr. D.N.J. 1990).....................................................54

*In re Sabine Oil & Gas Corp.*,
    555 B.R. 180 (Bankr. S.D.N.Y. 2016), *motion to certify appeal denied*, No. 16-CV-2561
    (JGK), 2016 WL 6238616 (S.D.N.Y. Oct. 25, 2016) ...........................................................64

*In re Sabine Oil & Gas Corp.*,
    Case No. 15-11835 (SCC) (Bankr. S.D.N.Y. July 27, 2016) .................................................73

*In re Sbarro*,
    LLC, Case No. 14-10557 (MG) (Bankr. S.D.N.Y. May 19, 2014) ......................................14

*In re Scioto Valley Mortgage Co.*,
    88 B.R. 168 (Bankr. S.D. Ohio 1988) .................................................17

*In re Source Enters., Inc.*,
    Case No. 06-11707 (AJG), 2007 WL 7144778 (Bankr. S.D.N.Y. July 31, 2007) ................17

*In re Swift Energy Co., et al.*,
    Case No. 15-12670 (MFW), at 25, 38 (Bankr. D. Del. Mar. 31, 2016) ................................20

*In re Texaco Inc.*,
    84 B.R. 893 (Bankr. S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988)...................54

*In re Tidewater, Inc., et al.*,
    Case No. 17-11132 (BLS) (Bankr. D. Del. 2017).................................................70

*In re Tidewater Inc., et.al.*,
    Case No. 17-11132 (BLS), at 30-31 (Bankr. D. Del. July 17, 2017)....................................20

WEIL\96402895\1\79607.0003

*In re U.S. Truck Co.*,
47 B.R. 932 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986) ...................................62

*In re Uno Rest. Holdings Corp.*,
Case No. 10-10209 (MG), 2010 Bankr. LEXIS 2931 (Bankr. S.D.N.Y. May 11, 2010) .......58

*In re Uno Rest. Holdings Corp.*,
Case No. 10-10209 (MG), at 38 (Bankr. S.D.N.Y. July 6, 2010) (ECF No. 559)..................50

*In re WorldCom Inc.*,
Case No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .........49, 65

*In re Young Broad. Inc.*,
430 B.R. 99 (Bankr. S.D.N.Y. 2010) .................................................................................28

*JPMorgan Chase Bank N.A. v. Charter Commc'ns Operating, LLC* (*In re Charter Commc'ns*),
419 B.R. 221 (Bankr. S.D.N.Y. 2009),
appeal dismissed, 449 B.R. 14 (S.D.N.Y. 2011)................................................ 28, 37, 42, 58

*Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
843 F.2d 636 (2d Cir. 1988) .......................................................................................28, 61

*Koelbl v. Glessing* (*In re Koelbl*),
751 F.2d 137 (2d Cir. 1984) ...............................................................................................52

*Meckel v. Cont'l Res. Co.*,
758 F.2d 811 (2d Cir. 1985) ...............................................................................................71

*Menard-Sanford v. Mabey* (*In re A.H. Robins Co., Inc.*),
880 F.2d 694 (4th Cir. 1989) .............................................................................................16

*Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*),
761 F.2d 1374 (9th Cir. 1985) ............................................................................................62

*Rosenberg v. XO Commc'ns, Inc.* (*In re XO Commc'ns, Inc.*),
330 B.R. 394 (Bankr. S.D.N.Y. 2005) ...............................................................................40

*Texas Extrusion Corp. v. Lockheed Corp.* (*In re Texas Extrusion Corp.*),
844 F.2d 1142 (5th Cir. 1988) ............................................................................................16

*United States v. Energy Res. Co.*,
495 U.S. 545 (1990) ...........................................................................................................61

**Statutes**

11 U.S.C. 541(a)(1)................................................................................................................36

11 U.S.C. §§ 105, 361, 362, 363, 364, 507 (A) ........................................................................70

ix

11 U.S.C. §§ 105(a), 362(a) ............................................................................................ 35, 41

11 U.S.C. § 507(a)(2) ........................................................................................................ 63

11 U.S.C. § 1123(a)(8) ...................................................................................................... 31

11 U.S.C. § 1125(g) ..................................................................................................... 13, 26

11 U.S.C. § 1129(a)(14) .................................................................................................... 27

11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii) .............................................................................. 66

15 U.S.C. § 77d(a)(2) ........................................................................................................ 14

Bankruptcy Code ........................................................................................................ passim

11 U.S.C. § 365 ................................................................................................................. 32

11 U.S.C. § 502(a) .............................................................................................................. 3

11 U.S.C. § 503(b) .................................................................................................. 60, 70, 71

11 U.S.C. § 506 ................................................................................................................. 29

11 U.S.C. § 507 ................................................................................................................. 63

11 U.S.C. § 507(a) ................................................................................................. 29, 59, 60

11 U.S.C. §§ 1114, 1129(a)(13) ....................................................................................... 63

11 U.S.C. § 1122 ................................................................................................... 28, 30, 65

11 U.S.C. §§ 1122, 1123 ........................................................................................... 28, 51

11 U.S.C. § 1122(a) .............................................................................................. 28, 29, 30

11 U.S.C. § 1123(a) .......................................................................................................... 31

11 U.S.C. § 1123(b)(5) ...................................................................................................... 33

11 U.S.C. § 1123(b)(6) ................................................................................................ 33, 70

11 U.S.C. § 1123(d) .......................................................................................................... 33

11 U.S.C. § 1125 ..................................................................................................... 17, 19, 52

11 U.S.C. §§ 1125, 1126 ............................................................................................ 51, 52

11 U.S.C. § 1125(a)(1) ...................................................................................................... 15

WEIL:\96402895\1\79607.0003

11 U.S.C. § 1125(e) ............................................................................................51

11 U.S.C. §§ 1125(g), 1126(b) ...................................................................12, 13, 15

11 U.S.C. § 1126 ...............................................................................................10

11 U.S.C. § 1126(b) ..................................................................................13, 15, 25

11 U.S.C. § 1126(b)(1) .......................................................................................14

11 U.S.C. § 1126(f) ...................................................................................10, 19, 59

11 U.S.C. § 1126(f), (g) ................................................................................23, 24

11 U.S.C. § 1126(g) ...............................................................................10, 19, 20, 59

11 U.S.C. § 1128(a)(8) .......................................................................................59

11 U.S.C. § 1129 ..........................................................................................passim

11 U.S.C. § 1129(a) ....................................................................................27, 28, 52

11 U.S.C. § 1129(a)(1) ...................................................................................28, 51

11 U.S.C. § 1129(a)(2) ...................................................................................51, 52

11 U.S.C. § 1129(a)(3) ...................................................................................52, 53

11 U.S.C. § 1129(a)(4) .......................................................................................54

11 U.S.C. § 1129(a)(5) ...................................................................................32, 55

11 U.S.C. § 1129(a)(6) .......................................................................................55

11 U.S.C. § 1129(a)(7) ...............................................................................55, 56, 58

11 U.S.C. § 1129(a)(8) .......................................................................................59

11 U.S.C. § 1129(a)(9) ...............................................................................59, 60, 61

11 U.S.C. § 1129(a)(10) ......................................................................................61

11 U.S.C. § 1129(a)(11) ..................................................................................61, 63

11 U.S.C. § 1129(a)(12) ......................................................................................63

11 U.S.C. § 1129(a)(13) ..................................................................................63, 64

11 U.S.C. § 1129(a)(15) ......................................................................................27

WEIL:\96402895\1\79607.0003

11 U.S.C. § 1129(a)(16) ................................................................................................27

11 U.S.C. § 1129(b) ......................................................................................... 59, 64, 66

11 U.S.C. § 1145 ............................................................................................................33

11 U.S.C. § 1145(b)(1) ..................................................................................................33

Regulation D of the Securities Act of 1933 ..................................................................13

11 U.S.C. §§ 507, 1129(a)(12) ......................................................................................63

11 U.S.C. § 1123(b)(3)(A) ......................................................................................32, 36

11 U.S.C. § 1123(b)(3)(B) .............................................................................................32

11 U.S.C. § 1124 .......................................................................................................31, 32

11 U.S.C. §§ 1125, 1126(b) .............................................................................. 1, 8, 27, 75

31 U.S.C. § 3717 ............................................................................................................63

Securities Act of 1933 ....................................................................................................33

Securities Exchange Act of 1934 ...................................................................................14

26 U.S.C. § 382(l)(5) .....................................................................................................33

## Other Authorities

Fed. R. Bankr. P. 2002(l) ...............................................................................................22

Fed. R. Bankr. P. 3017 ...................................................................................................21

Fed. R. Bankr. P. 3017(d) ...............................................................................21, 23, 24

Fed. R. Bankr. P. 3017(e) ...............................................................................................27

Fed. R. Bankr. P. 3018 ...................................................................................................26

Fed. R. Bankr. P. 3018(b) ..............................................................................................25

Fed. R. Bankr. P. 3018(c) ...............................................................................................22

Fed. R. Bankr. P. 3020(e) ...............................................................................................74

Fed. R. Bankr. P. 3020(e) ...............................................................................................74

Fed. R. Bankr. P. 9019 ...................................................................................................73

WEIL:\96402895\1\79607.0003

Fed. R. Bankr. P. 3017, 3018...........................................................................................8, 75

Fed. R. Bankr. P. 3017(d), 3018(c)..........................................................................21, 24, 25

Fed. R. Bankr. P. 3017(d), (e) and 3018(b), (c)...................................................................27

Fed. R. Bankr. P. 3017(d), (e)..............................................................................................12

Fed. R. Bankr. P. 2002(l)......................................................................................................22

Fed. R. Bankr. P. 3017(d)...............................................................................................21, 22

Fed. R. Bankr. P. 3017(e)......................................................................................................27

Fed. R. Bankr. P. 3018(b)......................................................................................................25

Fed. R. Bankr. P. 3018(c)......................................................................................................22

Fed. R. Bankr. P. 3020(e)......................................................................................................74

Fed. R. Bankr. P. 3020(e)......................................................................................................74

General Order M-454...............................................................................................................8

H.R. Rep. No. 95-595, *reprinted in* 1978 U.S.C.C.A.N. 5963 (1977).........................16

H.R. Rep. No. 95-595 (1977) ........................................................................................28, 51

Local Rule 3017-1..................................................................................................................23

Local Rule 3018-2....................................................................................................................8

Rule 1.8(h) of the New York Rules of Professional Conduct ...............................................3

Local Rule 1007-2....................................................................................................................9

Local Rules 3017-1, 3018-1 ....................................................................................................8

Local Rules 3017-1, 3018-1, 3018-2 ..............................................................................12, 75

S. Rep. No. 95-989 (1978)....................................................................................................28

WEIL:\96402895\1\79607.0003

Walter Investment Management Corp., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**" and, together with its non-debtor affiliates, "**Walter**" or the "**Company**"),[2] submits this Memorandum of Law (the "**Memorandum**"), in support of the Debtor's request for:

- approval of the (a) Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents (ECF No. 12) (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), (b) solicitation of votes and voting procedures (the "**Solicitation**"), and (c) Solicitation Package (as defined herein), including a form of ballot (collectively, the "**Solicitation Procedures**"), and

- confirmation of the *Amended Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents*, dated January 5, 2018 filed contemporaneously herewith (as the same may be amended, modified, supplemented, or restated, the "**Prepackaged Plan**"), including the Plan Supplement, dated December 22, 2017 (ECF No. 121)  (as the same may be amended, modified, supplemented, or restated, the "**Plan Supplement**"), pursuant to section 1129 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

The Prepackaged Plan has received overwhelming acceptance by all three voting classes. Specifically, of the creditors who voted in such classes, the Prepackaged Plan was accepted as follows:

| Class | % Amount Accepted | % Number Accepting |
|---|---|---|
| Class 4 (Term Loan Claims) | 100% | 100% |
| Class 5 (Senior Notes Claims) | 99.24% | 96.84% |
| Class 6 (Convertible Notes Claims) | 99.99% | 96.67% |

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Prepackaged Plan, the Disclosure Statement, or the Scheduling Motion (each as defined herein).

The remarkable support for the reorganization contemplated by the Prepackaged Plan by virtually every single creditor who voted speaks volumes as to its fairness and the good faith efforts that culminated in its filing. As demonstrated herein, the Prepackaged Plan satisfies all of the confirmation requirements of section 1129 of the Bankruptcy Code and achieves the objectives of chapter 11. Accordingly, the Prepackaged Plan should be confirmed.

Only two objections to the Prepackaged Plan have been filed: (i) a limited objection filed by Richard Worley, individually, and as a court-appointed lead plaintiff (the "**Class Plaintiffs**") (ECF No. 128), and (ii) an objection filed by the United States Trustee for Region 2 (the "**U.S. Trustee**") (ECF No. 130). The Debtor believes the limited objection of the Class Plaintiffs is addressed and should be resolved through language contained in the Proposed Confirmation Order (as defined herein) confirming that direct claims of the Class Plaintiffs are not being released under the Prepackaged Plan. *See* Proposed Confirmation Order, ¶ 31.

The Debtor and the U.S. Trustee have engaged in discussions in an effort to resolve certain of the U.S. Trustee's objections to the Prepackaged Plan. Simultaneous with the filing of this Memorandum, the Debtor filed an amended Prepackaged Plan with the Court. Among other things, the Prepackaged Plan incorporates the following amendments which the Debtor understands has or will resolve the U.S. Trustee's objections related to such issues:

- Section 5.14(a) of the Prepackaged Plan was amended to remove any references to the Reorganized Debtor's assumption of key employee retention agreements. Instead, the Debtor has agreed to assign the obligations under the key employee retention agreements to its non-Debtor affiliate, Ditech (as defined herein), with such obligations becoming exclusively obligations of Ditech.

- Section 5.14(b) of the Prepackaged Plan was amended to clarify that the New Board will *independently consider and approve* the Management Incentive Plan within sixty (60) days of the Effective Date.

- The Proposed Confirmation Order also incorporates the following language with respect to the key employee retention agreements and the Management Incentive Plan:

> Notwithstanding anything set forth in the Prepackaged Plan, the Plan Supplement, or in this Order to the contrary, this Order shall not authorize, or be deemed to authorize, the Debtor (or the Reorganized Debtor, as applicable) to enter into, or assume, key employee retention agreements or the Management Incentive Plan and confirmation of the Prepackaged Plan shall not be deemed to be approval of the key employee retention agreements or the Management Incentive Plan in any respect; provided that the foregoing shall not (i) prejudice or be deemed to prejudice the Reorganized Debtor's rights to consider or enter into the Employee Arrangements or the Management Incentive Plan after the Effective Date, or (ii) modify section 5.14(b) of the Prepackaged Plan.

*See* Proposed Confirmation Order, ¶ 35.

- Section 10.6(d) of the Prepackaged Plan was amended to clarify that nothing in the Prepackaged Plan limits the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

- Section 10.6(b) of the Prepackaged Plan has been amended to remove releases by creditors who abstained from voting or creditors that voted to reject the Prepackaged Plan but did not opt out of the releases in the Prepackaged Plan.

- Section 10.6(d) of the Prepackaged Plan has been amended to clarify that Claims of the Debtor or any of its affiliates, on the one hand, against the Debtor or any of its affiliates, on the other hand, are not being released under the Prepackaged Plan.

In addition, at the time of filing this Memorandum, the U.S. Trustee was considering whether the following changes to the Prepackaged Plan adequately addressed and resolved the U.S. Trustee's objections to the exculpation of non-estate fiduciaries under the Prepackaged Plan and Section 7.2 of the Plan:

- The definition of "Exculpated Parties" was amended to clarify that the "Related Parties" to be exculpated will only include the persons and Entities who acted on the behalf of an Exculpated Party in connection with the Prepackaged Plan with respect to the matters for which exculpation is being provided under the Prepackaged Plan.

- Section 7.2 of the Prepackaged Plan was amended to clarify that any party in interest's rights to object to proofs of Claim filed with the Bankruptcy Court in accordance with Section 502(a) of the Bankruptcy Code are preserved.

WEIL:\96402895\1\79607.0003

Accordingly, the Debtor believes that the only remaining contested issues contained in the U.S. Trustee's objection are:

- the Court lacks subject matter jurisdiction over the releases and exculpations provided in the Prepackaged Plan insofar as those provisions cover third parties;

- the Estate Release, Consensual Releases, Affiliate Guarantee Releases, and Exculpation Provision must meet the standards set forth in *Metromedia*; and

- the payment of professional fees pursuant to the Restructuring Support Agreements cannot be approved unless fee applications are filed with the Court.

For the reasons stated in this Memorandum, to the extent not resolved, the U.S. Trustee's objections should be overruled.

The Prepackaged Plan provides for a balance sheet restructuring and a substantial reduction of the Company's outstanding corporate debt by approximately $800 million through a combination of cancellation of debt ($531 million) and principal paydowns ($275 million) and extending the maturity of its Term Loan through June 2022. The Prepackaged Plan also provides for the payment in full, either upon the Effective Date or in the ordinary course, of general unsecured claims against the Debtor. Indeed, under the Prepackaged Plan, the Consenting Term Lenders, the Consenting Senior Noteholders, and the Convertible Noteholders have agreed to compromise their claims to allow all of the Debtor's other creditors to remain unimpaired under the Prepackaged Plan and such claims will be satisfied in full in the ordinary course of business. The reorganization transaction embodied in the Prepackaged Plan will substantially de-lever the Company's balance sheet and set the Company on a path to emerge from bankruptcy as a leaner, healthier enterprise.

The Prepackaged Plan is the product of months of robust, good-faith negotiations between the Debtor and an informal ad hoc group of holders of Term Loans (the "**Consenting Term Lenders**") and an informal ad hoc group of holders of Senior Notes (the "**Consenting**

WEIL:\96402895\1\79607.0003

Senior Noteholders", and together with the Consenting Term Lenders, the "**Consenting Creditors**").  Following extensive negotiations with the Consenting Creditors, on October 20, 2017, the Debtor entered into (i) an Amended and Restated Restructuring Support Agreement with Term Lenders holding approximately 48% of the aggregate outstanding principal amount of the Term Loan Claims (the "**Term Lender RSA**"), and (ii) a Restructuring Support Agreement with Senior Noteholders holding more than 50% of the aggregate outstanding principal amount of the Senior Notes Claims (the "**Senior Notes RSA**", and together with the Term Lender RSA, the "**Restructuring Support Agreements**").  The Restructuring Support Agreements became effective when holders of more than 66 2/3% in the aggregate of Senior Notes and Terms Loans became party to the applicable Restructuring Support Agreement (the "**Support Effective Date**").  The Support Effective Date occurred on October 25, 2017, and, as of that date, Consenting Term Lenders collectively holding more than 95% of all Term Loans Claims and Consenting Senior Noteholders collectively holding more than 85% of all Senior Notes Claims, committed to support the restructuring.  In consultation with the Consenting Term Lenders and Consenting Senior Noteholders, the Debtor developed the Prepackaged Plan.

Prior to the Commencement Date, the Debtor commenced solicitation of votes to accept or reject the Prepackaged Plan.  The solicitation period concluded on November 28, 2017.  As stated above, the Prepackaged Plan has received the overwhelming support of all voting classes.  Specifically, the Prepackaged Plan received support from (i) 100% in amount and 100% in number of voting Term Lenders, (ii) 99.24% in amount and 96.84% in number of voting Senior Noteholders, and (iii) 99.99% in amount and 96.67% in number of voting Convertible Noteholders.

The Prepackaged Plan provides for a reorganization transaction, pursuant to which:

WEIL:\96402895\1\79607.0003

- The Prepetition Credit Agreement will be amended and restated to extend the maturity thereunder from December 2020 to June 2022. In exchange, the Company will make certain principal payments to the Term Lenders based on an agreed amortization schedule.

- In exchange for the cancellation of the Senior Notes, holders of Senior Notes Claims will receive their respective *pro rata* share of (i) the New Second Lien Notes in the face amount of $250 million, which will be secured on a second-lien basis by the assets that will secure the Amended and Restated Credit Facility Agreement of the Debtor and its affiliates that are currently guarantors under the Prepetition Credit Agreement (*i.e.* the Affiliate Co-Plan Proponents),[3] and (ii) the Mandatorily Convertible Preferred Stock having an aggregate liquidation preference of $100 million and which is convertible into 73% of the total number of issued outstanding shares of New Common Stock as of the Effective Date (subject to dilution by shares of New Common Stock issued or issuable pursuant to the Management Incentive Plan and by shares of New Common Stock issued after the Effective Date, including shares of New Common Stock issuable pursuant to the New Warrants (if issued)).

- The remaining portion of the value that would have been distributable to holders of Allowed Senior Notes Claims will instead, and with the consent of the holders of Senior Notes Claims, be distributed to junior constituencies. Specifically, the New Common Stock, which represents the remaining 27% of the reorganized equity value of the Debtor, and the New Warrants will be equally distributed to holders of Allowed Convertible Notes Claims and Allowed Existing Equity Interests.

- All DIP Claims, Other Priority Claims, Priority Tax Claims, Other Secured Claims, Revolving Loan Claims, and General Unsecured Claims (as each of those terms are defined in the Prepackaged Plan) are unimpaired by the Prepackaged Plan and will be satisfied in full in the ordinary course of business. This includes, but is not limited to, the claims of contract counterparties, GSEs,[4] warehouse lenders, and employees.

The effect of the restructuring on the Debtor's funded indebtedness is summarized as follows:

---

[3] Section 1.3 of the Prepackaged Plan defines "**Affiliate Co-Plan Proponents**" as Ditech, DF Insurance Agency LLC, Green Tree Credit LLC, Green Tree Credit Solutions LLC, Green Tree Insurance Agency of Nevada, Inc., Green Tree Investment Holdings III LLC, Walter Management Holding Company LLC, Green Tree Servicing Corp., Mortgage Asset Systems, LLC, REO Management Solutions, LLC, RMS, and Walter Reverse Acquisition LLC.

[4] As used herein, "**Fannie Mae**" means the Federal National Mortgage Association, and "**Freddie Mac**" means the Federal Home Loan Mortgage Corporation. Fannie Mae and Freddie Mac are government-sponsored enterprises (each a "**GSE**" and collectively the "**GSEs**") chartered by Congress that buy and securitize mortgage loans originated by mortgage lenders, enabling the lenders quick access to liquidity fueled by the market demand for residential mortgage backed securities.

WEIL:\96402895\1\79607.0003

| Pre-Reorganization | | Post-Reorganization | |
|---|---|---|---|
| Term Loan Claims | $1,395 million | Term Loan Claims | $1,120 million |
| Senior Notes Claims: | $538.7 million | New Second Lien Notes | $250.0 million |
| Convertible Notes Claims | $242.5 million | Convertible Notes Claims (Cancelled) | 13.5% of reorganized equity; and 50% of the New Warrants |
| **Total Pre-Reorganization Funded Debt** | **$2,176.2 million** | **Total Post-Reorganization Funded Debt** | **$1,370 million** |

In addition, in connection with the Prepackaged Plan, the Company secured a commitment to refinance all of its prepetition warehouse advance, buy-out, and similar financing facilities by entering into DIP Warehouse Facilities, guaranteed by the Debtor, which provide up to $1.9 billion to Ditech Financial, LLC ("**Ditech**") and Reverse Mortgage Solutions, Inc. ("**RMS**"), the primary operating subsidiaries of the Company. The DIP Warehouse Facilities will be converted to Exit Warehouse Facilities upon the Effective Date of the Prepackaged Plan. The Exit Warehouse Facilities will support the Company's operational needs upon the Debtor's emergence from chapter 11. The Reorganized Debtor will guarantee the obligations of its subsidiaries relating to forward and reverse origination activities.

The DIP Warehouse Facilities provide, and upon conversion, the Exit Warehouse Facilities will continue to provide, the Company the flexibility to use the commitment amount in the manner that best suits its capital needs. Specifically, under the DIP Warehouse Facilities, (i) up to $750 million will be available to fund Ditech's origination business, (ii) up to $800 million will be available to RMS, and (iii) up to $550 million will be available to finance the advance receivables related to Ditech's servicing activities. Under the Exit Warehouse Facilities, the financing capacity available to Ditech's origination will increase to $1 billion and the maximum capacity available to RMS and Ditech's servicing activities will remain at $800 million and $550

7

million, respectively.  In addition, the DIP Lenders and the Exit Warehouse Facilities Lenders have agreed to provide Ditech up to $1.35 billion in trading capacity required by Ditech to hedge its interest rate exposure with respect to the loans in Ditech's origination pipeline, as well as those loans that will be subject to repurchase obligations with the DIP Warehouse Facilities lenders prior to being securitized.

In support of the entry of the Proposed Confirmation Order (as defined below), the Debtor submits the Declaration of David Coles (the "**Coles Declaration**") and the Declaration of James Page (the "**Page Declaration**"), filed contemporaneously herewith.  For the reasons set forth herein and in the Coles Declaration and the Page Declaration, the Disclosure Statement and the Solicitation Procedures satisfy the requirements of sections 1125 and 1126(b) of the Bankruptcy Code, Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 3017-1 and 3018-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), and Local Rule 3018-2, the Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York, as amended, effective December 1, 2009 (as adopted by General Order M-454) ("**Local Rule 3018-2**" or the "**Guidelines**"). Furthermore, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.  Accordingly, the Debtor respectfully submits that the Disclosure Statement and the Solicitation Procedures should be approved and the Prepackaged Plan should be confirmed.  A proposed order approving the Disclosure Statement and Solicitation Procedures and confirming the Prepackaged Plan is annexed hereto as **<u>Exhibit A</u>** (the "**Proposed Confirmation Order**").

## FACTS

### General Background of Chapter 11 Case and Development of Prepackaged Plan

The Debtor respectfully refers the Court to the Disclosure Statement, the Scheduling Motion, the Prepackaged Plan, the First Day Declaration,[5] the Coles Declaration, the Page Declaration, the *Declaration of Christina Pullo of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents*, filed on November 30, 2017 (ECF No. 13) (the "**Voting Certification**"), and the Affidavit of Service of Solicitation Materials (ECF No. 40) (the "**Solicitation Affidavit**") (collectively, the "**Supporting Declarations**"), and the record of this chapter 11 case for an overview of the Debtor and other relevant facts that may bear on approval of the Disclosure Statement and Solicitation Procedures and confirmation of the Prepackaged Plan. The Supporting Declarations and any testimony and other declarations that may be adduced or submitted at or in connection with the Combined Hearing (as defined herein) are incorporated herein as if fully and at length set forth. Particularly relevant facts will be referenced as appropriate in connection with the argument portion of this Memorandum.

### Prepackaged Plan Solicitation

On November 6, 2017, the Debtor commenced the solicitation of votes to accept or reject the Prepackaged Plan. Specifically, the Debtor caused Prime Clerk LLC ("**Prime Clerk**" or the "**Voting Agent**") to distribute copies of the Disclosure Statement, the Prepackaged Plan, and a form of ballot with voting instructions (the "**Ballot**" and, collectively, the "**Solicitation Package**") to each holder of a Claim in Class 4 (Term Loan Claims), Class 5 (Senior Notes

---

[5] The "**First Day Declaration**" means the *Declaration of David Coles Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* (ECF No. 3), filed on November 30, 2017.

WEIL:\96402895\1\79607.0003

Claims), and Class 6 (Convertible Notes Claims) entitled to vote on the Prepackaged Plan. *See* Solicitation Affidavit. The Debtor established November 1, 2017 as the record date (the "**Voting Record Date**") for determining which holders of Term Loan Claims, Senior Notes Claims, and Convertible Notes Claims were entitled to vote on the Prepackaged Plan. The voting period ended at 5:00 p.m. prevailing Eastern Time on November 28, 2017 (the "**Voting Deadline**"). As reflected in the Voting Certification, Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims)—the only voting classes under the Prepackaged Plan—all voted to accept the Prepackaged Plan in accordance with the requirements of section 1126 of the Bankruptcy Code. *See* Voting Certification, Ex. A.

The holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) are unimpaired by the Prepackaged Plan and conclusively presumed to accept the Prepackaged Plan under section 1126(f) of the Bankruptcy Code. Accordingly, the holders of Claims in each of such Classes are not entitled to vote to accept or reject the Prepackaged Plan and the Debtor did not cause the Voting Agent to serve the Solicitation Package on such holders. Moreover, the holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are deemed to reject the Prepackaged Plan under section 1126(g) of the Bankruptcy Code. Accordingly, the holders of Interests in such Classes are not entitled to vote to accept or reject the Prepackaged Plan and the Debtor did not cause the Voting Agent to serve the Solicitation Package on such holders.

On the Commencement Date, the Debtor filed, among other pleadings, a motion (the "**Scheduling Motion**") (ECF No. 6) for an order scheduling a combined hearing on the adequacy of the Disclosure Statement and the Solicitation Procedures and confirmation of the Prepackaged

WEIL:\96402895\1\79607.0003

Plan (the "**Combined Hearing**").  On December 7, 2017, the Court entered an order (the "**Scheduling Order**") (ECF No. 77) granting the relief requested therein.

Pursuant to the Scheduling Order, the Debtor served a notice (the "**Combined Notice**") of, among other things: (i) notice of the commencement of the Debtor's chapter 11 case, (ii) the date, time, and place of the Combined Hearing, (iii) instructions for obtaining copies of the Disclosure Statement and Prepackaged Plan, (iv) a summary of the Prepackaged Plan, including a chart summarizing Prepackaged Plan distributions, and the releases and exculpation provisions proposed in the Prepackaged Plan, and (v) the deadline and procedures for objecting to the Disclosure Statement, the Solicitation Procedures, and confirmation of the Prepackaged Plan. The Combined Notice was served upon all of the Debtor's known creditors and equity interest holders, including the notice parties identified in the Scheduling Order, and in compliance with the Scheduling Order.[6]  In addition, in accordance with the Scheduling Order, the Debtor caused a notice substantially similar to the Combined Notice (the "**Publication Notice**") to be published in the national editions of *The New York Times* and *USA Today* on December 8, 2017, thirty-five (35) days prior to the Confirmation Hearing.[7]

On December 22, 2017, the Debtor filed the Plan Supplement, consisting of the (i) Amended Organizational Documents, (ii) Amended and Restated Credit Facility Agreement, (iii) Exit Financing Documents, (iv) Schedule of Rejected Contracts, and (v) Notice of Initial Directors and Officers of Reorganized Debtor Pursuant to Bankruptcy Code Section 1129(a)(5). The Debtor caused the Plan Supplement to be served on the Voting Agent's Master Service List

---

[6] Affidavit of Service of Calvin C. Liu, December 12, 2017 (ECF No. 79); Affidavit of Service of Christian Rivera, December 6, 2017 (ECF No. 72).

[7] Affidavit of Publication of Kadeem Champagnie, December 12, 2017 (ECF No. 81).

WEIL:\96402895\1\79607.0003

and all holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims).[8]

## ARGUMENT

This Memorandum is divided into four parts.  Part I addresses the Disclosure Statement and Solicitation Procedures and their satisfaction of the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Part II addresses the requirements for confirmation of the Prepackaged Plan under section 1129 of the Bankruptcy Code, and demonstrates the satisfaction of each requirement and achievement of the objectives of chapter 11.  Part III addresses the Debtor's response to the U.S. Trustee's remaining confirmation objections, demonstrating why they should be overruled.  Part IV requests a waiver of any stay of the Proposed Confirmation Order.

## I.    DEBTOR'S SOLICITATION AND VOTING PROCEDURES SHOULD BE APPROVED.

To determine whether a prepetition solicitation of votes to accept or reject a plan should be approved, this Court must determine whether the solicitation complied with sections 1125(g) and 1126(b) of the Bankruptcy Code, Bankruptcy Rules 3017(d) and (e), Bankruptcy Rules 3018(b) and (c), and Local Rules 3017-1, 3018-1, and 3018-2.

---

[8] Affidavit of Service of Kadeem Champagnie, December 28, 2017 (ECF No. 127); Affidavit of Service of Calvin C. Liu, January 2, 2018 (ECF No. 134).

WEIL:\96402895\1\79607.0003

A.    **Debtor's Prepetition Solicitation Complied with Requirements of Bankruptcy Code Sections 1125(g) and 1126(b).**

1.    **Solicitation Was Exempt From Federal and State Securities Registration Requirements and Proxy Rules.**

Sections 1125(g) and 1126(b) of the Bankruptcy Code govern the acceptance of a plan of reorganization by a holder of a claim or interest prior to the commencement of a chapter 11 case.  Section 1125(g) provides:

> Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

11 U.S.C. § 1125(g).

Section 1126(b) of the Bankruptcy Code provides that a holder of a claim or interest that has accepted or rejected the plan before the commencement of the chapter 11 case is deemed to have accepted or rejected such plan if:

> i.    the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or

> ii.   if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).  The Debtor has complied with these requirements.

To the extent that the Debtor's prepetition Solicitation was deemed to constitute an offer of new securities, such Solicitation is exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "**Securities Act**").  Specifically, section 4(a)(2) and Regulation D of the Securities Act creates an exemption from the registration requirements under the Securities Act for transactions

13

not involving a "public offering." 15 U.S.C. § 77d(a)(2). The Debtor has complied with the requirements of section 4(a)(2) and Regulation D of the Securities Act as the prepetition solicitation of acceptances would constitute a private placement of securities. The solicitation to creditors was made only to those holders of Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) who are "Accredited Investors" (within the meaning of rule 501(a) of Regulation D of the Securities Act), as creditors were required to certify on their Ballots that they belonged to such category. Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtor's prepetition Solicitation. Prepetition solicitations relying on the exemption in section 4(a)(2) of the Securities Act have been approved in other prepackaged chapter 11 cases. *See, e.g., In re Sbarro*, LLC, Case No. 14-10557 (MG) (Bankr. S.D.N.Y. May 19, 2014) (ECF No. 238); *In re Eagle Bulk Shipping Inc.*, Case No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 22, 2014) (ECF No. 112); *In re Lodgenet Interactive Corp.*, Case No. 13-10238 (SCC) (Bankr. S.D.N.Y. Mar. 7, 2013) (ECF No. 220); *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL), 2007 WL 2779438, at *11 (Bankr. S.D.N.Y. Sept. 17, 2007).

Even though the Debtor's Solicitation was exempt from the securities registration and proxy solicitation requirements of nonbankruptcy laws, rules, and regulations, to the extent that the Solicitation constituted an offer of securities, such Solicitation nevertheless is subject to the antifraud provisions of section 17 of the Securities Act, and to the extent that such Solicitation involves the sale of securities, it is subject to the anti-fraud and anti-manipulation provisions of section 10(b) of, and Rule 10b-5 promulgated under, the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"). The Disclosure Statement and the Debtor's Solicitation comply with the requirements of section 10(b) and Rule 10b-5. The Debtor disclosed all material facts

14

and is not aware of any untrue statement of material fact in the Disclosure Statement or any related documents or communications. The Disclosure Statement does not omit any material fact. Moreover, the Debtor had no intention of making any untrue statement or omitting any material fact.

Accordingly, the Debtor has satisfied sections 1125(g) and 1126(b) of the Bankruptcy Code.

### 2. Disclosure Statement Contains Adequate Information Within Meaning of Bankruptcy Code Section 1125(a)(1).

Under section 1126(b) of the Bankruptcy Code, the Disclosure Statement and the Debtor's Solicitation of the Prepackaged Plan must disclose "adequate information" prior to the solicitation of votes on a plan of reorganization. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1). Thus, a disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors or equity interest holders entitled to vote on a plan of reorganization. *See In re BGI, Inc.*, 772 F.3d 102, 105 (2d Cir. 2014), *reh'g denied* (Aug. 8, 2014*), cert. denied sub nom. Beeman v. BGI Creditor's Liquidating Trust*, 136 S. Ct. 155 (2015); *Cadle Co. II, Inc. v. PC Liquidation Corp.* (*In re PC Liquidation Corp.*), 383 B.R. 856, 866 (E.D.N.Y. 2008) (holding that a disclosure statement was adequate where it "enable[d] a reasonable creditor to make an informed judgment about the

15

[p]lan"); *see also In re Adelphia Commc'ns Corp.,* 352 B.R. 592, 600 (Bankr. S.D.N.Y. 2006) (explaining that "an adequate disclosure determination requires a bankruptcy court to find not just that there is enough information, but also that what is said is not misleading"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties").

The Court has broad discretion in examining the adequacy of the information contained in a disclosure statement. *See Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694, 696 (4th Cir. 1989) (noting that adequacy of information is made on a "case by case basis"); *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) (same); *see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) (affirming bankruptcy court's use of equitable powers when debtors failed to engage in "full and fair" disclosure).

This grant of discretion was intended to facilitate effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 95-595, at 409*, reprinted in* 1978 U.S.C.C.A.N. 5963, 6365 (1977). "In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest." *Id.* Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re PC Liquidation Corp.*, 383 B.R. at 866; *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

16

In that regard, courts generally examine a number of factors to determine whether the disclosure statement contains adequate information. *See, e.g., In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing factors); *see also In re Source Enters., Inc.*, Case No. 06-11707 (AJG), 2007 WL 7144778, at *2 (Bankr. S.D.N.Y. July 31, 2007) (similar list). The factors are not meant to be comprehensive; nor must a debtor provide information on all factors. Rather, the bankruptcy court must decide what is appropriate in each case. *See In re Ferretti*, 128 B.R. 16, 18-19 (Bankr. D. N.H. 1991) (noting that not every debtor needs to provide information on each factor); *see also Phoenix Petroleum*, 278 B.R. at 393 (making use of a list of factors but cautioning that "no one list of categories will apply in every case").

The Disclosure Statement contains adequate information necessary to enable all parties in interest to make an informed judgment with respect to the Prepackaged Plan as required by section 1125 of the Bankruptcy Code, including, but not limited to, a discussion of:

  i.  An overview of the Company's operations (Disclosure Statement, Part II);

  ii.  Key events leading to the commencement of the chapter 11 case (Disclosure Statement, Part III);

  iii.  Anticipated events during the chapter 11 case, including first day motions, retention of professionals, and a timetable for the chapter 11 case (Disclosure Statement, Part IV);

  iv.  Information regarding the Non-Debtor Affiliates (Disclosure Statement, Part V);

  v.  Information regarding Claims and Interests addressed under the Prepackaged Plan (Disclosure Statement, Part VI);

  vi.  A summary of the Prepackaged Plan (Disclosure Statement, Part VI);

  vii.  Financial information and projections of the Company's business (Disclosure Statement, Part VII);

  viii.  A valuation analysis of the Company (Disclosure Statement, Part VIII);

ix.     Transfer restrictions and consequences under federal securities laws (Disclosure Statement, Part IX);

x.      Tax consequences of the Prepackaged Plan (Disclosure Statement, Part X);

xi.     Certain risk factors to be considered in evaluating the Prepackaged Plan (Disclosure Statement, Part XI);

xii.    Voting procedures and requirements related to the Prepackaged Plan (Disclosure Statement, Part XII);

xiii.   Requirements for confirmation of the Prepackaged Plan (Disclosure Statement, Part XIII); and

xiv.    Alternatives to confirmation and consummation of the Prepackaged Plan (Disclosure Statement, Part XIV).

The Disclosure Statement also contained:

i.      A copy of the Prepackaged Plan (Disclosure Statement, Ex. A);

ii.     A copy of the Consenting Term Lenders' Restructuring Support Agreement (Disclosure Statement, Ex. B);

iii.    A copy of the Consenting Senior Noteholders' Restructuring Support Agreement (Disclosure Statement, Ex. C);

iv.     A copy of the Prepackaged Plan Restructuring Term Sheet (Disclosure Statement, Ex. D );

v.      A copy of the Commitment Letter and the New Warehouse Facilities Term Sheet (Disclosure Statement, Ex. E);

vi.     A copy of the Amended and Restated Credit Facility Agreement (Disclosure Statement, Ex. F);

vii.    An organizational chart of the Company (Disclosure Statement, Ex. G);

viii.   A liquidation analysis (Disclosure Statement, Ex. H); and

ix.     A projected deferred tax asset/liability comparison (Disclosure Statement, Ex. I).

WEIL:\96402895\1\79607.0003

Accordingly, the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code and should be approved.

**B.      Solicitation of Classes Presumed to Accept Prepackaged Plan and Classes Deemed to Reject Prepackaged Plan is Not Required.**

The holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) are unimpaired by the Prepackaged Plan.  As such, the holders of Claims in the aforementioned classes are conclusively presumed to have accepted the Prepackaged Plan and are not entitled to vote to accept or reject the Prepackaged Plan.  The Bankruptcy Code does not require the solicitation of votes from such holders.   Specifically, section 1126(f) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

11 U.S.C. § 1126(f).  Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) are conclusively presumed to accept the Prepackaged  Plan and have not been solicited.

The holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are deemed to have rejected the Prepackaged Plan and are not entitled to vote to accept or reject the Prepackaged Plan.  The Bankruptcy Code does not require the solicitation of votes from such holders.  Specifically, section 1126(g) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such

19

claims or interests to receive or retain any property under the plan
on account of such claims or interests.

11 U.S.C. § 1126(g). Although Class 9 (Existing Equity Interests) is receiving a distribution, such distribution is only available because Class 6 (Convertible Notes Claims) voted to accept the Prepackaged Plan. Class 9 was not otherwise entitled to receive or retain any property under the Prepackaged Plan. Under these circumstances, it would have served no purpose to solicit Class 9 Interest holders. Bankruptcy courts have approved prepackaged chapter 11 plans where the debtor did not solicit equity holders who were deemed to reject the plan but received distributions under the plan. *See, e.g., In re Tidewater Inc., et.al.*, Case No. 17-11132 (BLS), at 30-31 (Bankr. D. Del. July 17, 2017) (ECF No. 378) (confirming plan where impaired equity class that was deemed to reject the plan received distribution in the form of equity and warrants); *In re Basic Energy Servs. LP, LLC*, Case No. 16-12320 (KJC), at 25-27 (Bankr. D. Del. Dec. 9, 2016) (ECF No. 257) (same); *In re Key Energy Serv., Inc.*, Case No. 16-12306 (BLS), at 38-39 (Bankr. D. Del. Oct. 24, 2016) (ECF No. 245) (same); *In re Hercules Offshore, Inc., et al.*, Case No. 16-11385 (KJC), at 32-33 (Bankr. D. Del. Nov. 15, 2016) (ECF No. 486) (same); *In re Swift Energy Co., et al.*, Case No. 15-12670 (MFW), at 25, 38 (Bankr. D. Del. Mar. 31, 2016) (ECF No. 513) (same); *In re Halcon Resources Corp., et al.*, Case No. 16-11724 (BLS), at 24-25 (Bankr. D. Del. Sept. 8, 2016) (ECF No. 200) (confirming plan where impaired equity class that was deemed to reject the plan received distribution in the form of equity). Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, the holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are conclusively deemed to reject the Prepackaged Plan and have not been solicited.

The Solicitation Procedures undertaken by the Debtor with respect to the specific classes of claims against the Debtor that were presumed to accept or deemed to reject the Prepackaged

WEIL:\96402895\1\79607.0003

Plan comply with the Bankruptcy Code and should be approved.  The Debtor is not required to mail copies of the Prepackaged Plan and Disclosure Statement to holders of claims and equity interests presumed to accept or deemed to reject the Prepackaged Plan under Bankruptcy Rule 3017(d).  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders).  Because the Debtor solicited acceptances and rejections of the Prepackaged Plan on a prepetition basis, no disclosure statement was "approved" under Bankruptcy Rule 3017(d), and therefore Bankruptcy Rule 3017 is not applicable here.  Further, Part X.A of the Guidelines provides that "[n]o further distribution of the plan and disclosure statement (or other solicitation document) beyond that which occurred prepetition is required unless requested by a party-in-interest."  No party in interest has requested distributions of the Prepackaged Plan, Disclosure Statement, or other solicitation document.  The Debtor also made the Disclosure Statement and the Prepackaged Plan available at no cost on the Voting Agent's website (http://cases.primeclerk.com/walter) and included a summary of the Prepackaged Plan in the Combined Notice.  Accordingly, the Debtor should not be required to transmit copies of the Solicitation Package to the holders of claims or equity interests not entitled to vote to accept or reject the Prepackaged Plan.

### C.    Debtor's Solicitation Package, Ballots, and Solicitation Procedures Complied with Requirements of Bankruptcy Rules 3017(d) and 3018(c).

Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

> Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in

WEIL:\96402895\1\79607.0003

a chapter 11 reorganization case shall transmit to the United States trustee,

> (1)    the plan or a court-approved summary of the plan;
>
> (2)    the disclosure statement approved by the court;
>
> (3)    notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (4)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

Bankruptcy Rule 3017(d) also provides, in relevant part, as follows:

If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).

Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).  In addition, Bankruptcy Rule 2002(l) permits a court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R. Bankr. P. 2002(l).

WEIL:\96402895\1\79607.0003

1.    **Solicitation Packages.**

As required by Bankruptcy Rule 3017(d), the Solicitation Package included the Disclosure Statement (which included as exhibits thereto, among other things, the Prepackaged Plan, the Restructuring Support Agreements, the Commitment Letter and the New Warehouse Facilities Term Sheet, the Amended and Restated Credit Facility Agreement, and a Liquidation Analysis), as well as notice of the deadline to submit the Ballots to accept or reject the Prepackaged Plan. The Solicitation Package was transmitted to the Voting Agent who, in turn, transmitted the Solicitation Package to the record holders of claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) by electronic mail. As mentioned above, holders of Claims or Interests in the remaining Classes were not provided with a Solicitation Package. Pursuant to sections 1126(f) and (g) of the Bankruptcy Code, such holders are either Unimpaired and presumed to accept the Prepackaged Plan or Impaired and deemed to reject the Prepackaged Plan. Moreover, on December 22, 2017, the Debtor filed the Plan Supplement and caused the Voting Agent to serve the Plan Supplement on the record holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), Class 6 (Convertible Notes Claims), and the Voting Agent's Master Service List by electronic mail.

Accordingly, the Solicitation Packages and the Plan Supplement satisfy Bankruptcy Rule 3017(d) and Local Rule 3017-1.

2.    **Combined Notice and Publication Notice.**

In addition, the Debtor distributed the Combined Notice to, among others, all of the Debtor's known creditors and equity interest holders in compliance with the Scheduling Order, and published the Publication Notice—a notice substantially similar to the Combined Notice—in the national editions of *The New York Times* and *USA Today*. The Combined Notice provided

WEIL:\96402895\1\79607.0003

that copies of the Prepackaged Plan and the Disclosure Statement could be obtained at the Office

of the Clerk of the Bankruptcy Court, by accessing the Bankruptcy Court's website, by e-mail

request to the Debtor's voting agent, Prime Clerk LLC, or by accessing the case website free of

charge at http://cases.primeclerk.com/walter.  The Combined Notice set forth the date, time, and

place of the Combined Hearing to consider approval of the Disclosure Statement and

confirmation of the Prepackaged Plan.  The Combined Notice also summarized the Prepackaged

Plan, including the distributions thereunder, and described the procedures and deadline for

submitting an objection to the Disclosure Statement, the Solicitation Procedures, or confirmation

of the Prepackaged Plan.

        The Solicitation Procedures, including service of the Combined Notice and publication of

the Publication Notice, afforded parties in interest ample notice of these proceedings.  As such,

the Debtor requests that the Solicitation Procedures be approved and that the Bankruptcy Court

find that the Debtor was not required to distribute copies of the Prepackaged Plan or the

Disclosure Statement to any holder of a Claim or Interest within a Class under the Prepackaged

Plan that is presumed to accept or is deemed to reject the Prepackaged Plan.   As noted above,

pursuant to sections 1126(f) and 1126(g) of the Bankruptcy Code, solicitation of holders in such

classes is not required.  As such, service of the Combined Notice and the Publication Notice

satisfied the requirements of Bankruptcy Rule 3017(d).

        **3.      Ballots.**

        Bankruptcy Rules 3017(d) and 3018(c) require a form of ballot substantially conforming

to Official Form No. 14.  The forms of the Ballot, which were annexed as Exhibits B through D-

2 to the Scheduling Motion, were based on Official Form No. 14, but were modified to address

the particular circumstances of this chapter 11 case and to include certain additional information

that is relevant and appropriate for creditors entitled to vote to accept or reject the Prepackaged

WEIL:\96402895\1\79607.0003

Plan. The Ballot included, for example, a modification to allow holders of Claims in the classes entitled to vote— Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims)—to elect to opt out of issuing certain releases provided under the Prepackaged Plan. The Ballots clearly stated that to be counted as votes to accept or reject the Prepackaged Plan, all Ballots had to be properly executed, completed, and delivered to the Voting Agent so that they would be received by no later than the Voting Deadline. The Ballots conform substantially to Official Form No. 14 and, therefore, satisfy Bankruptcy Rules 3017(d) and 3018(c) and should be approved.

### D.    Solicitation Period Was Reasonable under Bankruptcy Rule 3018(b).

Bankruptcy Rule 3018(b) provides, in relevant part, that (i) the plan must have been transmitted to substantially all creditors and equity security holders of the same class, (ii) the period of time prescribed for such creditors and equity security holders to accept or reject the plan must not have been unreasonably short, and (iii) the solicitation must have been in compliance with section 1126(b) of the Bankruptcy Code. Fed. R. Bankr. P. 3018(b). The Debtor's solicitation satisfied the standards set forth in Bankruptcy Rule 3018(b) and section 1126(b) of the Bankruptcy Code.

Additionally, Part VII.A of the Guidelines provides that "under ordinary circumstances" a court will approve as reasonable a "twenty-one (21) day voting period, measured from the date of commencement of mailing" with respect to the solicitation of votes of holders of "securities listed or admitted to trading on the New York Stock Exchange or American Stock Exchange or any international exchanges quoted on NASDAQ, and for securities publicly traded on any other national securities exchange[]." The Debtor complied with Part VII.A of the Guidelines as it afforded the holders of Claims in Class 4, Class 5, and Class 6 twenty-two (22) days to submit a completed Ballot to the Voting Agent.

25

As noted above, on November 6, 2017, the Debtor caused the Voting Agent to distribute the Solicitation Packages to holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims). The Debtor established 5:00 p.m. (Prevailing Eastern Time) on November 28, 2017 as the Voting Deadline, giving the holders of Claims in Class 4, Class 5, and Class 6 twenty-two (22) days to submit a completed Ballot to the Voting Agent—sufficient time to review the Disclosure Statement and Prepackaged Plan. Pursuant to the instructions contained in the Ballot, holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) were encouraged to return the completed Ballots by electronic submission through Prime Clerk's E-Balloting platform. The Ballots stated in clear and conspicuous language that all Ballots must be properly executed, completed, and delivered and/or transmitted to the Voting Agent by the Voting Deadline.

As discussed above, the Solicitation Packages were transmitted to all holders of Claims in Class 4, Class 5, and Class 6 via e-mail, providing such holders with the ability to review the Prepackaged Plan and Disclosure Statement immediately upon transmission. Accordingly, the holders of Claims in Class 4, Class 5, and Class 6 were well-informed as to all material terms of the Prepackaged Plan well before solicitation commenced or otherwise had sufficient time to consider the materials in the Solicitation Package to make a well-informed voting decision.

Accordingly, the solicitation period in this case complied with applicable law, including the twenty-one (21) day voting period in Part VII.A of the Guidelines, thereby complying with section 1125(g) of the Bankruptcy Code and Bankruptcy Rule 3018, respectively.

26

### E.    Debtor's Solicitation Procedures Should be Approved under Bankruptcy Rule 3017(e).

Bankruptcy Rule 3017(e) requires that this Court "consider the procedures for transmitting the documents and information required by subdivision (d) of this rule to the beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of [such] procedures, and enter any orders the court deems appropriate." Fed. R. Bankr. P. 3017(e). The Debtor caused the Solicitation Package, including the Disclosure Statement, to be distributed to the holders of Claims in Class 4, Class 5, and Class 6 to solicit votes to accept or reject the Prepackaged Plan as described in the Voting Certification. For the reasons set forth above, *supra* Part I.B-D, the Solicitation Procedures were appropriate and should be approved.

Accordingly, based on the facts contained in Part I of this Memorandum and the Scheduling Motion, the Solicitation Package and Solicitation Procedures should be approved by this Court, as they satisfy the requirements of sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rules 3017(d) and (e) and 3018(b) and (c).

## II.    PREPACKAGED PLAN SATISFIES BANKRUPTCY CODE SECTION 1129 AND SHOULD BE APPROVED.

To achieve confirmation of the Prepackaged Plan, the Debtor must demonstrate that the Prepackaged Plan satisfies section 1129(a) of the Bankruptcy Code by a preponderance of the evidence.[9] As the United States Court of Appeals for the Fifth Circuit stated in *Heartland Fed.*

---

[9] Sections 1129(a)(14) through 1129(a)(16) of the Bankruptcy Code are inapplicable to the Debtor. Section 1129(a)(14) relates to the payment of domestic support obligations. *See* 11 U.S.C. § 1129(a)(14). The Debtor is not subject to any domestic support obligations and, as such, this section of the Bankruptcy Code is inapplicable. Section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code). The Debtor is not an "individual," and, accordingly, section 1129(a)(15) is inapplicable. Finally, section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust must be made in accordance with any applicable provisions of nonbankruptcy law. The Debtor is a moneyed, business, or commercial corporation and, accordingly, section 1129(a)(16) is inapplicable.

WEIL:\96402895\1\79607.0003

*Sav. & Loan Assoc. v. Briscoe Enters., Ltd. II* (*In re Briscoe Enters., Ltd. II*): "The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown." 994 F.2d 1160, 1165 (5th Cir. 1993); *see also In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (citations omitted); *In re Young Broad. Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (citations omitted); *JPMorgan Chase Bank N.A. v. Charter Commc'ns Operating, LLC* (*In re Charter Commc'ns*), 419 B.R. 221, 223-24 (Bankr. S.D.N.Y. 2009), appeal dismissed, 449 B.R. 14 (S.D.N.Y. 2011); *In re Kent Terminal Corp.*, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994) (holding that "the final burden of proof at . . . confirmation hearings remains a preponderance of the evidence"). The Debtor will demonstrate, by a preponderance of the evidence, that all of the subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Prepackaged Plan.

### A.    Prepackaged Plan Satisfies Bankruptcy Code Section 1129(a)(1).

Under section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of the plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 648-49 (2d Cir. 1988); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992). The Prepackaged Plan fully complies with the requirements of the Bankruptcy Code.

28

B.    **Classification of Claims and Interests Complies with Bankruptcy Code Section 1122.**

Section 1122(a) of the Bankruptcy Code provides as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).  In total, there are ten (10) Classes of Claims against and Interests in the

Debtor as follows:

i.    Class 1 includes Claims entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims, which are not classified and are separately treated under Sections 2.1 and 2.3, respectively, of the Prepackaged Plan.

ii.    Class 2 includes Other Secured Claims, which are Claims secured by a lien or collateral or that are subject to a valid right of setoff in accordance with section 506 of the Bankruptcy Code other than Administrative Expense Claims, Priority Tax Claims, Term Loan Claims, or Revolving Loan Claims.

iii.    Class 3 includes Revolving Loan Claims, which are Claims arising from or in connection with the Revolving Credit Facility.

iv.    Class 4 includes Term Loan Claims, which are Claims arising from or in connection with the Prepetition Term Loan, other than Restructuring Expenses.

v.    Class 5 includes Senior Notes Claims, which are Claims arising from or in connection with the Prepetition Senior Notes Indenture, other than Restructuring Expenses.

vi.    Class 6 includes Convertible Notes Claims, which are Claims arising from or in connection with the Prepetition Convertible Notes Indenture.

vii.    Class 7 includes General Unsecured Claims, which are Claims that are neither secured by Collateral nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, other than Senior Notes Claims, Convertible Notes Claims, or Intercompany Claims.

viii.    Class 8 includes Intercompany Claims, which are Claims against the Debtor held by a direct or indirect subsidiary of the Debtor.

29

ix.   Class 9 includes Existing Equity Interests, which are common stock in the
Debtor pursuant to the Debtor's certificate of incorporation or otherwise that
is issued and outstanding as of the Commencement Date.

x.   Class 10 includes Other Interests, which are Interests in the Debtor other than
an Existing Equity Interest.

Courts interpreting section 1122(a) of the Bankruptcy Code generally uphold separate
classification if a reasonable basis exists for the classification and all claims within a particular
class are substantially similar.   *See Aetna Cas. & Sur. Co.* v. *Chateaugay Corp.* (*In re
Chateaugay Corp.*), 89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two
straight-forward rules:  Dissimilar claims may not be classified together; similar claims may be
classified separately only for a legitimate reason.").   Section 1122 of the Bankruptcy Code "only
prohibits the identical classification of dissimilar claims and does not require the same
classification for claims sharing some attributes."   *In re Enron Corp.*, No. 01-16034 (AJG), 2004
Bankr. LEXIS 2549, at *203 (Bankr. S.D.N.Y. July 15, 2004) (citations omitted).   Additionally,
"[a] plan proponent is afforded significant flexibility in classifying claims under section 1122(a)
provided that there is a reasonable basis for the classification scheme and all claims within a
particular class are substantially similar."   *Id.* at *202.

The classification scheme of the Prepackaged Plan is rational and complies with the
Bankruptcy Code.  Generally, the Prepackaged Plan incorporates a "waterfall" classification and
distribution scheme that strictly follows the statutory priorities prescribed by the Bankruptcy
Code.  All Claims and Interests within a Class have the same or similar rights against the Debtor.
The Prepackaged Plan provides for the separate classification of Claims against and Interests in
the Debtor based upon the differences in legal nature and/or priority of such Claims and
Interests, including the contractual subordination of Convertible Notes Claims, and to implement
the restructuring contemplated by the Prepackaged Plan.  Accordingly, the classification scheme

30

of the Prepackaged Plan complies with section 1122 of the Bankruptcy Code and should be approved.

### C.        Prepackaged Plan Complies with Bankruptcy Code Section 1123(a).

Section 1123(a) of the Bankruptcy Code sets forth seven applicable requirements which the proponent of a chapter 11 plan must satisfy.[10]    *See* 11 U.S.C. § 1123(a).  The Prepackaged Plan fully complies with each such requirement:

i.       The Prepackaged Plan designates Classes of Claims and Classes of Interests as required by section 1123(a)(1).  *See* Prepackaged Plan, Art. III.

ii.      The Prepackaged Plan specifies whether each Class of Claims and Interests is impaired or unimpaired under the Prepackaged Plan and the treatment of each such impaired Class, as required by sections 1123(a)(2) and 1123(a)(3), respectively.  *See* Prepackaged Plan, Arts. III and IV.

iii.     Except as otherwise agreed to by a holder of a particular Claim or Interest, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class, as required by section 1123(a)(4).  *See* Prepackaged Plan, Art. IV.

iv.      The Prepackaged Plan provides adequate means for implementation of the Prepackaged Plan as required by section 1123(a)(5) through, among other things:  (a) the contributions and support of the Affiliate Co-Plan Proponents, including (i) their consent to not be paid Intercompany Claims, including Administrative Claims, in cash, (ii) their commitment to fund all obligations and payments required by the Debtor under the Prepackaged Plan, and (iii) the issuance of new secured guarantees in respect of the Amended and Restated Credit Facility Agreement and the New Second Lien Notes Indenture, *see* Prepackaged Plan, § 5.1, (b) all corporate action set forth in Article V of the Prepackaged Plan, including the adoption and filing of the Amended Organizational Documents pursuant to applicable law, *see* Prepackaged Plan, §§ 5.3, 5.12; (c) the provisions governing the entry into the Amended and Restated Credit Facility Agreement, and the issuance of New Second Lien Notes, New Common Stock, Mandatorily Convertible Preferred Stock, and New Warrants under the Prepackaged Plan, *see* Prepackaged Plan, §§ 5.5, 5.6, 5.8; (d) the Exit Warehouse Facilities and the funds that will be available to the Company thereunder, *see* Prepackaged Plan, § 5.4; (e) the provisions governing distributions under the Prepackaged Plan, *see* Prepackaged Plan,

---

[10] An eighth requirement, set forth in 11 U.S.C. § 1123(a)(8), only applies in a case in which the debtor is an individual.

WEIL:\96402895\1\79607.0003

Art. VI; and (f) the cancellation of the Senior Notes, Convertible Notes, Existing Equity Interests, and Other Interests, *see* Prepackaged Plan, § 5.10.

v.    The certificate of incorporation, articles of incorporation, or similar governing document, of the Debtor has been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities, in accordance with section 1123(a)(6) of the Bankruptcy Code. *See* Plan Supplement, Ex. A.

vi.    Section 5.11 of the Prepackaged Plan provides that, the composition of the board of directors and the officers of the Debtor, will be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code. The Prepackaged Plan provisions governing the manner of selection of any officer, director, or manager under the Prepackaged Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

## D.    Prepackaged Plan Complies with Bankruptcy Code Section 1123(b).

### 1.    Prepackaged Plan Permissive Provisions.

Section 1123(b) of the Bankruptcy Code also sets forth permissive provisions that may be incorporated into a chapter 11 plan. Each provision of the Prepackaged Plan is consistent with section 1123(b):[11]

i.    As contemplated by section 1123(b)(1) of the Bankruptcy Code and pursuant to section 1124 of the Bankruptcy Code, Article IV of the Prepackaged Plan describes the treatment for the following Unimpaired Classes: Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims). Article IV of the Plan also describes the treatment for the following Impaired Classes: Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), Class 6 (Convertible Notes Claims), Class 9 (Existing Equity Interests), and Class 10 (Other Interests).

ii.    The Prepackaged Plan provides for the assumption of executory contracts and unexpired leases that have not been previously assumed or rejected or designated for rejection under section 365 of the Bankruptcy Code, as contemplated by section 1123(b)(2) of the Bankruptcy Code. *See* Prepackaged Plan, Art. VIII.

---

[11] The Prepackaged Plan does not provide for the sale, transfer, or assignment of all or substantially all of the Debtor's property and, therefore, section 1123(b)(4) of the Bankruptcy Code is not applicable to this chapter 11 case.

WEIL:\96402895\1\79607.0003

iii.    As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Section 10.6(a) of the Prepackaged Plan provides for a release of Claims and Causes of Action owned by the Debtor and its Estate. Moreover, as permitted by section 1123(b)(3)(B) of the Bankruptcy Code, Section 10.8 of the Prepackaged Plan preserves for the Reorganized Debtor any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date, except as otherwise provided in the Prepackaged Plan.

iv.    As permitted by section 1123(b)(5) of the Bankruptcy Code, the Prepackaged Plan modifies the rights of holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), Class 6 (Convertible Notes Claims), Class 9 (Existing Equity Interests), and Class 10 (Other Interests), and leaves unaffected the rights of holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims).

v.    As permitted by section 1123(b)(6) of the Bankruptcy Code, a plan "may include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." In accordance with section 1123(b)(6) of the Bankruptcy Code, the Prepackaged Plan (i) contains certain release and exculpation provisions consistent with the applicable provisions of the Bankruptcy Code and Second Circuit law, which are discussed *infra*, and (ii) provides that, the offer, issuance, and distribution of New Common Stock, Mandatorily Convertible Preferred Stock, New Warrants, and New Second Lien Notes thereunder shall be exempt from registration, pursuant to section 1145 of the Bankruptcy Code, the Securities Act, if applicable, and any state or local law requiring registration for the offer, issuance, or distribution of such securities. Under section 1145 of the Bankruptcy Code, the New Common Stock, Mandatorily Convertible Preferred Stock, New Warrants, and New Second Lien Notes will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) the restrictions, if the Debtor is eligible, and the Debtor and the Consenting Senior Noteholders both agree to utilize the special bankruptcy exception under section 382(l)(5) of the Tax Code, on the transferability and ownership of the Reorganized Debtor's stock contained in the amended and restated certificate of incorporation of the Reorganized Debtor intended to preserve the value of the Reorganized Debtor's tax attributes, and (iv) applicable regulatory approval.

vi.    As contemplated by section 1123(d) of the Bankruptcy Code, on December 22, 2017, the Debtor filed and served the *Notice of Assumption of Executory Contracts and Unexpired Leases of the Debtor and Related Procedures* (ECF No. 122) (the "**Assumption Notice**"), which sets forth a non-exclusive list of

33

executory contracts and unexpired leases to be assumed by the Debtor and explained that the Debtor has paid or will pay Cure amounts in the ordinary course. To the extent the Debtor is unable to agree upon the amount necessary to cure any amounts due prior to assumption, the cure amount will be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

## 2. Prepackaged Plan Releases Should Be Approved.

The Prepackaged Plan provides for three categories of releases: (i) releases of claims held by the Debtor and its Estate against the Released Parties,[12] which may be approved if the Court finds that the decision to grant such an estate release is a valid exercise of the Debtor's business judgment, is fair and reasonable, and in the best interests of the Estate (the "**Estate Release**"), *see* Prepackaged Plan, § 10.6(a), (ii) consensual releases by creditors who voted in favor of the Prepackaged Plan, the Consenting Term Lenders, the Consenting Senior Noteholders, any Significant Equity Holder, and each of their Related Parties, against the Released Parties (the "**Consensual Releases**"),[13] *see* Prepackaged Plan, § 10.6(b), and (iii) releases of claims held by holders of Claims in Class 4 (Term Loan Claims) and Class 5 (Senior Notes Claims) against the Affiliate Co-Plan Proponents solely with respect to guarantees provided by the Affiliate Co-Plan Proponents under the Prepetition Credit Agreement and the Prepetition Senior Notes Indenture (the "**Affiliate Guarantee Releases**", collectively with the Estate Releases and the Consensual Releases, the "**Plan Releases**"). *See* Prepackaged Plan, § 10.6(c). The Plan Releases are integral components of the Restructuring Support Agreements

---

[12] Section 1.109 of the Prepackaged Plan defines "**Released Parties**" as collectively: (a) Debtor and its direct and indirect subsidiaries, including the Affiliate Co-Plan Proponents; (b) Consenting Term Lenders; (c) Prepetition Administrative Agent; (d) Consenting Senior Noteholders; (e) Prepetition Senior Notes Trustee; (f) Convertible Notes Trustee; (g) the DIP Lenders, (h) each Significant Equity Holder, and (i) Related Parties for each of the foregoing; *provided that*, Released Parties shall exclude any of the foregoing parties that do not (or are not deemed to) provide the releases under the Plan.

[13] As noted above, the Prepackaged Plan, as amended, no longer includes a release of direct claims held by holders of Impaired Claims who either did not vote on the Prepackaged Plan or voted to reject the Prepackaged Plan, whether or not they opted out of the release.

and the Prepackaged Plan and the transactions embodied therein, are appropriate and necessary under the circumstances, are consistent with the Bankruptcy Code, and comply with applicable law. Accordingly, the Plan Releases should be approved.

The overwhelming support for the Prepackaged Plan by virtually all parties in interest is compelling evidence that the Plan Releases should be approved. Before the Court is a prepackaged chapter 11 plan that has the overwhelming support of virtually all of the Debtor's creditors. All potentially affected creditors, including contract counterparties, trade vendors, and employees, received notice of the Plan Releases and their right to object to such releases. Not one creditor or interest holder who will be affected by the Plan Releases has objected to the Prepackaged Plan or the releases provided for therein.[14] This is a significant endorsement of the Plan Releases that the Court should not overlook. In particular, it reinforces and affirms the Debtor's determination that the Estate Release is in the best interest of the Estate. Indeed, there could be no better evidence as to the reasonableness and fairness of the Estate Release than the support of those creditors and interest holders who would be most affected by a release of estate claims or causes of action. *See In re Master Mortg. Inv. Fund, Inc*., 168 B.R. 930, 938 (Bankr. W.D. Mo. 1994) (stating that creditor approval of a release is "the single most important factor" to determine whether a release is appropriate). Accordingly, for these reasons and for the reasons set forth below, the Plan Releases should be approved.

In addition, the Affiliate Guarantee Releases are only proposed to be granted on a non-consensual basis by holders of five percent (5%) in amount of Term Loan Claims and fifteen percent (15%) in amount of Senior Notes Claims, in each case who are *not* parties to the Restructuring Support Agreements. These are the same parties and the same claims that were the

---

[14] As previously stated, the limited objection filed by the Class Plaintiffs (ECF No. 128) has been addressed.

subject of the Court's order extending the automatic stay. *See Final Order Pursuant to 11 U.S.C. §§ 105(a) and 362(a) Extending the Automatic Stay to Affiliate Co-Plan Proponents on a Limited Basis* (ECF No. 126). All of these parties received notice of the Affiliate Guarantee Releases but have not objected. For the same reasons that the Court relied upon in extending the automatic stay, the Court should approve the Affiliate Guarantee Releases, which satisfy the relevant legal standard established by the Second Circuit in *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136 (2d Cir. 2005).

### i.    Estate Release Is Appropriate and Should Be Approved.

In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, Section 10.6(a) of the Plan contains a release of certain claims or Causes of Action of the Debtor, the Reorganized Debtor, and the Estate against the Released Parties. The Estate Release does not release (i) any claims or Causes of Action arising after the Effective Date against any party or affect the rights of the Debtor or the Reorganized Debtor to enforce the terms of the Prepackaged Plan or any Definitive Documents, (ii) any claims against a party that does not provide a reciprocal release to the Released Parties, or (iii) any claim against an Affiliate.[15] The Estate Release should be approved as it represents an appropriate exercise of the Debtor's business judgment and is in the best interest of the Debtor's Estate.

Claims held by a debtor against third parties are property of the estate and may be released in exchange for settlement. *See* 11 U.S.C. 541(a)(1); *see also In re Johns-Manville (Manville I)*, 837 F.2d 89, 91-92 (2d Cir. 1988). When considering releases by a debtor of non-debtor third parties pursuant to section 1123(b)(3)(A), the appropriate standard is whether the release is a valid exercise of the debtor's business judgment and is fair, reasonable, and in the

---

[15] The Prepackaged Plan, as amended, clarifies that claims of the Debtor or any of its affiliates, on the one hand, against the Debtor or any of its affiliates, on the other hand, are not being released. *See* Prepackaged Plan, § 10.6(d).

best interests of the estate. *See In re Angelica Corp.*, Case No. 17-10870 (JLG), Aug. 29, 2017 Hr'g Tr. at 12:23-13:11 ("In cases like this one where there are no known claims against a party to receive a Release, Courts in this district approved Debtor Releases when they represent a valid exercise of the Debtor's business judgement and are in the best interest of the estate."); *In re Motors Liquidation Co.*, 447 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Releases by estates involve a give-up of potential rights that are owned by the estate, and are perfectly permissible in a plan, either as parts of plan settlements or otherwise, though the court must satisfy itself (at least if anyone raises the issue) that the give-up is an appropriate exercise of business judgment, and, possibly, in the best interests of the estate."); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (approving plan provision that released and discharged claims and causes of action by debtors on basis that such releases and discharges "represent a valid exercise of the Debtors' business judgment, and are fair, reasonable and in the best interests of the estate."), *aff'd*, Case No. 90–13061 (REG), 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *aff'd in part, rev'd in part sub nom. DISH Network Corp. v. DBSD N. Am. Inc. (In re DBSD N. Am.)*, 634 F.3d 79 (2d Cir. 2011); *In re Charter Commc'ns*, 419 B.R. 221, 257-60 (Bankr. S.D.N.Y. 2009) ("When reviewing releases in a debtor's plan, courts consider whether such releases are in the best interest of the estate"); *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL), 2007 WL 2779438, at *12 (Bankr. S.D.N.Y. Sept. 17, 2007) (finding debtor releases appropriate where they represented a valid exercise of the debtors' business judgment and were in the best interests of the estate). Debtors have considerable leeway in issuing releases of their own claims, and such releases are considered "uncontroversial." *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, at 263 n. 289 (Bankr. S.D.N.Y. 2007).

The Estate Release is an essential component of the Prepackaged Plan and constitutes a sound exercise of the Debtor's business judgment. During the course of negotiations regarding the Prepackaged Plan and the Definitive Documents, it was clear that the Estate Release would be a necessary condition to entry into and consummation of the restructuring transaction embodied in the Prepackaged Plan. Without the Estate Release, the Debtor and its stakeholders would not have been able to secure the substantial benefits provided by the Prepackaged Plan, including, without limitation, the significant reduction of corporate debt, the payment in full of General Unsecured Claims, and the substantial recoveries to junior stakeholders. Had the Estate Release not been provided, it would have significantly diminished (and potentially eliminated) the Debtor's chances of securing all of the valuable consideration provided by the Prepackaged Plan, the Definitive Documents, and the DIP/Exit Warehouse Facilities. As additional consideration for the Estate Release, the Debtor and its Estate will receive reciprocal releases from potential claims and causes of action of the Released Parties.

Moreover, courts in this district and others recognize that releases by debtors are often in the best interests of the estate where "the costs involved [in pursuing the released claims] likely would outweigh any potential benefit from pursuing such claims." *See In re Lear Corp.*, Case No. 09-14326 (ALG), 2009 WL 6677955, at *7 (Bankr. S.D.N.Y. Nov. 5, 2009); *see also In re Cano Petroleum, Inc.*, Case No. 12-31549 (BJH), 2012 WL 2931107, at *15 (Bankr. N.D. Tex. July 18, 2012); *In re Calpine Corp.*, Case No. 05-60200 (BRL), 2007 WL 4565223, at *9-*10 (Bankr. S.D.N.Y. Dec. 19, 2007). In addition to the substantial consideration provided by the Released Parties, the Estate Release also is appropriate because the Debtor does not believe that the released claims or causes of action represent material value to the Debtor and its Estate, and the *de minimis* value of such claims certainly is not greater than (or even close to) the significant

38

value and benefits provided by the Plan and related transactions.  Accordingly, there is ample

justification for providing the Estate Release and it should be approved.

> ii.    **Consensual Releases and Affiliate Guarantee Releases Are
> Appropriate and Should Be Approved.**

Section 10.6(b) of the Prepackaged Plan contains consensual releases by creditors who

voted in favor of the Prepackaged Plan, the Consenting Term Lenders, the Consenting Senior

Noteholders, any Significant Equity Holder, and each of their Related Parties (collectively, the

"**Consensual Releasing Parties**") against the Released Parties for liability relating to the Debtor,

its affiliates, or this chapter 11 case.

Section 10.6(c) of the Prepackaged Plan contains releases by holders of Claims in Class 4

(Term Loan Claims) and Class 5 (Senior Notes Claims) against the Affiliate Co-Plan Proponents

solely for liability relating to the Prepetition Credit Agreement, the Prepetition Senior Notes

Indenture, or agreements related thereto.  As stated, only the Non-RSA Parties are providing the

Affiliate Guarantee Releases on a non-consensual basis.

Courts in the Second Circuit typically approve releases of third-party claims against non-

debtors in two circumstances.  First, courts generally approve releases of third-party claims

against non-debtors where there is consent of the releasing party.  *Deutsche Bank AG v.*

*Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136, 142 (2d

Cir. 2005).  Here, the Consensual Releasing Parties have consented to the Consensual Releases.

As set forth above, and in the Supporting Declarations, an overwhelming majority of the holders

of Claims in the voting classes have voted to accept the Prepackaged Plan indicating their

express consent to the Consensual Releases.  Moreover, although Significant Equity Holders

were not entitled to vote on the Prepackaged Plan, the Significant Equity Holders indicated their

WEIL:\96402895\1\79607.0003

express consent to the Consensual Releases by executing voluntary releases in favor of the Released Parties prior to the Commencement Date.

Second, courts generally approve releases of third-party claims against non-debtors when other circumstances in the case justify granting the release. *Id.* In determining whether the circumstances of a case justify the approval of third-party releases, courts will consider a variety of factors, including:

   a.    whether the estate received substantial consideration;

   b.    whether the enjoined claims were channeled to a settlement fund rather than extinguished;

   c.    whether the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; and

   d.    whether the plan otherwise provided for the full payment of enjoined claims.

*Id.* at 142.

Assessing third-party releases is not a "matter of factors and prongs." *Id.* Rather, courts must examine the full set of circumstances when making its determination. Courts have approved third-party releases where (i) the releases were essential to the debtor's plan and (ii) the released parties substantially contributed to the debtor's reorganization. *See, e.g., In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 271-72 (Bankr. S.D.N.Y. 2014); *In re MPM Silicones, LLC*, Case No. 14-22503 (RDD), at 18, 30-31 (Bankr. S.D.N.Y. Sep. 11, 2014) (ECF No. 1001); *In re Residential Capital, LLC*, Case No. 12-12020 (MG), at 27-28 (Bankr. S.D.N.Y. Dec. 11, 2013) (ECF No. 6065); *Rosenberg v. XO Commc'ns, Inc. (In re XO Commc'ns, Inc.)*, 330 B.R. 394, 437-38 (Bankr. S.D.N.Y. 2005). The circumstances of this chapter 11 case justify the Affiliate Guarantee Releases.

WEIL:\96402895\1\79607.0003

E.     **Debtor Received Substantial Consideration to Support Approval of the Affiliate Guarantee Releases.**

The non-consensual Affiliate Guarantee Releases are appropriate in light of the substantial consideration provided by the Affiliate Co-Plan Proponents.  As explained in the Debtor's *Motion for Limited Extension of the Automatic Stay to Affiliate Co-Plan Proponents Pursuant to 11 U.S.C. §§ 105(a) and 362(a)* (the "**Automatic Stay Motion**") (ECF No. 10), the Affiliate Co-Plan Proponents conduct nearly all of the Company's business, which primarily consists of originating and servicing loans for federal housing agencies – GSEs and Ginnie Mae.[16]  As a result, the successful restructuring of the Company depends on preserving the assets of the Affiliate Co-Plan Proponents.  If the Affiliate Co-Plan Proponents filed for bankruptcy, they would run a serious risk of jeopardizing the Company's principle asset – its rights to service mortgage loans for the GSEs and Ginnie Mae.  As described in the Automatic Stay Motion, the GSEs and Ginnie Mae likely could terminate the Affiliate Co-Plan Proponents' rights to originate and service mortgage loans if the Affiliate Co-Plan Proponents filed for bankruptcy and require them to transfer their servicing rights to other servicers at significant discounts to market value, destroying the Company's chances of restructuring as a profitable enterprise.

The Debtor filed, and the Court approved, the Automatic Stay Motion in order to avoid the small minority of Term Lenders (5% in amount) and Senior Noteholders (15% in amount) who are not parties to the Restructuring Support Agreements (*i.e.*, the Non-RSA Parties), from opportunistically using the Affiliate Co-Plan Proponents' inability to file bankruptcy to their benefit and file claims outside of this chapter 11 case to grab Company assets solely for

---

[16] As used herein, "**Ginnie Mae**" means the Government National Mortgage Association.  Ginnie Mae is a federal corporation within the Department of Housing and Urban Development ("**HUD**"), a federal agency, that guarantees investors the timely payment of principal and interest on RMBS backed by federally insured or guaranteed loans, primarily loans insured by the Federal Housing Administration ("**FHA**") or guaranteed by the Department of Veterans Affairs ("**VA**") or the Department of Agriculture ("**USDA**").

41

themselves. For the same reasons described in the Automatic Stay Motion, the Affiliate Guarantee Releases should be approved. Similar to the narrow scope of the automatic stay extension that the Court approved, the Affiliate Guarantee Releases are extremely limited in their scope and application. The Debtor provided ample notice of the Affiliate Guarantee Releases to all of its creditors so that they *can be heard,* if they want to be. Just as such parties chose not to object to the Automatic Stay Motion, none have objected to the Affiliate Guarantee Releases.

Moreover, the financial support of the Affiliate Co-Plan Proponents is essential to the continued operation and growth of the Company and is the only way the Debtor can honor any of its commitments under the Prepackaged Plan. The Affiliate Co-Plan Proponents are providing funding that is necessary for a successful reorganization of the Debtor. Additionally, under the DIP financing, two of the Affiliate Co-Plan Proponents – Ditech and RMS – are the borrowers and the Debtor is the guarantor to those warehouse financing agreements. Therefore, the credit-worthiness of these companies is vital to the Company's ability to obtain the liquidity it needs to continue operations during the chapter 11 case.

As stated by the Second Circuit in *Metromedia* and confirmed by other courts, "substantial consideration" may come in all forms, including, non-financial consideration and consideration in the form of payment. *See Metromedia*, 416 F.3d at 143 (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 289, 293 (2d Cir. 1992)); *Charter Commc'ns*, 419 B.R. at 258-59. For example, substantial consideration has been found where a released party provides "money's worth" to accommodate the debtor's business objectives and permits successful reorganization of the estate. *In re Metro. 885 Third Ave Leasehold, LLC*, Case No. 10-16103 (SCC), 2010 WL 6982778 at *1 (Bankr. S.D.N.Y. Dec. 22, 2010). A released party's foregoing or waiving certain rights also may constitute substantial consideration. *See, e.g.,*

42

*Residential Capital*, Case No. 12-12020 (MG), at *28 (Bankr. S.D.N.Y. Dec. 11, 2013) (ECF No. 6065) (finding that the giving up of shared rights by the released parties constituted a substantial contribution).

The Debtor has received and will continue to receive substantial consideration from the Affiliate Co-Plan Proponents that is vital to the Debtor's ability to administer this chapter 11 case, confirm the Prepackaged Plan, and emerge from bankruptcy equipped to operate a stronger, leaner enterprise.  Specifically, the Affiliate Co-Plan Proponents have committed to fund all payments required to be paid by the Debtor on account of any Allowed Claims.  The Affiliate Co-Plan Proponents have also agreed to not have Intercompany Claims paid in cash by the Debtor.  In connection with the Amended and Restated Credit Facility, the Affiliate Co-Plan Proponents have agreed (i) to continue their guarantees in support of the Debtor's obligations under such agreement, and (ii) in support thereof, to grant Liens over their assets subject to the Liens of the Exit Warehouse Facilities Lenders.  The Affiliate Co-Plan Proponents have also agreed to guarantee the Debtor's obligations under the New Second Lien Notes Indenture and to grant Liens over their assets subject to the liens of the Amended and Restated Credit Facility Agent and other senior liens.  The grant of the security to the holders of the Senior Notes Claims is of particular importance because of their previously unsecured position.

In sum, the contributions of the Affiliate Co-Plan Proponents are fundamental to the Debtor's restructuring efforts and satisfy the standard for approval under *Metromedia* and its progeny.

F.    **Affiliate Guarantee Releases Are an Essential Component of Debtor's Prepackaged Plan.**

As noted above, courts have approved third party releases where they are essential to the debtor's plan.  *See*, *e.g.*, *Genco*, 513 B.R. at 268-69 (non-debtor releases are permissible when

WEIL:\96402895\1\79607.0003

the provisions are important to a debtor's plan); *see also Drexel Burnham*, 960 F.2d at 293 ("In

bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction

plays an important part in the debtor's reorganization plan."). While there is no definitive

guidance on what makes a non-debtor release "important" to a plan, courts have approved such

releases when the debtors could not confirm a plan absent such release. *See Cartalemi v. Karta

Corp. (In re Karta Corp.),* 342 B.R. 45, 54-55 (Bankr. S.D.N.Y. 2006) (finding that the third

party releases were essential to confirmation of the plan and that without such releases, the plan

would unravel); *Drexel Burnham*, 960 F.2d at 293; *see also Residential Capital*, Case No. 12-

12020 (MG), at 28-29 (Bankr. S.D.N.Y. Dec. 11, 2013) (ECF No. 6065) (approving third party

releases as a "lynchpin" of debtors' global settlement, without which, "the Plan would not be

confirmable or feasible, and the recoveries currently contemplated by the Plan would not exist").

Without the Affiliate Guarantee Releases, the restructuring underlying the Prepackaged

Plan could not be implemented fairly because the Non-RSA Parties (who otherwise have been

overwhelmingly outvoted) could pursue recoveries against the Affiliate Co-Plan Proponents with

respect to obligations that are going to be released and discharged under the Prepackaged Plan

against the Debtor. As explained in the Automatic Stay Motion, the Company made a carefully

reasoned decision (with the input and support of virtually all of its creditors) not to place the

Affiliate Co-Plan Proponents into bankruptcy to maximize value and recoveries to all parties,

including the Non-RSA Parties. In addition to the destruction of value, it would be highly

inequitable if the Non-RSA Parties could pursue recoveries against the Affiliate Co-Plan

Proponents, while the Consenting Creditors, whose support and votes in favor of the

Prepackaged Plan have made this restructuring possible, could not.

WEIL:\96402895\1\79607.0003

Under the circumstances of this chapter 11 case, the Affiliate Guarantee Releases are appropriately tailored in scope and breadth.  The Affiliate Guarantee Releases do not absolve the Affiliate Co-Plan Proponents of any liability other than the guarantee claims arising under the Term Loan and the Senior Unsecured Notes.  Notably, the guarantees are being replaced by new or continued *secured* guarantees by the Affiliate Co-Plan Proponents with respect to the Amended and Restated Credit Facility Agreement and the New Second Lien Notes.  In addition, there are no releases of claims arising from willful misconduct or fraud and only apply in connection with guarantee claims relating to the Prepetition Credit Agreement and Prepetition Senior Notes Indenture.  The significance attached to the Affiliate Guarantee Releases by the Affiliate Co-Plan Proponents, whose support is indispensable to the Debtor's restructuring, the substantial consideration provided by the Affiliate Co-Plan Proponents, and the distributions available to the Debtor's creditors as a result of the support of the Affiliate Co-Plan Proponents all demonstrate that the Affiliate Guarantee Releases should be approved.

### G.    The Failure to Approve the Affiliate Guarantee Releases Could Have an Indirect Negative Impact on the Debtor.

Where claims to be enjoined could indirectly impact a debtor's restructuring by way of indemnity or contribution, courts have found it appropriate to approve third-party releases.  *See In re Adelphia Commc'ns Corp*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007) (considering the "identity of interest" factor in the context of a third-party release and stating that "[t]o the extent that the third party releases are congruent with the indemnification obligations, and the [d]ebtor[] would be liable for any liability imposed on such person[]" an identity of interest is established); *Genco*, 513 B.R. at 271 (same).  Given the nature of the Debtor's relationship with the Affiliate Co-Plan Proponents, and that the Affiliate Guarantee Releases are limited to the guarantees provided by the Affiliate Co-Plan Proponents under the Prepetition Credit Agreement and the

WEIL:\96402895\1\79607.0003

Prepetition Senior Notes Indenture, failure to approve the Affiliate Guarantee Releases could give rise to state law contribution claims against the Debtor and, at the very least, require the Debtor to expend resources to defend against claims and could jeopardize the Company's ability to reap the benefits the Debtor and the Affiliate Co-Plan Proponents have worked for months to achieve and the Debtor's "fresh start."  The value provided by the Affiliate Co-Plan Proponents could be significantly diminished if they or the Debtor remained exposed to such potential liability.

### H.    Court Has Subject Matter Jurisdiction Over Claims to be Enjoined by Affiliate Guarantee Releases.

It is well-established that a bankruptcy court has jurisdiction over third-party non-debtor claims, and even without their being derivative of the estate.  *See, e.g., In re Quigley Co., Inc.,* 676 F.3d 45, 57 (2d Cir. 2012) ("It thus appears from our case law that, while we have treated whether a suit seeks to impose derivative liability as a helpful way to assess whether it has the potential to affect the bankruptcy *res*, the touchstone for bankruptcy jurisdiction remains whether its outcome might have any 'conceivable effect' on the bankruptcy estate.") (citing *In re Cuyahoga Equip. Corp.,* 980 F.2d 110. 114 (2d Cir. 1992); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("We agree . . . that 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate' . . . and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.")) (internal citations omitted).  The claims released under the Affiliate Guarantee Releases, if permitted to proceed, would significantly impact the Debtor's estate, distract management from running the Company's business, and diminish the value of the Affiliate Co-Plan Proponents, thereby

WEIL:\96402895\1\79607.0003

negatively impacting the Debtor and its stakeholders.  Accordingly, the Debtor submits that this Court has jurisdiction to confirm the Prepackaged Plan with the inclusion of the Affiliate Guarantee Releases.

## I.    Prepackaged Plan Exculpation Provision Should Be Approved.

In addition to the releases discussed above, Section 10.7 of the Prepackaged Plan also contains an exculpation for certain Exculpated Parties[17] limited to claims arising out of the administration of this chapter 11 case and the negotiation, formulation, preparation, and pursuit of the Disclosure Statement, Restructuring, Prepackaged Plan and the solicitation thereof (the "**Exculpation Provision**").  The Exculpation Provision carves out acts or omissions that are determined in a final order to have constituted willful misconduct or fraud.

As explained below, courts in this Circuit frequently approve exculpation of non-estate fiduciaries in circumstances similar to these that are similarly limited in scope.  In addition, the amended Prepackaged Plan makes clear that the Related Parties to be exculpated are only those individuals or Entities who were acting on behalf of the Entities that are exculpated.  *See* Prepackaged Plan, § 1.62; *see also In re Fairway Group Holdings Corp., et al.*, Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 8, 2016) (ECF No. 156) (approving similar exculpation for "related parties" in prepackaged chapter 11 plan).

Exculpation provisions are permissible when they are important to a debtor's plan or where the exculpated party has provided substantial consideration to a debtor's reorganization.  *See In re Chemtura Corp.*, 439 B.R. 561, 610-11 (Bankr. S.D.N.Y. Oct. 21, 2010) (citing *In re*

---

[17] Section 1.62 of the Prepackaged Plan defines "**Exculpated Parties**" as collectively:  (a) Debtor and its direct and indirect subsidiaries, including the Affiliate Co-Plan Proponents; (b) Consenting Term Lenders; (c) Prepetition Administrative Agent; (d) Consenting Senior Noteholders; (e) Prepetition Senior Notes Trustee; (f) Convertible Notes Trustee; (g) the DIP Lenders; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), all persons and Entities who acted on their behalf in connection with the matters as to which exculpation is provided herein.

*DBSD*, 419 B.R. at 217); *see also Residential Capital*, Case No. 12-12020 (MG), at 26 (Bankr. S.D.N.Y. Dec. 11, 2013) (ECF No. 6065) (confirming plan that contained exculpations for Released Parties that were "instrumental to the successful prosecution of the Chapter 11 Cases or their resolution pursuant to the Plan, and/or provided a substantial contribution to the Debtors."). In determining whether to approve exculpation provisions, courts also consider whether the beneficiaries of the exculpation have participated in good faith in negotiating the plan and bringing it to fruition, and whether the provision is integral to the plan. *See In re BearingPoint, Inc.*, 453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011) ("Exculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures to get recoveries they desire; seek vengeance against other parties, or simply wish to second guess the decisionmakers[.]"); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (same), *aff'd, In re DBSD N. Am., Inc.*, Case No. 09-10156, 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *aff'd in part, rev'd in part*, 634 F.3d 79 (2d Cir. 2011); *In re Bally Total Fitness*, 2007 WL 2779438, at *8 (finding exculpation, release, and injunction provisions appropriate because they were fair and equitable, necessary to successful reorganization, and integral to the plan).

Courts have specified certain parties that generally are appropriate candidates for exculpation, including parties to a consensual plan or parties to unique transactions who "contribute substantial consideration to the reorganization." *See In re Residential Capital, LLC*, Case No. 12-12020 (MG), at ¶ 291 (Bankr. S.D.N.Y. Dec. 11, 2013) (ECF No. 6066) (approving exculpation of certain prepetition lenders who "played a meaningful role. . . in the mediation process, and through the negotiation and implementation of the Global Settlement and Plan"); *WorldCom*, 2003 WL 23861928, at *28 (approving exculpation provisions where "[t]he inclusion of the Exculpation Provision … in the Plan [was] vital to the successful negotiation of

48

the terms of the Plan in that without such provisions, the Covered Parties would have been less likely to negotiate the terms of the settlements and the Plan."); *Adelphia*, 368 B.R. at 268.

The support of the Exculpated Parties was essential to the successful negotiations of the Prepackaged Plan and the Definitive Documents, all of which were conducted in good faith and at arm's length.   The protection afforded by the Exculpation Provision was essential to the promotion of good faith plan negotiations that might not otherwise have occurred had the negotiating parties faced the risk of future collateral attacks from other parties.  The Exculpated Parties played meaningful roles in the development of the Prepackaged Plan and Definitive Documents and the successful execution of the restructuring, including the prepetition solicitation of the Prepackaged Plan.   The Exculpated Parties' willingness to (i) provide the DIP/Exit financing (which enabled the Company to obtain the liquidity it needed to continue operations during the chapter 11 case and will continue after emergence), and (ii) provide forbearances to the Company in order to implement the restructuring was premised on the expectation that, among other things, they would receive protection in return for their substantial contribution.

Moreover, developing and executing the Debtor's reorganization strategy were extremely time-intensive and labor-intensive.  The Exculpated Parties would not have assumed prominent roles in the Debtor's bankruptcy and negotiated the restructuring transaction that will inure to the benefit of all creditors of the Debtor had they expected to be exposed to what exculpation provisions have become commonplace for protecting against: "stakeholders [who] all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties; or simply wish to second guess the decisionmakers in the chapter 11 case."  *See In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009).

Courts in this and other districts have approved exculpation provisions similar in scope and application for estate fiduciaries and non-estate fiduciaries. *See, e.g., Genco*, Case No. 14-11108 (SHL), at ¶ 24(d), (Bankr. S.D.N.Y. July 2, 2014) (ECF No. 322) (approving exculpation provision in plan providing exculpation for non-estate fiduciaries); *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Aug. 23, 2013) (ECF No. 4966) (confirmation order overruling U.S. Trustee objection to exculpation of both estate fiduciaries and non-estate fiduciaries from liability for "any prepetition or postpetition act taken or omitted to be taken in connection with, or arising from or relating in any way to, the chapter 11 cases"); *In re Neff Corp.*, Case No. 10-12610 (SCC), at 42 (Bankr. S.D.N.Y. Sept. 20, 2010) (ECF No. 443) (chapter 11 plan providing that estate and non-estate fiduciaries "shall neither have, nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating . . . the Plan"); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JMP), at 44 (Bankr. S.D.N.Y. Nov. 17, 2009) (ECF No. 921) (approving exculpation of estate fiduciaries and non-fiduciaries for "any pre-petition or post-petition act taken or omitted to be taken in connection with, or related to . . . the restructuring of the Company"); *In re Almatis, B.V.*, Case No. 10-12308 (MG), at 7 (Bankr. S.D.N.Y. Sept. 20, 2010) (ECF No. 444) (approving exculpation of debtors' prepetition lenders and holders of senior secured notes for both pre- and post-petition conduct); *In re Uno Rest. Holdings Corp.*, Case No. 10-10209 (MG), at 38 (Bankr. S.D.N.Y. July 6, 2010) (ECF No. 559) (approving exculpation of certain prepetition lenders from liability related to acts taken, among other things, "in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan…the Plan, [or] the Disclosure Statement"); *In re Granite Broad. Corp.*, 369 B.R. 120, 139

WEIL:\96402895\1\79607.0003

(Bankr. S.D.N.Y. 2007) (exculpation of controlling shareholder as well as estate fiduciaries);

*Enron*, 326 B.R. 497, 500 (Bankr. S.D.N.Y. 2005) (upholding exculpation provision that

precluded liability for, *inter alia*, "any act taken or omitted to be taken in connection with and

subsequent to the commencement of the Chapter 11 Cases").

Moreover, section 1125(e) of the Bankruptcy Code provides a safe harbor for all

persons, not just estate fiduciaries, who act in good faith in connection with the solicitation of a

plan:

> A person that solicits acceptance or rejection of a plan, in good
> faith and in compliance with the applicable provisions of this title,
> or that participates, in good faith . . . in the offer, issuance . . .
> offered or sold under the plan . . . of the debtor, of an affiliate
> participating in a joint plan with the debtor, or of a newly
> organized successor to the debtor under the plan, is not liable, on
> account of such solicitation or participation, for violation of any
> applicable law, rule, or regulation governing solicitation of
> acceptance or rejection of a plan . . . .

11 U.S.C. § 1125(e).

By its terms, section 1125(e) is not limited to "estate fiduciaries."  Any "person" who

"participates" in the offer or issuance of securities under a chapter 11 plan is protected.  The

Debtor is not seeking additional releases under the Exculpation Provision but merely identifying

and clarifying those parties whose actions fall within the ambit of section 1125(e) of the

Bankruptcy Code and the specific actions taken in connection with the chapter 11 case that

should be exculpated.

The Exculpation Provision is consistent with the Bankruptcy Code and complies with

applicable case law.  As such, the Exculpation Provision should be approved.

Based upon the foregoing, the Prepackaged Plan complies fully with the requirements of

sections 1122 and 1123 of the Bankruptcy Code.  Therefore, the Prepackaged Plan satisfies the

requirement of section 1129(a)(1) of the Bankruptcy Code.

51

J.        **Prepackaged Plan Satisfies Bankruptcy Code Section 1129(a)(2).**

Section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).  The legislative history to section 1129(a)(2) indicates that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code.  *See* H.R. Rep. No. 95-595, at 412 (1977) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see also In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000);  *Drexel Burnham Lambert Grp., Inc.*, 138 B.R. at 759 (citations omitted).  The Debtor's compliance with sections 1125 and 1126 of the Bankruptcy Code is discussed above and, for the reasons stated, the Debtor has satisfied the requirement of section 1129(a)(2) of the Bankruptcy Code.

K.        **Prepackaged Plan Has Been Proposed in Good Faith in Compliance with Bankruptcy Code Section 1129(a)(3).**

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The Second Circuit has defined the good faith standard as "requiring a showing that the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.'" *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984) (citations omitted).  "Good faith is 'generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'"  *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)).  "Whether a [chapter 11] plan has been proposed in good faith must be viewed in the totality of the circumstances, and the requirement of [s]ection

52

1129(a)(3) speaks more to the process of plan development than to the content of the plan." *Id.* (internal quotations and citations omitted).

In satisfaction of its fiduciary duties, the Debtor developed the Prepackaged Plan in close consultation with its primary stakeholders following months of diligence and negotiation. More specifically, the Debtor conducted exhaustive reviews and analyses of Prepackaged Plan-related issues and the Company's business to provide for the Company's ongoing viability upon emergence—which is in the best interests of all stakeholders. The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan) is the result of months of discussions and negotiations among the Debtor, the Consenting Term Lenders, and the Consenting Senior Noteholders, which culminated in the execution of the Restructuring Support Agreements pursuant to which such Consenting Creditors agreed to support confirmation of the Prepackaged Plan. The Debtor determined, and the Consenting Creditors agreed, that it was in the interests of all creditors to pursue a balance sheet restructuring that impairs the Term Lenders, the Senior Noteholders, and the Convertible Noteholders, while leaving all of the Debtor's other creditors, such as trade vendors and employees, unimpaired under the Prepackaged Plan.

The overwhelming acceptance of the Prepackaged Plan by the holders of Claims in (i) Class 4 (Term Loan Claims) that voted on the Prepacakged Plan (totaling 100% in amount and number of all holders of Claims in Class 4), (ii) Class 5 (Senior Notes Claims) that voted on the Prepackaged Plan (totaling 99.24% in amount and 96.84% in number of all holders of Claims in Class 5), and (iii) Class 6 (Convertible Notes Claims) that voted on the Prepackaged Plan (totaling 99.99% in amount and 96.67% in number of all holders of Claims in Class 6) reflects the Prepackaged Plan's fairness and the good faith efforts of the parties to achieve the objectives

WEIL:\96402895\1\79607.0003

of chapter 11.    Accordingly, the Debtor has acted with the best intentions for creditors in proposing the Prepackaged Plan and the good faith requirement of section 1129(a)(3) is satisfied. *See In re Chemtura Corp.*, 439 B.R. at 608-09 (finding good faith requirement met because, among other things, debtor negotiated and reached agreements with several parties in interest to put forward a chapter 11 plan which "in the aggregate…demonstrate a good faith effort on the part of the debtor to consider the needs and concerns of all major constituencies in this case").

L.      **Prepackaged Plan Complies with Bankruptcy Code Section 1129(a)(4).**

Section 1129(a)(4) requires that "any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."   11 U.S.C. § 1129(a)(4).   Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval as to their reasonableness by the court.   *See In re Journal Register Co.*, 407 B.R. 520, 537 (Bankr. S.D.N.Y 2009); *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Texaco Inc.*, 84 B.R. 893, 907-08 (Bankr. S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).

All payments for services provided to the Debtor during the chapter 11 case must be approved by the Court as reasonable in accordance with section 1129(a)(4) of the Bankruptcy Code.   Specifically, Section 2.2 of the Prepackaged Plan provides that all Fee Claims must be approved by the Court as reasonable pursuant to final fee applications.   Finally, the Prepackaged Plan provides that the Bankruptcy Court shall retain jurisdiction to "hear and determine all Fee Claims and Restructuring Expenses."   *See* Plan, § 11.1.

Therefore, the Prepackaged Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code with respect to the Debtor's professionals.   The U.S. Trustee has objected

WEIL:\96402895\1\79607.0003

to the payment of non-Debtor professionals as Restructuring Expenses under Section 2.5 of the Prepackaged Plan. For the reasons explained below in Section III.A of this Memorandum, the U.S. Trustee's objection should be overruled and the Prepackaged Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### M.    Debtor Complied with Bankruptcy Code Section 1129(a)(5).

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and, to the extent there are any insiders that will be retained or employed by the reorganized debtors, that there be disclosure of the identity and nature of any compensation of any such insiders. *See* 11 U.S.C. § 1129(a)(5).

The directors of the Reorganized Debtor will be selected in accordance with Section 5.11 of the Prepackaged Plan. Upon the Effective Date, the new board of directors will consist of nine directors—six directors will be designated by the Requisite Senior Noteholders and three directors will be designated by the Debtor. The current officers of the Debtor will remain the same as before the Commencement Date and the identities of the new directors of the Reorganized Debtor will be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

### N.    Prepackaged Plan Does Not Contain Any Rate Changes.

Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." 11 U.S.C. § 1129(a)(6). The Prepackaged Plan does not provide for any rate changes by the Debtor, and, therefore, section 1129(a)(6) is inapplicable.

WEIL:\96402895\1\79607.0003

**O.      Prepackaged Plan is in Best Interests of All Creditors of, and Equity Interest Holders in, the Debtor.**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and stockholders in the Debtor—commonly referred to as the "best interests" test. The best interests test focuses on potential individual dissenting creditors rather than classes of claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 442 n.13 (1999). It requires that each holder of a claim or equity interest either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Under the best interests test, "the court must measure what is to be received by rejecting creditors . . . under the plan against what would be received by them in the event of liquidation under chapter 7. In doing so, the court must take into consideration the applicable rules of distribution of the estate under chapter 7, as well as the probable costs incident to such liquidation." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007). The Court must evaluate the liquidation analysis cognizant of the fact that "[t]he hypothetical liquidation entails a considerable degree of speculation about a situation that will not occur unless the case is actually converted to chapter 7." *In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000) (citations omitted). As section 1129(a)(7) makes clear, the liquidation analysis applies only to non-accepting holders of impaired claims or equity interests. *See In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992) ("[T]he liquidation analysis applies only to non-accepting impaired claims or interests.").

The best interests test does not apply to the holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7

(General Unsecured Claims), and Class 8 (Intercompany Claims), because each such holder in such Class is Unimpaired under the Prepackaged Plan, deemed to accept the Prepackaged Plan, and will either receive payment in full, in Cash, be reinstated and paid in the ordinary course, or otherwise its legal, equitable, or contractual rights will not be altered. Accordingly, the holders of such Claims are receiving or retaining under the Prepackaged Plan the maximum recovery to which they are entitled and, as a result, could not receive greater recovery under chapter 7.

As set forth in the Liquidation Analysis, the best interests test is satisfied as to every single holder of a Claim against or Interest in the Debtor. Specifically, the Liquidation Analysis demonstrates that all Classes of Claims or Interests will recover value equal to or in excess of what such Claims or Interests would receive in a hypothetical chapter 7 liquidation. Indeed, holders of Claims in (i) Class 4 (Term Loan Claims) are expected to receive a recovery of 100% under the Prepackaged Plan, as opposed to 81% to 100% in a hypothetical chapter 7 liquidation, (ii) Class 5 (Senior Notes Claims) are expected to receive a recovery of 68% under the Prepackaged Plan, as opposed to 0% to 13% in a hypothetical chapter 7 liquidation, and (iii) Class 6 (Convertible Notes Claims) are expected to receive a recovery of 9% under the Prepackaged Plan, as opposed to 0% in a hypothetical chapter 7 liquidation. Disclosure Statement, Ex. H (Liquidation Analysis).

The Debtor's Liquidation Analysis is sound and reasonable and incorporates justified assumptions and estimates regarding the Debtor's assets and claims, such as (i) the additional costs and expenses that would be incurred by the Debtor as a result of a chapter 7 trustee's fees and retention of new professionals, (ii) the delay and erosion of value that would be caused to the Debtor's assets due to the need of the newly appointed chapter 7 trustee and its professionals to familiarize themselves with the assets and liabilities of the Debtor, (iii) the

WEIL:\96402895\1\79607.0003

reduced recoveries caused by an accelerated sale or disposition of the Debtor's assets by the trustee, and (iv) the additional General Unsecured Claims that would likely arise as a result of the rejection of certain executory contracts and unexpired leases, and other potential claims that may arise in a chapter 7 liquidation.

The assumptions and estimates in the Liquidation Analysis are appropriate in the context of this chapter 11 case. Similar assumptions are typically taken into account in hypothetical liquidation analyses and have been approved by this Court. *See e.g.*, *In re Adelphia Commc'ns Corp.*, 368 B.R. at 251-59 (considering, among other things, additional administrative costs of appointing one or more chapter 7 trustees, loss of value associated with loss of expertise of debtors' employees and professionals, increased claims against debtors and resulting delays in distributions); *see also In re Uno Rest. Holdings Corp.*, Case No. 10-10209 (MG), 2010 Bankr. LEXIS 2931, at * 227 (Bankr. S.D.N.Y. May 11, 2010) (liquidation analysis considered increased costs and expenses of chapter 7 liquidation arising from fee payable to chapter 7 trustee and its advisors, erosion of asset value in context of expeditious liquidation and "forced sale" atmosphere and substantial increases in claims) *(Order Confirming Second Amended Joint Consolidation Plan of Reorganization*, filed July 6, 2010, ECF. No. 559).

The estimates regarding the Debtor's assets and liabilities that are incorporated into the Liquidation Analysis are also based upon the knowledge and familiarity of the Debtor's advisors with the Company's business and their relevant experience in chapter 11 proceedings. The Debtor's Liquidation Analysis should be given deference. *See In re Charter Commc'ns*, 419 B.R. 221, 261-62 (Bankr. S.D.N.Y. 2009) (discrediting creditors' objection to liquidation analysis because it consisted of a "largely speculative exercise of listing possible incremental

recoveries and offered no reliable opinions as to the likelihood that any of these identified sources of possible extra value would ever materialize.").

The Prepackaged Plan satisfies the requirements of section 1129(a)(7).

**P.    Prepackaged Plan Has Been Accepted by or Is Presumed to Have Been Accepted by All Impaired Classes Entitled to Vote on Prepackaged Plan, and As to Such Classes, Requirements of Bankruptcy Code Section 1129(a)(8) Have Been Satisfied.**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests accept the plan, as follows: "With respect to each class of claims or interests – (A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).  As set forth above, holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) are not impaired under the Prepackaged Plan and are, therefore, conclusively presumed to have accepted the Prepackaged Plan pursuant to section 1126(f) of the Bankruptcy Code.  Additionally, as evidenced by the Voting Certification, the Prepackaged Plan has been accepted by well in excess of two-thirds in amount and one-half in number of holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) entitled to vote and who voted on the Prepackaged Plan. Thus, as to such Classes, the requirements of section 1128(a)(8) of the Bankruptcy Code have been satisfied.

Holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are deemed to have rejected the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code.  As to these Classes, the Prepackaged Plan may be confirmed over their dissent under the "cram down" provisions of section 1129(b) of the Bankruptcy Code, as discussed *infra*.

**Q.      Prepackaged Plan Provides for Payment in Full of All Allowed Priority Claims.**

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding allowed claims entitled to priority under section 507(a) receive specified cash payments under the plan. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) of the Bankruptcy Code sets forth the treatment the plan must provide. 11 U.S.C. § 1129(a)(9).

The Prepackaged Plan complies with section 1129(a)(9) of the Bankruptcy Code. The Prepackaged Plan provides that holders of allowed Administrative Expense Claims under section 503(b) of the Bankruptcy Code will be paid in full, in Cash, on the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes Allowed, unless such holder agrees to less favorable treatment. *See* Prepackaged Plan, § 2.1. Moreover, the Prepackaged Plan provides that, unless a holder agrees to less favorable treatment, holders of Allowed Priority Non-Tax Claims under section 507(a) of the Bankruptcy Code (excluding Priority Tax Claims under section 507(a)(8), as described below) will (i) be paid in full, in Cash, on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Claim becomes Allowed, (ii) be Reinstated, or (iii) receive such other treatment so as to render such holder's Claim Unimpaired. *See* Prepackaged Plan, § 4.1, Art. III and IV. The Plan, therefore, satisfies the requirements of section 1129(a)(9)(A) and (B).

The Plan also satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code in respect of the treatment of Priority Tax Claims under section 507(a)(8). Pursuant to Section 2.3 of the Prepackaged Plan, except as otherwise may be agreed, holders of Allowed Priority Tax Claims will be paid cash in an amount equal to such Claim on, or as soon

60

thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is Allowed on the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes Allowed, and (iii) the date such Claim is due and payable in the ordinary course as such obligation becomes due.  *See* Prepackaged Plan, § 2.3.

The Prepackaged Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

### R.    Prepackaged Plan Satisfies Bankruptcy Code Section 1129(a)(10).

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Prepackaged Plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).  Here, all of the Classes entitled to vote on the Prepackaged Plan—Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims) and Class 6 (Convertible Notes Claims)—are impaired and have accepted the Prepackaged Plan, without including the acceptance of the Prepackaged Plan by any insiders in such Classes. Accordingly, the Prepackaged Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

### S.    Prepackaged Plan Is Feasible.

Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Prepackaged Plan is feasible as a condition precedent to confirmation.  Specifically, it requires that confirmation is not likely to be followed by liquidation of the debtor, unless such liquidation is proposed in the plan.  11 U.S.C. § 1129(a)(11).  The feasibility test set forth in section 1129(a)(11) requires the Bankruptcy Court to determine whether the Prepackaged Plan may be implemented and has a reasonable likelihood of success.  *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 649 (2d Cir. 1988).

WEIL:\96402895\1\79607.0003

The Prepackaged Plan is feasible within the meaning of this provision. The key element of feasibility is whether there is a reasonable probability that the provisions of the plan can be performed. The purpose of the feasibility test is to protect against visionary or speculative plans. As noted by the United States Court of Appeals for the Ninth Circuit: "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted). Clearly, the Prepackaged Plan does not contain any visionary scheme but is a rational plan for the continued viability of the Company's business. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds. *See In re U.S. Truck Co.,* 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

In the context of this case, the applicable feasibility test is to determine whether the Debtor will be able to make the payments required under the Prepackaged Plan. *See, e.g., In re Journal Register Co.*, 407 B.R. 520, 539 (Bankr. S.D.N.Y. 2009) (explaining that feasibility test is "whether the things which are to be done after confirmation can be done as a practical matter under the facts") (internal quotation and citations omitted), *appeal dismissed sub nom. Freeman v. Journal Register Co.*, 452 B.R. 367 (S.D.N.Y. 2010).

The Debtor has analyzed its ability to fulfill its obligations under the Prepackaged Plan and taken into consideration its estimated costs of administration. The Debtor, with aid from its advisors, prepared financial projections (the "**Projections**") for the fiscal years 2018 through 2020, as set forth in Section VII of the Disclosure Statement. The Projections take into account that the Prepackaged Plan provides for the reduction of total debt of the Debtor by

62

approximately $800 million and reduced corporate cash interest by approximately $25 million. These material reductions will further reinforce the Reorganized Debtor's ability to perform its obligations under the Prepackaged Plan and reorganized capital structure. Moreover, upon emergence, the Debtor will have approximately $200 million in cash on hand to operate the Company's business in the ordinary course. Based upon the Debtor's Projections and prior course of conduct, the Debtor reasonably believes that it will be able to satisfy all payments and distributions as contemplated by the Prepackaged Plan through funding provided by the Affiliate Co-Plan Proponents.

The Prepackaged Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

### T.    Prepackaged Plan Complies with Bankruptcy Code Section 1129(a)(12).

Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan[.]" 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930] of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2). In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, Section 12.1 of the Prepackaged Plan provides that on the Effective Date, and thereafter as may be required, such fees, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code, shall be paid by the Reorganized Debtor.

### U.    Bankruptcy Code Section 1129(a)(13) Is Satisfied.

Section 1129(a)(13) requires that:

> The plan provides for continuation after the effective date of payment of all retiree benefits . . . at the level established pursuant to section (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

63

11 U.S.C. § 1129(a)(13). Pursuant to the Prepackaged Plan, all employee compensation plans and Benefit Plans of the Debtor in effect, including benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, will be deemed to be, and will be treated as if they were, executory contracts to be assumed under the Prepackaged Plan. *See* Prepackaged Plan, § 5.14. Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(a)(13).

## V.    Prepackaged Plan Satisfies "Cram Down" Requirements under Bankruptcy Code Section 1129(b) for Non-Accepting Classes.

Section 1129(b) of the Bankruptcy Code provides a mechanism (known colloquially as "cram down") for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims. Under section 1129(b), the court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes.

As each of the classes entitled to vote on the Prepackaged Plan Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) voted to accept the Prepackaged Plan, cramdown is only relevant to those Classes of Claims that are deemed to have rejected the Prepackaged Plan—namely, Class 9 (Existing Equity Interests) and Class 10 (Other Interests).

The Prepackaged Plan may be confirmed as to each of these Classes pursuant to the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

## W.    Prepackaged Plan Does Not Discriminate Unfairly.

Section 1129(b)(1) does not prohibit discrimination between classes. Rather, it prohibits discrimination that is unfair. Under section 1129(b) of the Bankruptcy Code, a plan unfairly

WEIL:\96402895\1\79607.0003

discriminates where similarly situated classes are treated differently without a reasonable basis

for the disparate treatment. *See In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 310–11 (Bankr.

S.D.N.Y. 2016), *motion to certify appeal denied*, No. 16-CV-2561 (JGK), 2016 WL 6238616

(S.D.N.Y. Oct. 25, 2016), and *appeal dismissed as moot*, No. 16 CIV. 6054 (LAP), 2017 WL

477780 (S.D.N.Y. Feb. 3, 2017) ("Courts generally will approve placement of similar claims in

different classes provided there is a "rational" or "reasonable" basis for doing so" and "satisfies

the flexible requirements of section 1122 because a valid business, factual, and/or legal reason

exists for separately classifying the various classes of claims and interests created under the Plan.

. . [W]here claims or interests of the same priority are separately classified, such claims or

interests are either dissimilar or another good business reason exists for such classification."); *In*

*re WorldCom Inc*., Case No. 02-13533 (AJG), 2003 WL 23861928, at *59 (Bankr. S.D.N.Y. Oct.

31, 2003) (citing *In re Buttonwood Partners, Ltd.*, 111 B.R 57, 63 (Bankr. S.D.N.Y. 1990); *In re*

*Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on*

*other grounds*, 78 B.R. 407 (S.D.N.Y. 1986), *aff'd sub nom*, *Kane v. Johns-Manville Corp.,* 843

F.2d 636 (2d Cir. 1988)).  As between two classes of claims or two classes of equity interests,

there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests,

*see, e.g.*, *In re Johns-Manville Corp.*, 68 B.R. at 636, or (ii) taking into account the particular

facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see,*

*e.g., In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 714, 715 (Bankr. S.D.N.Y. 1992)

(separate classification and treatment was rational where members of each class "possess[ed]

different legal rights").

In the perspective of the foregoing standards, the Prepackaged Plan does not

"discriminate unfairly" with respect to Class 9 (Existing Equity Interests) or Class 10 (Other

Interests).  The holders of Interests in Class 9, which are receiving 13.5% of the new equity in the Reorganized Debtor pursuant to the Prepackaged Plan, are legally distinct in nature from holders of Interests in Class 10.  All Existing Equity Interests in Class 9 consist of holders of "vested" equity interests who hold issued common stock in WIMC.  The holders of Interests in Class 10, which are being cancelled pursuant to the Prepackaged Plan, are legally distinct in nature from Class 9 because Class 10 consists of holders of "unvested" equity interests.  Such holders do not hold issued shares of stock and do not have legal rights associated with ownership stock in the Debtor.

Accordingly, the Prepackaged Plan does not "discriminate unfairly" with respect to any impaired Classes of Claims or Interests.

### X.    Prepackaged Plan Is Fair and Equitable.

Sections 1129(b)(2)(B)(ii) and (b)(2)(C)(ii) of the Bankruptcy Code provide that a plan is fair and equitable with respect to a class of impaired unsecured claims or interests if under the plan no holder of any junior claim or interest will receive or retain property under the plan on account of such junior claim or interest.  *See* 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).  Distributions under the Prepackaged Plan are made in the order of priority prescribed by the Bankruptcy Code and in accordance with the rule of absolute priority.  Pursuant to the Prepackaged Plan, holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests), respectively, are deemed to have rejected the Prepackaged Plan and, therefore, the absolute priority rule must be satisfied as to such classes.

The absolute priority rule is not violated as to the holders of Interests in Class 9 (Existing Equity Interests) or Class 10 (Other Interests) because no interests junior to such class will receive or retain any property under the Prepackaged Plan on account of such junior interest*s*. *See In re Finlay Enters. Inc.*, 2010 WL 6580628, at *7 (holding that fair and equitable test was

WEIL:\96402895\1\79607.0003

satisfied where no interest junior to interests of rejecting class received any property under plan). In addition, based upon the Company's current valuation, equity is "out of the money" and not entitled to any recovery.

The Prepackaged Plan is "fair and equitable" and, therefore, consistent with the requirements of section 1129(b) of the Bankruptcy Code.

## III.    REMAINING OBJECTIONS SHOULD BE OVERRULED AND PREPACKAGED PLAN CONFIRMED.

### A.    Objection of the United States Trustee (ECF No. 130), dated December 29, 2017 (the "UST Objection").

As explained above, the objections of the U.S. Trustee are (i) the Court lacks subject matter jurisdiction over the releases and exculpations provided in the Prepackaged Plan, (ii) the Estate Release, Consensual Releases, Affiliate Guarantee Releases, and Exculpation Provision must meet the standards set forth in *Metromedia*, (iii) the Debtor's proposed language with respect to the Management Incentive Plan is inappropriate, (iv) the payment of professional fees pursuant to the Restructuring Support Agreements cannot be approved unless fee applications are filed with the Court, and (v) the Debtor seeks to impermissibly exclusively object to Claims after the Effective Date.  For the reasons stated herein, the U.S. Trustee's objections should be overruled to the extent not resolved.

The Debtor has responded to the U.S. Trustee's objections regarding this Court's subject matter jurisdiction and the propriety of the releases and exculpation provisions in the Plan in Section II.H. and Sections II. D-G, respectively.  With respect to the U.S. Trustee's objection to the Debtor's proposed language regarding the Management Incentive Plan, the Debtor has proposed the following italicized language in the Proposed Confirmation Order and Prepackaged Plan, which the Debtor believes addresses the U.S. Trustee's concern:

WEIL:\96402895\1\79607.0003

> Notwithstanding anything set forth in the Prepackaged Plan, the Plan Supplement, or in this Order to the contrary, this Order shall not authorize, or be deemed to authorize, the Debtor (or the Reorganized Debtor, as applicable) to enter into, or assume, key employee retention agreements or the Management Incentive Plan and confirmation of the Prepackaged Plan shall not be deemed to be approval of the key employee retention agreements or the Management Incentive Plan in any respect; provided that the foregoing shall not (i) prejudice or be deemed to prejudice the Reorganized Debtor's rights to consider or enter into the Employee Arrangements or the Management Incentive Plan after the Effective Date, or *(ii) modify section 5.14(b) of the Prepackaged Plan.*

See Proposed Confirmation Order, ¶ 35.

> Following the Effective Date, the Reorganized Debtor will enter into the Management Incentive Plan. All awards issued under the Management Incentive Plan will be dilutive of all other New Common Stock (after giving effect to conversion of the Mandatorily Convertible Preferred Stock and any shares issued under the New Warrants) issued pursuant to the Plan. Within sixty (60) days following the Effective Date, the Management Incentive Plan shall be independently considered and approved by the New Board.

See Prepackaged Plan, § 5.14(b).

## 1.    Payment of Professional Fees Pursuant to Restructuring Support Agreements.

The U.S. Trustee erroneously argues that any professional fees paid by the Debtor to unretained professionals cannot be paid unless and until such professionals "file an application with the Court and demonstrate to the Court's satisfaction that they made a 'substantial contribution' in the case pursuant to Section 503(b)(3)(D)" of the Bankruptcy Code. UST Objection, ¶ 50. There are four categories of Restructuring Expenses implicated by the U.S. Trustee's objection:

- the legal and financial advisors of the Requisite Term Lenders;

- the legal advisors of the DIP Lenders;

68

WEIL\96402895\1\79607.0003

- the costs, fees (including legal fees), and expenses of the Prepetition Administrative Agent, the Prepetition Senior Notes Trustee, and the Convertible Notes Trustee; and

- the legal and financial advisors of the Requisite Senior Noteholders.

For the reasons discussed below, the Restructuring Expenses may be paid by the Debtor without the need to file fee applications with the Court.

First, prior to the Commencement Date, as is the case in many prepackaged or pre-negotiated chapter 11 cases, the Debtor entered into contractual agreements (the "**Fee Agreements**") with advisors to the Requisite Term Lenders, Requisite Senior Noteholders, and DIP Lenders to pay such advisors' Restructuring Expenses. Moreover, the Debtor is also required to pay the Restructuring Expenses of advisors to the Requisite Term Lenders, the Requisite Senior Noteholders, and the Prepetition Administrative Agent pursuant to the Restructuring Support Agreements. Given that the Debtor is assuming the Fee Agreements and the Restructuring Support Agreements as executory contracts under the Prepackaged Plan, the Debtor is obligated to pay the Restructuring Expenses of the Requisite Term Lenders, Requisite Senior Noteholders, DIP Lenders, and Prepetition Administrative Agent as cure payments.

Alternatively, even if the Fee Agreements and the Restructuring Support Agreements were not executory contracts assumed under the Prepackaged Plan, the Debtor would nevertheless be required to pay the applicable Restructuring Expenses under the Fee Agreements and the Restructuring Support Agreements because the non-payment of these fees would result in a breach of the Fee Agreements and the Restructuring Support Agreements. If the Debtor breached the Fee Agreements and the Restructuring Support Agreements, the Debtor would be required to pay any rejection damages (*i.e.*, applicable Restructuring Expenses) in full as General Unsecured Claims pursuant to the Prepackaged Plan.

WEIL:\96402895\1\79607.0003

The U.S. Trustee's reliance on *In re Lehman* is misplaced. The holding in *In re Lehman* is limited, as it merely construes a plan provision permitting members of a creditors' committee to be reimbursed for professional fees solely by virtue of their membership on the committee pursuant to section 1123(b)(6) of the Bankruptcy Code. *In re Lehman*, 508 B.R. 283, 291 (S.D.N.Y. 2014). The payments at issue in *In re Lehman*, which was far from a prepackaged chapter 11 case, were expressly prohibited by the Bankruptcy Code and were not required to be paid by the Lehman debtors pursuant to prepetition contractual agreements with advisors that were being assumed. Other bankruptcy courts have refused to follow the rationale of *In re Lehman*. *See, e.g., Dendreon Corp.*, Case No. 14-12515 (LSS) (Bankr. D. Del. Dec. 23, 2014) (rejecting an objection by the U.S. Trustee that was based on section 503(b) of the Bankruptcy Code).

Courts in this and other districts have approved the payment of professional fees pursuant to restructuring support agreements in similar prepackaged chapter 11 cases. *See In re Fairway Group Holdings Corp., et al.*, Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 8, 2016) (ECF No. 156) (approving the payment of fees to professionals pursuant to the debtor's restructuring support agreement); *In re Basic Energy Servs., Inc., et al.*, Case No. 16-12320 (KJC) (Bankr. D. Del. 2016) (ECF No. 257) (same); *In re Tidewater, Inc., et al.*, Case No. 17-11132 (BLS) (Bankr. D. Del. 2017) (ECF No. 378) (same); *In re Halcon Resources Corp., et al*, Case No. 16-11724 (BLS), at 54 (Bankr. D. Del. 2016) (ECF No. 200) (same).

Second, the Court has already authorized the payment of the following Restructuring Expenses as adequate protection or DIP expenses without the need for any further approval by the Court:

- the legal and financial advisors of the Requisite Term Lenders;

- the legal advisors of the DIP Lenders; and

- the costs, fees (including legal fees), and expenses of the Prepetition Administrative Agent.

Such Restructuring Expenses were approved by the Court in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (A) Authorizing Debtor to Guarantee Warehouse Financing of Certain Non-Debtor Subsidiaries and Use Cash Collateral; (B) Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection; (D) Modifying Automatic Stay; and (E) Granting Related Relief* (the "**Final DIP Order**") (ECF No. 118), ¶ 2(b).

Last, the Restructuring Expenses of the Prepetition Senior Notes Trustee and the Convertible Notes Trustee may also be paid pursuant to the Prepetition Senior Notes Indenture and the Prepetition Convertible Notes Indenture, respectively.  Courts have recognized that the Trust Indenture Act reflects Congressional concern for the "significant economic considerations" faced by indenture trustees, and Congress's intent to limit the indenture trustee's economic exposure. *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 815-16 (2d Cir. 1985).  As such, the Prepetition Senior Notes Trustee and the Convertible Notes Trustee are entitled to what is commonly called a "charging lien" on distributions to the Senior Noteholders and Convertible Noteholders under the Prepackaged Plan (*i.e.*, the state law contractual right of an indenture trustee to deduct its unpaid fees and expenses, including the fees and expenses of professionals retained by the indenture trustee, from distributions received by the indenture trustee for ultimate payment to bondholders).  The Prepackaged Plan expressly preserves the important state law rights of the Prepetition Senior Notes Trustee and the Convertible Notes Trustee to exercise their "charging lien" in this chapter 11 case. *See* Prepackaged Plan, §§ 5.10, 6.8.

71

Courts frequently confirm chapter 11 plans that provide for the payment of indenture trustee fees and expenses without requiring a section 503(b) application. *See, e.g., In re Penn Va. Corp.*, No. 16-32395 (KLP) (Bankr. E.D. Va. Aug. 11, 2016) (confirming chapter 11 plan providing for payment of indenture trustee fees and expenses); *In re Alpha Natural Resources, Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. July 12, 2016) (same); *In re RCS Capital Corp.*, No. 16-10223 (Bankr. D. Del. May 19, 2016) (same); *In re Colt Holding Co., LLC*, No. 15-11296 (Bankr. D. Del. Dec. 16, 2015) (same); *In re Inversiones Alsacia S.A.*, No. 14-12896 (Bankr. S.D.N.Y. Dec. 4, 2014) (same); *In re Genco Shipping & Trading Ltd.*, No. 14-11108 (Bankr. S.D.N.Y. July 2, 2014) (same); *In re Brookstone Holdings Corp.*, No. 14-10752 (Bankr. D. Del. June 24, 2014) (same); *In re Excel Maritime Carriers Ltd.*, No. 13-23060 (Bankr. S.D.N.Y. Jan. 27, 2014) (same); *In re Movie Gallery, Inc.*, No. 07-33849 (Bankr. E.D. Va. Apr. 10, 2008).

## 2.  Reorganized Debtor May Exclusively Object to Claims.

The U.S Trustee objects to Section 7.2 of the Prepackaged Plan, which provides that "[e]xcept insofar as a Claim is Allowed under the Plan, only the Reorganized Debtor shall be entitled to object to Claims after the Effective Date."  Similar language, however, was recently approved by this Court in *In re Angelica Corp.*  The chapter 11 plan ultimately approved by this Court in *In re Angelica* provided that as of the effective date of the plan, any "objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator."[18]  *See In re Angelica Corp.*, Case No. 17-10870 (JLG) (Bankr. S.D.N.Y. Aug. 31, 2017) (ECF No. 544, Ex. 1).  The Prepackaged Plan's language is similar to

---

[18] For purposes of completeness, the entire language of Section 8.2 is as follows:  "As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator. Such objections and requests for estimation shall be served and filed (i) on or before the 120th day following the later of (a) the Effective Date and (b) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) such later date as (a) ordered by the Bankruptcy Court upon motion filed by the Plan Administrator or (b) stipulated by the Plan Administrator and the holder of such Claim without further order of the Bankruptcy Court."

the language approved by this Court in *In re Angelica* because the Prepackaged Plan seeks to place the right to object to Claims after the Effective Date in the hands of a limited party—in this case, the Reorganized Debtor.  Given the expedient and consensual nature of this chapter 11 case, there is no formal claims process established under the Prepackaged Plan.  Therefore, it would be illogical to allow parties in interest to object to claims in the ordinary course when such parties in interest would not even receive notice of such claims.

Courts in this district and other districts have approved similar language in other chapter 11 cases.  *See In re Fairway Group Holdings Corp., et al.*, Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 8, 2016) (ECF No. 156) (Section 7.2 of chapter 11 prepackaged plan provided that "[e]xcept insofar as a Claim is Allowed under the Plan, only the Debtors or the Reorganized Debtors shall be entitled to object to Claims."); *In re Sabine Oil & Gas Corp.*, Case No. 15-11835 (SCC) (Bankr. S.D.N.Y. July 27, 2016) (ECF No. 1359) (Article VII.A.2 of chapter 11 plan provided that "[e]xcept as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors by order of the Court, shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims[.]"); *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11 2013) (ECF No. 6065) (Article VIII.A.3 of chapter 11 plan provided that "[o]n the Effective Date, the Liquidating Trust will have the exclusive authority to: (a) File, withdraw, or litigate to judgment, objections to Claims or Equity Interests (other than Borrower Claims, Private Securities Claims, and the NJ Carpenters Claims)[.]"); *In re American Gilsonite Co., et al.*, Case No. 16-12316 (CSS), (Bankr. D. Del. Dec. 12, 2016) (ECF No. 174) (Section 7.2 of chapter 11 prepackaged plan provided that

WEIL:\96402895\1\79607.0003

"[e]xcept insofar as a Claim is Allowed under the Plan, only the Debtors or the Reorganized Debtors shall be entitled to object to Claims.").

In any case, section 7.2 of the Prepackaged Plan has been amended to reflect that the rights of parties in interest to object to a proof of Claim filed with the Bankruptcy Court under section 502(a) of the Bankruptcy Code are preserved. *See* Prepackaged Plan, § 7.2.

For the reasons set forth herein, the UST Objection should be overruled in all respects.

## IV.    CAUSE EXISTS TO WAIVE STAY OF CONFIRMATION ORDER.

The Debtor respectfully requests that the Bankruptcy Court direct that the Confirmation Order shall be effective immediately upon its entry, notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e).  Bankruptcy Rule 3020(e) provides that: "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).  As such, and as the Advisory Committee notes to Bankruptcy Rule 3020(e) state, "the court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately."  Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend.

Under the circumstances, it is appropriate for the Bankruptcy Court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and permit the Debtor to consummate the Plan and commence its implementation without delay after the entry of the Confirmation Order.  The Debtor's prompt emergence from chapter 11 will assuage the concerns of the Company's key customers, critical vendors, and valuable employees regarding the sustainability and viability of the Company.  Furthermore, each day that the Debtor remains in chapter 11 it incurs significant administrative and professional costs.  For these reasons, the Debtor, its advisors, and other key constituents are working to expedite the Debtor's entry into and consummation of the documents and transactions necessary to effectuate the Prepackaged

WEIL:\96402895\1\79607.0003

Plan so that the Effective Date may occur as soon as possible after the entry of the Confirmation

Order.  Based on the foregoing, the requested waiver of the 14-day stay is in the best interests of

the Estate and creditors and will not prejudice any parties in interest.

## CONCLUSION

A.    The Disclosure Statement and the Solicitation Procedures satisfy the

requirements of sections 1125 and 1126(b) of the Bankruptcy Code, Bankruptcy Rules 3017 and

3018, and Local Rules 3017-1, 3018-1, and 3018-2 and should be approved.

B.    The Prepackaged Plan complies with all of the requirements of section

1129 of the Bankruptcy Code and should be confirmed.

Dated:  New York, New York
      January 5, 2018


      /s/  *Sunny Singh*
      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York  10153
      Telephone:  (212) 310-8000
      Facsimile:  (212) 310-8007
      Ray C. Schrock, P.C.
      Sunny Singh, Esq.

      *Attorneys for Debtor*
      *and Debtor in Possession*

**<u>Exhibit A</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re                                             :
                                                  :    Chapter 11
WALTER INVESTMENT MANAGEMENT             :
CORP.,                                            :    Case No. 17-13446 (JLG)
                                                  :
             Debtor.[1]                           :
                                                  :
-----------------------------------------------------------------x

FINDINGS OF FACT, CONCLUSIONS OF
LAW AND ORDER (I) APPROVING DEBTOR'S (A) DISCLOSURE
STATEMENT, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND
(C) FORM OF BALLOTS, AND (II) CONFIRMING AMENDED PREPACKAGED
CHAPTER 11 PLAN OF REORGANIZATION OF WALTER INVESTMENT
MANAGEMENT CORP. AND THE AFFILIATE CO-PLAN PROPONENTS

Walter Investment Management Corp. as debtor and debtor in possession in the

above-captioned chapter 11 case (the "**Debtor**" and, together with its non-debtor affiliates,

"**Walter**" or the "**Company**") and the Affiliate Co-Plan Proponents[2] as "proponents of the plan"

within the meaning of section 1129 of title 11 of the United States Code (the "**Bankruptcy**

**Code**") having proposed and filed (A) the *Prepackaged Chapter 11 Plan of Reorganization of*

*Walter Investment Management Corp. and the Affiliate Co-Plan Proponents* dated November 6,

2017 and filed with the Bankruptcy Court on November 30, 2017 (ECF No. 11) and the

*Amended Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management*

*Corp. and the Affiliate Co-Plan Proponents*, dated January 5, 2018 and filed with the Bankruptcy

Court (as the same has been or may be amended, modified, supplemented, or restated, the

---

[1] The last four digits of the Debtor's federal tax identification number are 0486.  The location of the Debtor's corporate headquarters is 1100 Virginia Drive, Suite 100, Fort Washington, PA 19034.

[2] The Affiliate Co-Plan Proponents are Ditech, DF Insurance Agency LLC, Green Tree Credit LLC, Green Tree Credit Solutions LLC, Green Tree Insurance Agency of Nevada, Inc., Walter Management Holding Company LLC, Green Tree Servicing Corp., Mortgage Asset Systems, LLC, REO Management Solutions, LLC, RMS, and Walter Reverse Acquisition LLC.

"**Prepackaged Plan**"), a copy of which is annexed hereto as **Exhibit 1**,[3] and that certain supplement to the Prepackaged Plan, dated and filed with the Bankruptcy Court on December 22, 2017 (ECF No. 121) (as the documents contained therein have been or may be further amended or supplemented, the "**Plan Supplement**"), and (B) the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents*, dated November 6, 2017 and filed with the Bankruptcy Court on November 30, 2017 (ECF No. 12) (the "**Disclosure Statement**"); and the Bankruptcy Court having entered an order on December 7, 2017 (ECF No. 77) (the "**Scheduling Order**"), which (i) scheduled a combined hearing (the "**Combined Hearing**") to consider approval of the Disclosure Statement, the Debtor's solicitation procedures (the "**Solicitation Procedures**"), and the forms of ballots[4] (the "**Ballots**") transmitted to classes of Claims voting on the Prepackaged Plan, (ii) established procedures for objecting to approval of the Disclosure Statement, the Solicitation Procedures, and confirmation of the Prepackaged Plan, (iii) approved the form, manner, and sufficiency of notice of the Combined Hearing, which included, among other things, information with respect to the commencement of the above-captioned chapter 11 case (the "**Chapter 11 Case**"), (iv) scheduled the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") for January 8, 2018, (v) extended the time for the Debtor to file its schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules and SOFAs**"), and waived the requirement that the Debtor file the Schedules and SOFAs unless the Prepackaged Plan is not confirmed by January 29, 2018 at 1:00

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed in the Prepackaged Plan, or as the context otherwise requires.

[4] The forms were attached as Exhibits B, C-1, C-2, D-1, and D-2 to the motion to approve the Solicitation Procedures (ECF No. 6).

WEIL:\96402908\1\79607.0003

p.m. (Prevailing Eastern Time), and (vi) granted related relief; and the Ballots having been duly

transmitted to holders of Class 4 Claims (Term Loan Claims), holders of Class 5 Claims (Senior

Notes Claims), and holders of Class 6 Claims (Convertible Notes Claims), respectively, in

compliance with the Solicitation Procedures as set forth in the *Declaration of Christine Pullo of*

*Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the*

*Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and*

*the Affiliate Co-Plan Proponents*, filed on November 30, 2017 (ECF No. 13) (the "**Voting**

**Certification**"); and the Ballots having been tabulated in the manner set forth in the Voting

Certification and in compliance with the applicable provisions of the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 1007-1, 3017-1, 3018-

1, 3018-2, 3020-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the

United States District Court for the Southern District of New York (the "**Local Rules**"), the

Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States

Bankruptcy Court for the Southern District of New York, as amended, effective December 1,

2009 (as adopted by General Order M-454) (the "**Guidelines**"), the Scheduling Order, and all

other applicable laws, rules, and regulations; the Combined Hearing having been held before the

Bankruptcy Court on January 12, 2018, after due and sufficient notice was given to (i) the Office

of the United States Trustee for Region 2; (ii) the holders of the 20 largest unsecured claims

against the Debtor; (iii) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654 (Attn:

Patrick Nash Jr., P.C. and Gregory Pesce, Esq.), as counsel to an ad hoc group of Consenting

Term Lenders, (iv) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017

(Attn: Brian M. Resnick, Esq. and Michelle McGreal, Esq.), as counsel to Credit Suisse AG,

Cayman Islands Branch, as administrative agent under the Amended and Restated Credit Facility

3

Agreement, (v) Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067 (Attn:  Gregory A. Bray, Esq. and Haig M. Maghakian, Esq.), 28 Liberty Street, New York, NY 10005 (Attn: Dennis F. Dunne, Esq.), as counsel to an ad hoc group of Consenting Senior Noteholders, (vi) Pryor Cashman, 7 Times Square, New York, NY 10036 (Attn: Patrick Sibley, Esq., Seth H. Lieberman, Esq., and Matthew Silverman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, a national banking association, as successor trustee under the Prepetition Senior Notes Indenture, (vii) Thompson Hine, 335 Madison Avenue, 12th Floor, New York, NY 10017 (Attn: Curtis L. Tuggle, Esq.), as counsel to Wells Fargo Bank, National Association, as trustee under the Prepetition Convertible Notes Indenture, (viii) Alston & Bird LLP, 90 Park Avenue, New York, NY 10016 (Attn: Gerard S. Catalanello, Esq., Karen Gelernt, Esq., and James J. Vincequerra, Esq.), as counsel to Credit Suisse First Boston Mortgage Capital LLC, as administrative agent under the DIP Warehouse Facilities, (ix) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Sarah M. Ward, Esq. and Mark A. McDermott, Esq.), as counsel to certain DIP Lenders; (x) O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071 (Attn: Darren L. Patrick, Esq. and Steve Warren, Esq.), Two Embarcadero Center, 28th Floor, San Francisco, CA 94111 (Attn: Jennifer Taylor), as counsel to Fannie Mae; (xi) McKool Smith, 600 Travis Street, Suite 7000, Houston, TX 77002 (Attn: Paul D. Moak, Esq.), One Bryant Park, 47th Floor, New York, NY 10036 (Attn: Kyle A. Lonergan, Esq.), as counsel to Freddie Mac; (xii) Ginnie Mae, 451 Seventh Street SW, Washington, DC 20410 (Attn: Harlan Jones, Senior Account Executive); (xiii) the Securities and Exchange Commission; (xiv) the Internal Revenue Service; (xv) the United States Attorney's Office for the Southern District of New York;, and (xvi) all other parties-in-interest entitled to notice (collectively, the "**Master Service List**") in

4

accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and the
Local Rules, in each case established by the affidavits of service, mailing, and/or publication
filed with the Bankruptcy Court, including (1) the *Affidavit of Service of Solicitation Materials
Regarding Notice of the Combined Hearing*, dated December 1, 2017 (ECF No. 40); (2) the
*Affidavit of Service Regarding the Scheduling Order* dated December 13, 2017 (ECF No. 87);
(3) the *Affidavit of Publication* dated December 12, 2017 (ECF No. 81), (collectively, the
"**Notice Affidavits**"), and such notice being sufficient under the circumstances and no further
notice being required; and due notice of the Plan Supplement having been given to the Master
Service List and all holders of Claims in Class 4 (Term Loan Claims), holders of Claims in
Class 5 (Senior Notes Claims), and holders of Claims in Class 6 (Convertible Notes Claims) in
compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the
Solicitation Procedures; and based upon and after full consideration of the entire record of the
Combined Hearing, including (A) the Disclosure Statement, the Prepackaged Plan (including the
Plan Supplement), and the Voting Certification; (B) the Debtor's *Memorandum of Law in
Support of (I) Approval of (A) Disclosure Statement, (B) Solicitation of Votes and Voting
Procedures, and (C) Form of Ballots, and (II) Confirmation of Amended Prepackaged Chapter
11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan
Proponents* dated January 5, 2018; (C) the *Declaration of David Coles in Support of
Confirmation of the Prepackaged Plan* (the "**Coles Confirmation Declaration**"), dated January
5, 2018; the Declaration of James Page in Support of Confirmation of the Prepackaged Plan
dated January 5, 2018, (the "**Page Declaration**", and collectively with the First Day
Declaration,[5] the Coles Confirmation Declaration, and the Notice Affidavits, the "**Supporting

---

[5] The "**First Day Declaration**" means the *Declaration of David Coles Pursuant to Rule 1007-2 of Local Bankruptcy
Rules for Southern District of New York* (ECF No. 3), filed on November 30, 2017.

**Declarations**") and (D) the Notice Affidavits; and the Bankruptcy Court being familiar with the Disclosure Statement and the Prepackaged Plan and other relevant factors affecting the Debtor's Chapter 11 Case, and the Bankruptcy Court being fully familiar with, and having taken judicial notice of, the entire record of the Debtor's Chapter 11 Case; and upon the arguments of counsel and the evidence proffered and adduced at the Combined Hearing; and the Bankruptcy Court having found and determined that the Disclosure Statement and the Solicitation Procedures should be approved and the Prepackaged Plan should be confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Proska, C.J).   Approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Prepackaged Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Bankruptcy Court has jurisdiction to enter a final order with respect thereto. The Debtor is

6

an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor and the Affiliate Co-Plan Proponents are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      Chapter 11 Petition.  On November 30, 2017 (the "**Petition Date**"), the Debtor commenced with this Bankruptcy Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The Debtor is authorized to continue to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

D.      Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

E.      Burden of Proof.  The Debtor has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

F.      Adequacy of Disclosure Statement.  The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "**Securities Act**"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code)

WEIL:\96402908\1\79607.0003

with respect to the Debtor, the Prepackaged Plan, and the transactions contemplated therein, and (c) is approved in all respects.

G.    Solicitation.    Prior to the Petition Date, the Debtor, through its administrative agent, Prime Clerk, LLC ("**Prime Clerk**"), caused the Prepackaged Plan, Disclosure Statement (which included as exhibits thereto, among other things, the Restructuring Support Agreements, the Restructuring Term Sheet, the Commitment Letter and New Facilities Warehouse Facilities Term Sheet, the Amended and Restated Credit Facility Agreement, the New Second Lien Term Sheet, the Mandatorily Convertible Preferred Stock Term Sheet, the Warrants Term Sheet, and a Liquidation Analysis (as each term is described in the Disclosure Statement), and the Ballots (collectively the "**Solicitation Package**"), to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Local Rules, the Scheduling Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations applicable to such solicitation.    As set forth in the Voting Certification, the Solicitation Package was transmitted to and served on all holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims), which are the only Classes of Claims entitled to vote to accept or reject the Prepackaged Plan, on November 6, 2017. *See Declaration of Christine Pullo of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents* (ECF No. 13).    Each eligible holder of a Claim in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claim) received a Ballot.    The forms of the Ballots adequately addressed the particular needs of the Chapter 11 Case and were appropriate

8

for holders of Class 4 Claims (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 Claims (Convertible Notes Claims), as applicable. The instructions on the Ballots advised parties that for a Ballot to be counted, the Ballot must be properly executed, completed, and delivered to Prime Clerk so that it, or the Master Ballot transmitting such vote (as defined and described herein), was received by Prime Clerk no later than 5:00 p.m. (Prevailing Eastern Time) on November 28, 2017 (the "**Voting Deadline**"), unless such time was extended by the Debtor. As set out in the *Affidavit of Service of Solicitation* (ECF No. 40), certain ballots that were received after the Voting Deadline were accepted by the Debtor and tabulated by Prime Clerk. The period during which the Debtor solicited acceptances to the Prepackaged Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Prepackaged Plan and complied with the Guidelines. The Debtor was not required to solicit votes from the holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) (collectively, the "**Unimpaired Classes**"), as each such class is Unimpaired under the Prepackaged Plan. The Debtor also was not required to solicit votes from the holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) (the "**Non-Voting Impaired Class**") as each Class is deemed to reject the Prepackaged Plan. As described in and, as evidenced by, the Voting Certification and the Notice Affidavits, the transmittal and service of the Solicitation Package (all of the foregoing, the "**Solicitation**") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules,

9

the Local Rules, the Guidelines, the Scheduling Order, and any other applicable rules, laws, and regulations. The Exculpated Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

H.    Mailing and Publication of Combined Notice. On December 5, 2017, the Debtor caused to be mailed the *Notice of (I) Commencement of Case Under Chapter 11 of Walter Investment Management Corp., Summary of Prepackaged Plan of Reorganization and (II) Combined Hearing to Consider (A) Approval of the Disclosure Statement, (B) Approval of Solicitation Procedures and Forms of Ballots, and (C) Confirmation of the Prepackaged Plan and Related Matters* (ECF No. 30) (the "**Combined Notice**") to the Master Service List and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, and the Solicitation Procedures, and published a notice substantially similar to the Combined Notice in the New York Times and USA Today on December 8, 2017. *See* Notice Affidavits (ECF Nos. 79 and 80). The Debtor has given proper, adequate, and sufficient notice of the Combined Hearing, as required by Bankruptcy Rule 3017(a) and (d), Local Rule 3017-1, and the Scheduling Order. Proper, adequate, and sufficient notice of the Disclosure Statement, the Prepackaged Plan, and the deadlines for filing objections to the Disclosure Statement and Prepackaged Plan has been given to all known holders of Claims or Interests and all parties on the Master Service List, substantially in accordance with the Scheduling Order. No other or further notice was or shall be required.

I.    Tabulation Results. On November 30, 2017, the Debtor filed the Voting Certification (ECF No. 13) certifying the method and results of the Ballots tabulated for Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims).

10

As of the Voting Deadline, 100% in amount and 100% in number of holders of Claims in Class 4 (Term Loan Claims) that timely voted on the Prepackaged Plan voted to accept the Prepackaged Plan, 99.24% in amount and 96.84% in number of holders of Claims in Class 5 (Senior Notes Claims) that timely voted on the Prepackaged Plan voted to accept the Prepackaged Plan, and 99.99% in amount and 96.67% in number of holders of Claims in Class 6 (Convertible Notes Claims) that voted on the Prepackaged Plan voted to accept the Prepackaged Plan. Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, the Bankruptcy Court finds that Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) accepted the Prepackaged Plan. All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and all other applicable rules, laws and regulations.

        J.      <u>Plan Supplement</u>.  On December 22, 2017, the Debtor filed the Plan Supplement, consisting of drafts of (A) (1) Amended Organizational Documents, (2) the Amended and Restated Credit Facility Agreement, (3) certain of the Exit Warehouse Facilities Documents, (4) Schedule of Rejected Contracts, (5) Notice of Initial Directors and Officers of Reorganized Debtor Pursuant to Bankruptcy Code Section 1129(a)(5) (ECF No. 121). On January [●], 2018, the Debtor filed the Supplemental Plan Supplement, consisting of drafts of (B) (1) [●], (2) [●]. All such materials comply with the terms of the Prepackaged Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and all other applicable rules, laws, and regulations and no other or further notice is or shall be required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the

11

Prepackaged Plan. The Debtor reserves the right to alter, amend, update, or modify the Plan Supplement prior to the Effective Date subject to the terms of this Order, the Restructuring Support Agreements, and the DIP Documents.

K. Modifications of the Prepackaged Plan. Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor and the Affiliate Co-Plan Proponents proposed certain modifications to the Prepackaged Plan as reflected herein and/or in modified or amended versions of the Prepackaged Plan and Plan Supplement filed with the Court prior to entry of this Order (collectively, the "**Plan Modifications**"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (i) constitute material modifications of the Prepackaged under section 1127 of the Bankruptcy Code, (ii) cause the Prepackaged Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (iii) materially and adversely change the treatment of any Claims or Interests, (iv) require re-solicitation of any holders of Claims or Interests, or (v) require that any such holders be afforded an opportunity to change previously cast acceptances or rejections of the Prepackaged Plan. Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Prepackaged Plan or who are conclusively presumed to have accepted the Prepackaged Plan are deemed to have accepted the Prepackaged Plan as modified by the Plan Modifications. No holder of a Claim that has voted to accept the Prepackaged Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

12

L.    Bankruptcy Rule 3016(a).  In accordance with Bankruptcy Rule 3016, the Prepackaged Plan is dated and identifies the Debtor and the Affiliate Co-Plan Proponents as proponents of the Prepackaged Plan.    The discharge, release, injunction and exculpation provisions of the Prepackaged Plan are set forth in bold, thereby complying with Bankruptcy Rule 3016(c).

## Compliance with Requirements of Section 1129 of Bankruptcy Code

M.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code and thereby satisfies section 1129(a)(1) of the Bankruptcy Code.  More particularly:

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).    In addition to Administrative Expense Claims (Section 2.1 of the Prepackaged Plan), Fee Claims (Section 2.2 of the Prepackaged Plan), Priority Tax Claims (Section 2.3 of the Prepackaged Plan), DIP Claims (Section 2.4 of the Prepackaged Plan), and Restructuring Expenses (Section 2.5 of the Prepackaged Plan), which need not be classified, Articles III and IV of the Prepackaged Plan classify ten (10) Classes of Claims and Interests of the Debtor.  The Claims or Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims or Interests created under the Prepackaged Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.  The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).    Articles III and IV of the Prepackaged Plan specify that holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured

13

Claims), and Class 8 (Intercompany Claims) are Unimpaired under the Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Prepackaged Plan designate holders of Claims and Interests in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims), Class 9 (Existing Equity Interests), and Class 10 (Other Interests) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)      No Discrimination (11 U.S.C. § 1123(a)(4)).   The Prepackaged Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)      Implementation of Prepackaged Plan (11 U.S.C. § 1123(a)(5)).   The Prepackaged Plan, including the various documents and agreements set forth in the Plan Supplement, provides adequate and proper means for the implementation of the Prepackaged Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including:  (i) all corporate action set forth in Article V of the Prepackaged Plan, including the adoption and filing of the Amended Organizational Documents pursuant to applicable law, (ii) the issuance of New Common Stock, (iii) issuance of the Mandatorily Convertible Preferred Stock, (iv) the issuance of the New Second Lien Notes and entry into the New Second Lien Notes Documents, (v) the issuance of the New Warrants, (vi) entry into the Amended and Restated Credit Facility

14

Documents, (vii) entry into the Exit Warehouse Facilities Documents, and (viii) provisions governing distributions under the Prepackaged Plan.

(f)    <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>.  The certificate of incorporation, articles of incorporation,  articles of amendment and restatement, bylaws, or similar governing document, as applicable, of the Debtor has been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities in accordance with section 1123(a)(6) of the Bankruptcy Code.

(g)    <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.   On December 22, 2017, the Debtor filed with the Court the Notice of Initial Directors and Officers of Reorganized Debtor Pursuant to Bankruptcy Code Section 1129(a)(5) (Docket No. 121) (as updated, modified or supplemented, the "**Notice of D&O**") as Exhibit E to the Plan Supplement, identifying the directors and officers who will serve in such capacity with respect to the Debtor. The Prepackaged Plan provisions governing the manner of selection of any officer, director, or manager under the Prepackaged Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

(h)    <u>Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>.  As contemplated by section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Articles III and IV of the Prepackaged Plan classify and describe the treatment for the Unimpaired Classes and Impaired Classes.

(i)    <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Article VIII of the Prepackaged Plan governing the assumption or rejection of executory contracts and unexpired

15

leases satisfies the requirements of sections 365(b) of the Bankruptcy Code and 1123(b)(2) of the Bankruptcy Code.

(j)    Retention of Causes of Action/Reservation of Rights (11 U.S.C. § 1123(b)(3)).    Pursuant to Section 10.8 of the Prepackaged Plan and in compliance with section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise set forth in or released by the Prepackaged Plan, the Prepackaged Plan preserves the Debtor's rights, Claims, Causes of Action, rights of setoff or recoupment or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, and any other affirmative Causes of Action against parties with a relationship with the Debtor.

(k)    Modification of Rights (11 U.S.C. § 1123(b)(5)).    The Prepackaged Plan modifies the rights of holders of Claims or Interests in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), Class 6 (Convertible Notes Claims), Class 9 (Existing Equity Interests), and Class 10 (Other Interests), and leaves Unimpaired the rights of holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims).

(l)    Additional Prepackaged Plan Provisions (11 U.S.C. § 1123(b)(6)).    The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and applicable law, including (a) the release, discharge, injunction and exculpation provisions set forth in Article X of the Prepackaged Plan, and (b) the exemption, pursuant to section 1145 of the Bankruptcy Code, of the offer, issuance, and distribution of New Common Stock, the New Second Lien Notes, the Mandatorily Convertible Preferred Stock, and the New Warrants, which will be freely tradable by the recipients thereof, subject to (i) the

16

provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) any restrictions on the transferability or ownership of the New Common Stock and the Mandatorily Convertible Preferred Stock contained in the Amended Organizational Documents, and (iv) applicable regulatory approval, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(m)    <u>Debtor Is Not an Individual (11 U.S.C. § 1123(c))</u>.  The Debtor is not an individual and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

(n)    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Section 8.2 of the Prepackaged Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Prepackaged Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  The Debtor has paid or will pay valid cure amounts in the ordinary course.

N.    <u>Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)    The Debtor is an eligible debtor under section 109 of the Bankruptcy Code;

(b)    The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)    The Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, Local Rules, the Guidelines,

17

the Scheduling Order, applicable non-bankruptcy law and all other applicable laws, rules, and regulations in transmitting the Prepackaged Plan, Plan Supplement, Disclosure Statement, Ballots and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan.

        O.    <u>Prepackaged Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtor has proposed the Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan), the Plan Supplement, and the Definitive Documents in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in the Chapter 11 Case.  The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan), the Plan Supplement, and the Definitive Documents were proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and to effectuate a successful reorganization of the Debtor.  The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan), the Plan Supplement, and the Definitive Documents were negotiated in good faith and at arm's length among the Debtor, the Requisite RSA Parties, the Affiliate Co-Plan Proponents, the Prepetition Administrative Agent, the DIP Lenders, and the Amended and Restated Credit Facility Agent.  Further, the Prepackaged Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Prepackaged Plan, supported by valuable consideration (including, but not limited to, consideration provided by the Affiliate Co-Plan Proponents), and necessary for the Debtor's successful reorganization.

18

P.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Chapter 11 Case, or in connection with the Prepackaged Plan and incident to the Chapter 11 Case, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Q.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The Prepackaged Plan provides that, from and after the Effective Date, the board of directors and officers of the Reorganized Debtor shall consist of those individuals listed in the Notice of D&O, which includes information about the directors' and officers' affiliations and constitutes adequate disclosure of such information. Except as set forth in the Prepackaged Plan, provisions regarding members of the Reorganized Debtor's board of directors shall be as set forth in the Amended Organizational Documents. Accordingly, the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against or Interests in the Debtor and with public policy.

R.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Prepackaged Plan does not provide for rate changes by any of the Reorganized Debtor. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Case.

S.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Prepackaged Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis included in the Disclosure Statement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of an impaired Claim or Interest either has accepted the Prepackaged Plan or will receive or retain under the Prepackaged Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the

19

amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

T.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.    Holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) are not Impaired under the Prepackaged Plan and are, therefore, conclusively presumed to have accepted the Prepackaged Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders (as defined in section 101(31) of the Bankruptcy Code) of the Debtor.    Holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are deemed to have rejected the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code.    Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Prepackaged Plan may be confirmed notwithstanding that holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interest) are Impaired and are deemed to have rejected the Prepackaged Plan.

U.    <u>Treatment of Administrative Expense Claims, Priority Tax Claims, DIP Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.    The treatment of Allowed Administrative Expense Claims (which include the DIP Claims and the Fee Claims) pursuant to Sections 2.1, 2.2, and 2.4 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.    The treatment of Priority Non-Tax Claims pursuant to Section 4.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.    The treatment of Priority Tax Claims pursuant to

20

Section 2.3 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

V.    <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims) and Class 6 (Convertible Notes Claims) are Impaired and each voted to accept the Prepackaged Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Prepackaged Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

W.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The information in the Disclosure Statement, the Coles Confirmation Declaration (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) together with the record of the Chapter 11 Case and the evidence presented at the Combined Hearing, establishes that the Prepackaged Plan is feasible, that there is a reasonable prospect of the Reorganized Debtor being able to meet its financial obligations under the Prepackaged Plan and its business in the ordinary course, that the incurrence of the obligations contemplated by the Prepackaged Plan will not result in the insolvency of the Debtor, and that confirmation of the Prepackaged Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

X.    <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>.  All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Section 12.1 of the Prepackaged Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

21

Y.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 5.14 of the Prepackaged Plan provides that on the Effective Date, and subject to the limitations set forth in Section 5.14, the Reorganized Debtor shall be deemed to have assumed all employee compensation plans, Benefit Plans, employment agreements, offer letters, or award letters (collectively, the "**Employee Arrangements**").    Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

Z.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).    The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.    Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

AA.     Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15)).    The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

BB.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).    The Debtor is a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

CC.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are deemed to have rejected the Prepackaged Plan.    Based upon the evidence proffered, adduced, and presented by the Debtor at the Combined Hearing, the Prepackaged Plan does not discriminate unfairly and is fair and equitable with respect to Class 9 (Existing Equity Interests) and Class 10 (Other Interests) as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.    Thus, the Prepackaged Plan

WEIL:\96402908\1\79607.0003

may be confirmed notwithstanding the deemed rejection of the Prepackaged Plan by Class 9 (Existing Equity Interests) and Class 10 (Other Interests).

DD.   <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Prepackaged Plan is the only plan filed in the Chapter 11 Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

EE.   <u>Principal Purpose of Prepackaged Plan (11 U.S.C. § 1129(d))</u>.   The principal purpose of the Prepackaged Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Prepackaged Plan on any such grounds.  The Prepackaged Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF.   <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Bankruptcy Court in the Chapter 11 Case, including evidence presented at the Combined Hearing, the Debtor and the other Exculpated Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Prepackaged Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Prepackaged Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the

23

Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, Section 10.9 of the Prepackaged Plan, and the exculpation provisions set forth in Section 10.7 of the Prepackaged Plan.

GG.    Satisfaction of Confirmation Requirements.    Based upon the foregoing, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    Contribution of Affiliate Co-Plan Proponents.    As consideration for, among other things, the releases provided pursuant to the Prepackaged Plan and this Order, the Affiliate Co-Plan Proponents have agreed, for the benefit of the Debtor and the Debtor's Estate, to make the following contributions, among others, to enable the implementation of the Prepackaged Plan, such contributions being fundamentally necessary to the implementation of the Prepackaged Plan: (a) the Affiliate Co-Plan Proponents have consented to the treatment set forth in the Prepackaged Plan as applicable to them, (b) the Affiliate Co-Plan Proponents shall make or fund all payments required to be paid by the Debtor under the Prepackaged Plan on account of any Allowed Claims and the Affiliate Co-Plan Proponents have consented to the repayment of such intercompany transactions with consideration other than Cash, (c) the Affiliate Co-Plan Proponents shall make or fund all necessary disbursements on behalf of the Debtor in the ordinary course of business and the Affiliate Co-Plan Proponents have consented to the repayment of such intercompany transactions with consideration other than Cash, (d) in relation to the Amended and Restated Credit Facility Agreement, the Affiliate Co-Plan Proponents have agreed to enter into guarantees in support of the Debtor's obligations thereunder and shall, pursuant to the Prepackaged Plan, grant Liens over their assets in support of, and to the

24

extent set forth in, such guarantees; and (e) in relation to the New Second Lien Notes Indenture, the Affiliate Co-Plan Proponents have agreed to enter into guarantees in support of the Debtor's obligations thereunder and shall, pursuant to the Prepackaged Plan, grant Liens over all or substantially all of their assets in support of such guarantee.

II.      Implementation. All documents and agreements necessary to implement the Prepackaged Plan, including the documents contained in and contemplated by the Plan Supplement, the Definitive Documents, and all other relevant and necessary documents and agreements that are necessary to implement the Prepackaged Plan, the Plan Supplement and the Definitive Documents are essential elements of the Prepackaged Plan (collectively, the "**Plan Documents and Agreements**"), consummation of each such Plan Document and Agreement is in the best interests of the Debtor, the Debtor's Estate and holders of Claims and Interests, and such Plan Documents and Agreements are hereby approved.  The Debtor has exercised reasonable business judgment in determining to enter into the Plan Documents and Agreements, and the Plan Documents and Agreements have been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

JJ.      Executory Contracts and Unexpired Leases.  The Debtor has exercised reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to Article VIII of the Prepackaged Plan.  Each assumption of an executory contract or unexpired lease pursuant to Article VIII of the Prepackaged Plan shall be legal, valid, and binding upon the Debtor or Reorganized Debtor and its successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or

25

unexpired lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Order. Moreover, the Debtor has cured, or provided adequate assurance that the Debtor or Reorganized Debtor or its successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Prepackaged Plan. The rejection of the contracts set out in the Schedule of Rejected Contracts, Exhibit D to the Plan Supplement, was in the proper exercise of the Debtor's business judgment and the best interests of the Debtor's Estate.

KK.     Injunction, Exculpation, and Releases.    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Prepackaged Plan, releases, and exculpation set forth in in the Prepackaged Plan, including in Sections 10.5, 10.6 and 10.7 of the Prepackaged Plan, respectively. As has been established here based upon the record in the Chapter 11 Case and the evidence presented at the Combined Hearing, such provisions (i) were given in exchange for good and valuable consideration, (ii) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Prepackaged Plan, as provided in section 1123 of the Bankruptcy Code, (iii) confer substantial benefits on the Debtor's Estate, (iv) are fair, equitable and reasonable, (v) are in the best interests of the Debtor, its Estate, and parties in interest, and (vi) failure to implement the injunctions, exculpation, and releases would seriously jeopardize the Debtor's ability to confirm and implement the Prepackaged Plan. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions, releases, and exculpation set forth in the Prepackaged Plan and implemented by this

26

WEIL:\96402908\1\79607.0003

Order are fair, equitable, reasonable, and in the best interest of the Debtor, the Reorganized

Debtor and its Estate, creditors and equity holders and supported by adequate consideration.

(a)    The releases contained in Section 10.6(b) of the Prepackaged Plan are

consensual because they are provided only by the (i) holders of Impaired Claims who voted to

accept the Prepackaged Plan, (ii) the Consenting Term Lenders and the Consenting Senior

Noteholders, (iii) any Significant Equity Holder, and (iv) with respect to any Entity in the

foregoing clauses (i) through (iii), such Entity's Related Parties.

(b)    The releases contained in section 10.6(c) of the Prepackaged Plan are

limited to releases by holders of Claims in Class 4 (Term Loan Claims) and Class 5 (Senior

Notes Claims) against the Affiliate Co-Plan Proponents for liability relating to the Prepetition

Credit Agreement, the Prepetition Senior Notes Indenture, or agreements related thereto and

satisfy the legal standard of approval of such third party releases established by *Deutsche Bank*

*AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136,

142 (2d Cir. 2005).  Such releases are non-consensual only as to the Term Loan Lenders and the

holders of Senior Unsecured Notes who are not parties to the Restructuring Support Agreements.

(c)    The releases granted by the Debtor and its Estate under the Prepackaged

Plan represent a valid exercise of the Debtor's business judgment.

(d)    The exculpations granted under the Prepackaged Plan are reasonable in

scope and do not relieve any party of liability for an act or omission to the extent such act or

omission is the result of willful misconduct or gross negligence.

(e)    The record of the Combined Hearing and the Chapter 11 Case is sufficient

to support the injunctions, releases, and exculpation provided for in the Prepackaged Plan,

including Sections 10.5, 10.6 and 10.7 of the Prepackaged Plan.  Accordingly, based upon the

WEIL:\96402908\1\79607.0003

record of the Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Combined Hearing, the injunctions, exculpation, and releases set forth in Article X of the Prepackaged Plan are consistent with the Bankruptcy Code and applicable law and are approved.

LL.   <u>Good Faith</u>.   The Debtor and the Released Parties have been and will be acting in good faith if they proceed to (i) consummate the Prepackaged Plan and the agreements, settlements, transactions and transfers contemplated thereby and (ii) take the actions authorized and directed by this Order.

MM.   <u>Exit Warehouse Facilities Agreements</u>.   The Exit Warehouse Facilities Agreements are the best financing alternative available to the Debtor.   The availability of the Exit Warehouse Facilities is necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor and its affiliates.   On the Effective Date, in accordance with, and subject to, the terms and conditions of the Exit Warehouse Facilities Documents, the Debtor, subject to the Amended and Restated Credit Facility Agreement, will act as guarantor under the New Forward Origination Facility Agreement,  the New Reverse Mortgage Facility Agreement,  and the MSFTAs (as defined in the DIP Warehouse Master Refinancing Amendment), as well as limited guarantor with respect to Ditech's obligations under certain receivables sale agreements required to implement structured financing of Ditech's advance receivables (the "**Limited RSA Guaranties**"), without the need for any further corporate action and without further action by the holders of Claims or Interests.   The terms of the (a) Exit Warehouse Facilities, and (b) the Exit Warehouse Facilities Documents, to the extent the Reorganized Debtor is a party thereto, are fair and reasonable.   The decision by the Debtor to provide a guarantee thereunder, (i) reflects the Debtor's exercise of proper business judgment

28

that is consistent with the Debtor's fiduciary duties, (ii) is supported by reasonably equivalent value and fair consideration, and (iii) is in the best interests of the Estate and its creditors. The execution, delivery, or performance by the Debtor of its guaranties of the New Forward Origination Facility Agreement, the New Reverse Mortgage Facility Agreement, and the MSFTAs, as well as the Limited RSA Guaranties, without the need for any further corporate action, and without further action by the holders of Claims or Interests, is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order. The financial accommodations to be extended pursuant to the Debtor's guaranty under the New Forward Origination Facility Agreement, the New Reverse Mortgage Facility Agreement, and the MSFTAs, and pursuant to the Limited RSA Guaranties, are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law. The Exit Warehouse Facilities Document, to the extent the Reorganized Debtor is a party thereto, are hereby approved and shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor enforceable in accordance with their terms.

NN.    <u>Amended and Restated Credit Facility</u>. The incurrence of indebtedness under, and the granting of security interests pursuant to, the Amended and Restated Credit Facility Agreement is in the best interests of the Reorganized Debtor and necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor, and constitutes reasonably equivalent value and fair consideration. The terms and conditions of the Amended and Restated Credit Facility, as set forth in the Amended and Restated Credit Facility Documents, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment

29

consistent with its fiduciary duties, were negotiated at arm's length and in good faith and without intent to hinder, delay or defraud any creditor of the Debtor, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtor's Estate and its creditors.  The execution, delivery, or performance by the Debtor or Reorganized Debtor, as the case may be, of the Amended and Restated Credit Facility Documents and any other documents in connection with the Amended and Restated Credit Facility and compliance by the Debtor or Reorganized Debtor, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order.  The financial accommodations to be extended pursuant to the Amended and Restated Credit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual, or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable nonbankruptcy law.   The Debtor has provided sufficient and adequate notice of Amended and Restated Credit Facility Documents to all parties in the Chapter 11 Case.

OO.    New Second Lien Notes.  The incurrence of indebtedness under, and the granting of the security interests pursuant to, the New Second Lien Notes is in the best interests of the Reorganized Debtor and necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor, and constitutes reasonably equivalent value and fair consideration.  The terms and conditions of the New Second Lien Notes, as set forth in the New Second Lien Notes Documents, are fair and reasonable, reflect the Debtor's exercise of prudent

30

business judgment consistent with its fiduciary duties, were negotiated at arm's length and in good faith and without intent to hinder, delay or defraud any creditor of the Debtor, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtor's Estate and its creditors. The execution, delivery, or performance by the Debtor or Reorganized Debtor, as the case may be, of the New Second Lien Notes Documents and any other documents in connection with the New Second Lien Notes and compliance by the Debtor or Reorganized Debtor, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order. The financial accommodations to be extended pursuant to the New Second Lien Notes Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, and shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual, or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable law. The Debtor has provided sufficient and adequate notice of the New Second Lien Notes Documents to all parties in the Chapter 11 Case.

PP.    New Intercreditor Agreement. On the Effective Date, the Amended and Restated Credit Facility Agent and the New Second Lien Notes Trustee shall enter into the New Intercreditor Agreement. Each lender under the Amended and Restated Credit Facility and each holder of the New Second Lien Notes shall be deemed to have directed the Amended and Restated Credit Facility Agent or the New Second Lien Notes Trustee, as applicable, to execute the New Intercreditor Agreement and shall be bound to the terms of the New Intercreditor Agreement from and after the Effective Date as if it were a signatory thereto.

31

QQ.    <u>Amended Organizational Documents</u>. The Amended Organizational Documents are necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor.  The terms of the Amended Organizational Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtor's Estate and its creditors.  The Amended Organizational Documents are the result of good faith, arm's-length negotiations among the Debtor and the Requisite RSA Parties, are appropriate and consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, Bankruptcy Code sections 1123, 1129, and 1142, and are necessary to the Debtor's successful emergence from chapter 11.  The execution, delivery, or performance by the Debtor or Reorganized Debtor, as the case may be, of any documents in connection with the Amended Organizational Documents and compliance by the Debtor or Reorganized Debtor, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order.  The Amended Organizational Documents are hereby approved and shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor enforceable in accordance with their terms.

RR.    <u>Exemption from Securities Laws</u>. The offer, issuance, and distribution of the New Common Stock, New Second Lien Notes, Mandatorily Convertible Preferred Stock, and New Warrants to holders of Senior Notes Claims, Convertible Notes Claims or holders Existing Equity Interests, as applicable, under Sections 4.5 and 4.6, and 4.7 respectively, of the Prepackaged Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (a) the Securities Act, as amended,

32

and all rules and regulations promulgated thereunder, and (b) any state or local law requiring registration for the offer, issuance, or distribution of securities. The New Common Stock, New Second Lien Notes, Mandatorily Convertible Preferred Stock, and New Warrants will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) the restrictions, if any, on the transferability or ownership of the New Common Stock and Mandatorily Convertible Preferred Stock contained in the Amended Organizational Documents, and (iv) applicable regulatory approval.  All securities described above were (or are designated to be) offered, distributed and sold pursuant to the Prepackaged Plan.

SS.    _Conditions Precedent to Confirmation and Effective Date_.  The conditions precedent to the confirmation of the Prepackaged Plan and the Effective Date, set forth in Section 9.1 and 9.2, of the Prepackaged Plan may be waived in writing by the Debtor with the prior written consent of the Requisite RSA Parties and the DIP Lenders without leave of or order of the Bankruptcy Court.

TT.    _Retention of Jurisdiction_.  The Bankruptcy Court may properly, and upon the Effective Date shall, retain non-exclusive jurisdiction over all matters arising in, arising under, and related to, the Chapter 11 Case, including the matters set forth in Article XI of the Prepackaged Plan and section 1142 of the Bankruptcy Code.

UU.    _Waiver of Stay_.  Given the facts and circumstances of the Chapter 11 Case, it is appropriate that this Order shall not be stayed pursuant to Bankruptcy Rules 3020(e),

33

6004(g), 6006(d), or 7062, and the Confirmation Order shall take effect immediately upon its entry.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    <u>Combined Notice</u>.  The Combined Notice complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code; the Bankruptcy Rules, the Guidelines, the Local Rules, and applicable non-bankruptcy law.

3.    <u>Solicitation</u>.  The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, the Guidelines, and applicable non-bankruptcy law.

4.    <u>Ballots</u>.  The forms of Ballots annexed to the Scheduling Motion are adequate and appropriate, are in compliance with Bankruptcy Rule 3018(c), substantially conform to Official Form B 314 and are approved in all respects.

5.      Solicitation of Disclosure Statement.    The Disclosure Statement (a) contains adequate information of a kind that is consistent with the disclosure requirements of applicable non-bankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Prepackaged Plan, and the transactions contemplated therein, and (c) is approved in all respects.    To the extent that the Debtor's solicitation was deemed to constitute an offer of new securities, such Solicitation is exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act.  Specifically, section 4(a)(2) and Regulation D of the Securities Act creates an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering."    15 U.S.C. § 77d(a)(2).  The Debtor has complied with the requirements of section 4(a)(2) and Regulation D of the Securities Act as the prepetition solicitation of acceptances would constitute a private placement of securities.  The solicitation was made only to those holders of Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) who are "Accredited Investors" (within the meaning of rule 501(a) of Regulation D of the Securities Act), as creditors were required to certify on their Ballots that they belonged to such category. Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtor's prepetition solicitation.

6.      Confirmation of Prepackaged Plan.  The Prepackaged Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in or contemplated by the Prepackaged Plan, including, without limitation, the Plan Supplement and Definitive Documents, are hereby authorized and approved

35

(to the extent the Debtor is a party thereto).  The terms of the Prepackaged Plan are incorporated by reference into and are an integral part of this Order.

7.      Objections.  All objections to confirmation of the Prepackaged Plan and other responses or reservation of rights with respect to confirmation of the Prepackaged Plan or the Plan Supplement (i) have been withdrawn, waived, or otherwise resolved by the Debtor prior to entry of this Order, or (ii) to the extent that any objections (including any reservations of rights contained therein) to confirmation of the Prepackaged Plan or the Plan Supplement or other responses or reservation of rights with respect to confirmation of the Prepackaged Plan or the Plan Supplement have not been withdrawn prior to entry of this Order, such objections shall be, and hereby are, overruled on the merits.

8.      Binding Effect.  As of the Effective Date, the Prepackaged Plan and this Order shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, whether or not any such holders were (a) Impaired or Unimpaired under the Prepackaged Plan, (b) deemed to accept or reject the Prepackaged Plan, (c) failed to vote to accept or reject the Prepackaged Plan, or (d) voted to reject the Prepackaged Plan.

9.      Free and Clear.  On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Prepackaged Plan, this Order, the Exit Warehouse Facilities Documents, the Amended and Restated Credit Facility Documents, and the New Second Lien Notes Documents.  On and after the Effective Date, the Reorganized Debtor may take any action, including, without limitation, the operation of its business, the use, acquisition, sale, lease and disposition of property and the entry into transactions, agreements, understandings, or

36

arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided in this Order or the Prepackaged Plan. Without limiting the foregoing, the Reorganized Debtor may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.    Approval of the Amended Organizational Documents. The Amended Organizational Documents are hereby approved. The Debtor and the Reorganized Debtor, as applicable, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments, and certificates relating to the Amended Organizational Documents, including the Registration Rights Agreement, and take such other actions as reasonably deemed necessary to perform their obligations thereunder. On the Effective Date, Reorganized Debtor and all of the holders of New Common Stock, Mandatorily Convertible Preferred Stock, and the New Warrants shall be deemed to be parties to the Registration Rights Agreement without the need for execution by any such holder. The Registration Rights Agreement shall be binding on Reorganized Debtor and all parties receiving, and all holders of, New Common Stock, Mandatorily Convertible Preferred Stock and the New Warrants; *provided, that*, regardless of whether such parties execute the Registration Rights Agreement, such parties will be deemed to have signed the Registration Rights Agreement, which shall be as binding on such parties as if they had actually signed it.

11.     <u>Designation of Directors and Officers Approved</u>. On the Effective Date, the initial board of directors and officers of the Reorganized Debtor shall consist of those individuals identified in the Notice of D&O, and such directors and officers shall be deemed elected or appointed (as applicable) and authorized to serve as directors or officers of the Reorganized Debtor pursuant to the terms of the Amended Organizational Documents. Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtor and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court, the Reorganized Debtor or its security holders.

12.     <u>DIP Claims</u>. On the Effective Date, subject to the satisfaction or waiver of all conditions precedent to effectiveness herein and in the DIP Warehouse Master Refinancing Amendment, the DIP Guaranties shall terminate, and the DIP Lenders will receive among other things, the payment of the Exit Warehouse Facilities Fees, and the Exit Guarantees shall become effective.

13.     <u>Amended and Restated Credit Facility Approved</u>.

(a)     On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the Amended and Restated Credit Facility Agreement, the Amended and Restated Credit Facility Documents and all related documents. All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)     The Bankruptcy Court hereby (i) approves the Amended and Restated Credit Facility, the Amended and Restated Credit Facility Agreement and the Amended and Restated Credit Facility Documents and all transactions contemplated thereby and thereof, and

38

all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders and administrative agent), losses, damages, indemnities and other amounts provided for by Amended and Restated Credit Facility Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into, deliver and fully perform its obligations under the Amended and Restated Credit Facility Documents, as well as any notes, documents or agreements contemplated thereby, including, without limitation, any documents required in connection with the creation, continuation, or perfection of Liens, mortgages, or other security interests contemplated thereby.

(c)    Upon their execution, the Amended and Restated Credit Facility Documents shall constitute legal, valid, binding and authorized debt obligations of the Reorganized Debtor, and the terms and provisions set forth in the Amended and Restated Credit Facility Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Amended and Restated Credit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, and are reasonable, and shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable nonbankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

39

(d)    On the Effective Date, all Liens, mortgages, deeds of trust, pledges and other security interests securing the obligations arising under the Amended and Restated Credit Facility Agreement and the other Amended and Restated Credit Facility Documents that were Collateral securing the Term Loan Claims as of the Commencement Date are unaltered by the Prepackaged Plan, and all such Liens, mortgages, deeds of trust, pledges and other security interests are continued and perfected with respect to the Amended and Restated Credit Facility Documents to the same extent, in the same manner and on the same terms and priorities as they were with respect to the Term Loan Claims, except as the foregoing may be modified pursuant to the Amended and Restated Credit Facility Documents and the New Intercreditor Agreement.

(e)    On the Effective Date, all of the Liens, mortgages, deeds of trust, pledges and other security interests to be granted in accordance with the Amended and Restated Credit Facility Documents (i) shall be deemed to be approved and granted in good faith, for good and valuable consideration, for reasonably equivalent value, and for legitimate business purposes as an inducement to lenders to extend credit thereunder and are reasonable, (ii) shall be valid, legal, binding, and enforceable Liens on, and security interests in, the collateral granted under and in accordance with the terms of the respective Amended and Restated Credit Facility Documents, (iii) shall be deemed fully perfected on the Effective Date to the extent required by the Amended and Restated Credit Facility Documents, and the priorities of such Liens, mortgages, deeds of trust and other security interests shall be as set forth in the respective Amended and Restated Credit Facility Documents and the New Intercreditor Agreement, and (iv) shall not be subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) or any other challenge for any purposes whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent conveyances or

40

other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The

Debtor, the Reorganized Debtor and the secured parties (and their designees and agents) under

such Amended and Restated Credit Facility Documents are hereby authorized to make, and to

the extent contemplated by the Amended and Restated Credit Facility Documents, the Debtor,

the Reorganized Debtor and their respective affiliates shall make, all filings and recordings, and

to obtain all governmental approvals and consents to evidence, establish, continue and perfect all

such Liens, mortgages, deeds of trust and other security interests under the provisions of the

applicable state, provincial, federal or other law (whether domestic or foreign) that would be

applicable in the absence of the Prepackaged Plan and this Order (it being understood that

perfection of the Liens, mortgages, deeds of trust and other security interests granted under the

Amended and Restated Credit Facility Documents shall occur automatically on the Effective

Date by virtue of the entry of this Order, and any such filings, recordings, approvals and consents

shall not be necessary or required), and will thereafter cooperate to make all other filings and

recordings that otherwise would be necessary under applicable law to give notice of such Liens,

mortgages, deeds of trust and other security interests to third parties. For purposes of all

mortgages and deposit account control agreements that secured the obligations arising under the

Prepetition Credit Agreement, the Amended and Restated Credit Facility Agreement is deemed

an amendment and restatement of the Prepetition Credit Agreement, and such mortgages and

control agreements shall survive the Effective Date, shall not be cancelled, and shall continue to

secure the Amended and Restated Credit Facility Agreement, except as expressly set forth in the

Amended and Restated Credit Facility Agreement. The Reorganized Debtor shall be authorized

to execute, deliver, and enter into and perform under the Amended and Restated Credit Facility

Documents without the need for any further corporate action and without further action by the

holders of Claims or Interests.  On the Effective Date, all letters of credit and similar forms of credit support funded directly or indirectly by the revolver commitments under the Prepetition Credit Agreement will be refinanced in full.

14.   Exit Warehouse Facilities Approved.

(a)   On the Effective Date, the Reorganized Debtor shall execute and deliver, to the extent the Reorganized Debtor is a party thereto, the Exit Warehouse Facility Agreements, and all related documents, including the Exit Warehouse Facilities Documents.  All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)   The Bankruptcy Court hereby approves (i) to the extent the Reorganized Debtor is a party thereto, the Exit Warehouse Facilities, the Exit Warehouse Facilities Agreements and the Exit Warehouse Facilities Documents and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders), losses, damages, indemnities and other amounts provided for by the Exit Warehouse Facilities Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into and fully perform its obligations under the Exit Warehouse Facilities Agreements Documents (to the extent the Reorganized Debtor is a party thereto).

(c)   Upon their execution, to the extent the Reorganized Debtor is a party thereto, the Exit Warehouse Facilities Documents shall constitute legal, valid, binding and

42

authorized debt obligations of the Reorganized Debtor, and the terms and provisions set forth in the Exit Warehouse Facilities Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Warehouse Facilities Documents are being extended, and shall be deemed to have been extended, to the extent the Reorganized Debtor is a party thereto, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

15.    <u>New Second Lien Notes Approved</u>.

(a)    On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the New Second Lien Notes Indenture, the New Second Lien Notes Documents, and all related documents, including the New Second Lien Notes.  All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)    The Bankruptcy Court hereby (i) approves the New Second Lien Notes, the New Second Lien Notes Indenture, and the New Second Lien Notes Documents, and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the noteholders and indenture trustee), losses, damages, indemnities and other amounts provided for by New Second Lien Notes Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy

43

Court and without the need for any further corporate or shareholder action, to enter into, deliver and fully perform its obligations under the New Second Lien Notes Documents, as well as any notes, documents or agreements contemplated thereby, including, without limitation, any documents required in connection with the creation, continuation, or perfection of Liens, mortgages, or other security interests contemplated thereby.

(c)    Upon their execution, the New Second Lien Notes Documents shall constitute legal, valid, binding and authorized debt obligations of the Reorganized Debtor, and the terms and provisions set forth in the New Second Lien Notes Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Second Lien Notes Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, and are reasonable, and shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable nonbankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

(d)    On the Effective Date, all of the Liens, mortgages, deeds of trust, pledges and other security interests to be granted in accordance with the New Second Lien Notes Documents (i) shall be deemed to be approved and granted in good faith, for good and valuable consideration, for reasonably equivalent value, and for legitimate business purposes as an inducement to noteholders to extend credit thereunder and are reasonable, (ii) shall be valid, legal, binding, and enforceable Liens on, and security interests in, the collateral granted under and in accordance with the terms of the respective New Second Lien Notes Documents, (iii) shall

44

be deemed fully perfected on the Effective Date to the extent required by the New Second Lien

Notes Documents, and the priorities of such Liens, mortgages, deeds of trust and other security

interests shall be as set forth in the respective New Second Lien Notes Documents and the New

Intercreditor Agreement, and (iv) shall not be subject to avoidance, recharacterization, or

subordination (whether equitable, contractual or otherwise) or any other challenge for any

purposes whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law and shall

not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the

Bankruptcy Code or any applicable non-bankruptcy law.  The Debtor, the Reorganized Debtor

and the secured parties (and their designees and agents) under such New Second Lien Notes

Documents are hereby authorized to make, and to the extent contemplated by the New Second

Lien Notes Documents, the Debtor, the Reorganized Debtor and their respective affiliates shall

make, all filings and recordings, and to obtain all governmental approvals and consents to

evidence, establish, continue and perfect all such Liens, mortgages, deeds of trust and other

security interests under the provisions of the applicable state, provincial, federal or other law

(whether domestic or foreign) that would be applicable in the absence of the Prepackaged Plan

and this Order (it being understood that perfection of the Liens, mortgages, deeds of trust and

other security interests granted under the New Second Lien Notes Documents shall occur

automatically on the Effective Date by virtue of the entry of this Order, and any such filings,

recordings, approvals and consents shall not be necessary or required), and will thereafter

cooperate to make all other filings and recordings that otherwise would be necessary under

applicable law to give notice of such Liens, mortgages, deeds of trust and other security interests

to third parties.  The Reorganized Debtor shall be authorized to execute, deliver, and enter into

45

and perform under the New Second Lien Notes Documents without the need for any further corporate action and without further action by the holders of Claims or Interests.

16.    <u>New Warrants Approved</u>.

(a)    On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the New Warrant Agreements, and all related documents (the "**New Warrant Documents**").  All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)    The Bankruptcy Court hereby (i) approves the New Warrants, the New Warrant Agreements, the New Warrant Documents, and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders), losses, damages, indemnities and other amounts provided for by the New Warrant Documents Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into and fully perform their obligations under the New Warrant Documents.

17.    Upon their execution, the New Warrant Documents shall constitute legal, valid, binding and authorized debt obligations of each of the Reorganized Debtor, and the terms and provisions set forth in the New Warrant Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Warrant Documents are being extended, and shall be deemed to have been extended, in good faith, for

46

legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

18.   Mandatorily Convertible Preferred Stock Approved

(a)   On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the Articles Supplementary for the Mandatorily Convertible Preferred Stock, and all related documents (the "**Mandatorily Convertible Preferred Stock Documents**"). All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)   The Bankruptcy Court hereby (i) approves the Mandatorily Convertible Preferred Stock, Articles Supplementary for the Mandatorily Convertible Preferred Stock and the Mandatorily Convertible Preferred Stock Documents and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders), losses, damages, indemnities and other amounts provided for by the Mandatorily Convertible Preferred Stock Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into and fully perform their obligations under the Mandatorily Convertible Preferred Stock Documents.

WEIL:\96402908\1\79607.0003

19.     Upon their execution, the Mandatorily Convertible Preferred Stock Documents shall constitute legal, valid, binding and authorized debt obligations of each of the Reorganized Debtor, and the terms and provisions set forth in the Mandatorily Convertible Preferred Stock Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Mandatorily Convertible Preferred Stock Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

20.     <u>Issuance of New Common Stock, Mandatorily Convertible Preferred Stock and the New Warrants</u>.  On the Effective Date, the Debtor or Reorganized Debtor, as applicable, are authorized to issue or cause to be issued and shall issue the New Common Stock, the Mandatorily Convertible Preferred Stock, and the New Warrants in accordance with the terms of the Prepackaged Plan without the need for any further corporate or shareholder action. All of the New Common Stock, Mandatorily Convertible Preferred Stock and New Warrants, issuable under the Prepackaged Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.

21.     <u>Cancellation of Liens</u>.  Except as otherwise specifically provided in the Prepackaged Plan, including with respect to the Amended and Restated Credit Facility Agreement, upon the Effective Date, any Lien securing a Secured Claim shall be deemed released, and the holder of such Secured Claim (or any agent for such holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any Cash

48

collateral) held by such holder and to take such actions as may be requested by the Debtor, Reorganized Debtor, or applicable administrative agent to cancel, extinguish, and release such Liens, if they have been or will be satisfied or discharged in full pursuant to the Prepackaged Plan. Upon the payment or other satisfaction of an Allowed Other Secured Claim, the holder of such Allowed Other Secured Claim shall deliver to the Debtor or Reorganized Debtor (as applicable) any Collateral or other property of the Debtor held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

22.    <u>Assumption of Contracts and Leases</u>.    Pursuant to Article VIII of the Prepackaged Plan, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure amount then due, payment of any applicable Cure amount then due, all executory contracts and unexpired leases to which the Debtor is a party, and which have not expired by their own terms on or prior to the Confirmation Date, including the Employee Arrangements (subject to Section 5.14 of the Prepackaged Plan), shall be deemed assumed except for any executory contract or unexpired lease that (a) previously has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (b) is the subject of a separate (i) assumption motion filed by the Debtor or (ii) rejection motion filed by the Debtor under section 365 of the Bankruptcy Code before the Confirmation Date, (c) is identified for rejection on the schedule of rejected contracts annexed to the Plan Supplement, or (d) is the subject of a pending Cure Dispute.  Subject to the occurrence of the Effective Date, entry of this Order by the Bankruptcy Court shall constitute approval of the assumptions provided for in the Prepackaged Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the

49

Bankruptcy Court that the Reorganized Debtor has provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed pursuant to the Prepackaged Plan shall vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provision of the Prepackaged Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

23.    Cure Notice.  On December 22, 2017, the Debtor filed and served the *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtor and Related Procedures* (the "**Cure Notice**") (ECF No. 122) notifying counterparties of the Debtor's intention to assume their contract or unexpired lease with the Debtor in connection with the Prepackaged Plan except as provided in section 8.14 of the Prepackaged Plan.  Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease within ten (10) days of the service thereof, shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease, (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Prepackaged Plan, (iii) increase, accelerate, or otherwise alter any obligations or liabilities of the Debtor or the Reorganized Debtor under such executory contract or unexpired lease, or (iv) create or impose a Lien upon any property or Asset of the Debtor or the Reorganized Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such executory contract or

unexpired lease pursuant to the Prepackaged Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in Section 8.2 of the Prepackaged Plan**Error! Reference source not found.**, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Prepackaged Plan.

24.    <u>Rejection of Contracts and Unexpired Leases</u>.  Subject to the occurrence of the Effective Date, entry of this Order by the Bankruptcy Court shall constitute approval of the rejection of the executory contracts and unexpired leases identified in the Schedule of Rejected Contracts exhibited to the Plan Supplement pursuant to section 365(a) and 1123 of the Bankruptcy Code.

25.    <u>Fannie Mae</u>:  Notwithstanding any other provision of this Order, the Prepackaged Plan, the Plan Supplement, the Exit Warehouse Facilities Documents, the Amended and Restated Credit Facility Documents, the DIP Orders or any other order in the Chapter 11 Case,[6] (1) Fannie Mae's rights, powers, prerogatives, remedies, payment or lien priorities, and claims against the Debtor, any non-Debtor affiliate (including Ditech and RMS) or any other person or entity under the Fannie Mae Lender Contracts (including, without limitation, any guaranty by the Debtor of the obligations thereunder) shall not be impaired, released, modified, or limited in any respect, except as otherwise expressly agreed in writing by Fannie Mae; (2) no

---

[6] Terms contained within this paragraph that are not otherwise defined shall have the meaning attributed to them in the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (A) Authorizing Debtor to Guarantee Warehouse Financing of Certain Non-Debtor Subsidiaries and Use Cash Collateral; (B) Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection; (D) Modifying Automatic Stay; and (E) Granting Related Relief (ECF No. 118) (the "**Final DIP Order**").

51

lien or security interest shall attach to, modify, prime or otherwise affect (a) mortgage servicing rights with respect to mortgages which are now or hereafter serviced by Ditech or RMS (or any of their affiliates) for Fannie Mae, except as otherwise expressly authorized by Fannie Mae pursuant to the applicable Fannie Mae Acknowledgment Agreement, (b) any other rights related to the Fannie Mae Lender Contracts including the "Purchased Servicing Advance Receivables" as defined and referenced in, and except as otherwise expressly authorized by, the Fannie Mae Acknowledgment Agreements, or (c) any cash, accounts, securities, or other collateral (and any proceeds thereof) pledged to Fannie Mae pursuant to any collateral pledge agreement or other security agreement between Ditech and Fannie Mae (including the Collateral as defined in that certain Pledge and Security Agreement in favor of Fannie Mae dated as of December 19, 2014 (as amended, the "Pledge Agreement"); (3) the term of Fannie Mae Acknowledgment Agreements shall remain unchanged, and any extension of the term or changes to other provisions of the Fannie Mae Acknowledgment Agreements must be expressly agreed to by the parties in a separate written agreement, (4) Fannie Mae does not, and shall not be deemed to, release any Released Party or any other person or entity from any claims or causes of action that it may have, nor shall Fannie Mae be enjoined from pursuing any such claims or causes of action; and (5) Fannie Mae shall not be required to file a proof of claim, or take any other action in this Bankruptcy Case, to preserve any of its rights, claims, or defenses against the Debtor or any other person or entity, all of which are hereby expressly preserved and shall survive the entry of this Order and the effectiveness of the Prepackaged Plan.

26.    <u>Freddie Mac</u>:  Notwithstanding any other provision of this Order, the Prepackaged Plan, the Plan Supplement, the Exit Warehouse Facilities Documents, the Amended and Restated Credit Facility Documents, the Final DIP Order or any other order in the Chapter

52

11 Case,[7]  (1) Freddie Mac's rights, powers, prerogatives, remedies, payment or lien priorities, and claims against the Debtor, any non-Debtor affiliate (including Ditech) or any other person or entity under the Freddie Mac Master Agreement or the Freddie Mac Purchase Agreement shall not be impaired, released, modified, or limited in any respect, except as otherwise expressly agreed in writing by Freddie Mac; (2) no lien or security interest shall attach to, modify, prime, or otherwise affect (a) mortgage servicing rights with respect to mortgages which are now or hereafter serviced by Ditech (or any of its affiliates) for Freddie Mac, (b) the "Servicing Collateral" as defined and referenced in, and except as otherwise expressly authorized by, the Freddie Mac Acknowledgment Agreement, or (c) any cash, accounts, securities, or other collateral (and any proceeds thereof) pledged to Freddie Mac pursuant to any collateral pledge agreement or other security agreement between Ditech and Freddie Mac (including, without limitation, the Amended and Restated Collateral Pledge Agreement, dated as of January 17, 2014, between Freddie Mac and Ditech (the "Freddie Mac Pledge Agreement")); (3) the term of the Freddie Mac Acknowledgment Agreement shall remain unchanged, and any extension of the term or changes to other provisions of the Freddie Mac Acknowledgment Agreement must be expressly agreed to by the parties in a separate written agreement, (4) Freddie Mac does not, and shall not be deemed to, release any Released Party or any other person or entity from any claims or causes of action that it may have, nor shall Freddie Mac be enjoined from pursuing any such claims or causes of action; and (5) Freddie Mac shall not be required to file a proof of claim, or take any other action in this Bankruptcy Case, to preserve any of its rights, claims, or defenses

---

[7] Terms contained within this paragraph that are not otherwise defined shall have the meaning attributed to them in the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (A) Authorizing Debtor to Guarantee Warehouse Financing of Certain Non-Debtor Subsidiaries and Use Cash Collateral; (B) Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection; (D) Modifying Automatic Stay; and (E) Granting Related Relief (ECF No. 118) (the "**Final DIP Order**").

against the Debtor or any other person or entity, all of which are hereby expressly preserved and shall survive entry of this Order and the effectiveness of the Prepackaged Plan.

27.     <u>Professional Compensation</u>.    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtor, the U.S. Trustee, and counsel to the Requisite RSA Parties, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date.  Objections to any Fee Claims must be filed and served on counsel to the Debtor, counsel to the Requisite RSA Parties, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).  Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which a Final Order relating to any such Allowed Fee Claim is entered, in each case, or as soon as reasonably practicable thereafter, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor or the Reorganized Debtor, as applicable.  The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  On or about the date that is not later than the third Business Day prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of such Fee Claims to the Debtor or the Reorganized Debtor, counsel to the Consenting Term Lenders, and counsel to the Consenting Senior Noteholders, and the Debtor or Reorganized Debtor shall either escrow or separately reserve for and segregate such estimated amounts for the benefit of the holders of the

54

Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.

28.     <u>Discharge of Claims and Termination of Interests</u>.   Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided under the Prepackaged Plan or this Order, including with respect to Unimpaired Claims, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities that arose prior to the Effective Date.   Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor against the Debtor, the Reorganized Debtor, or any of its Assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

29.     <u>Release and Exculpation Provisions</u>.   All injunctions, releases, and exculpation provisions set forth in the Prepackaged Plan, including but not limited to those contained in Sections 10.5, 10.6 and 10.7 of the Prepackaged Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided therein, and as if fully set forth herein.

30.     <u>Retention of Causes of Action/Reservation of Rights</u>.   Except as otherwise provided in Section 10.6(a) of the Prepackaged Plan, nothing contained in the Prepackaged Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights,

Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor, other than the Released Parties. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced. Notwithstanding the foregoing, the Debtor and the Reorganized Debtor shall not retain any Claims or Causes of Action released pursuant to the Prepackaged Plan against the Released Parties or arising under chapter 5 of the Bankruptcy Code (except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise).

31.    <u>Limitation or Discharge and Modification of Automatic Stay and Injunction for Prepetition Actions</u>. Notwithstanding anything to the contrary in the Prepackaged Plan or this Order, any Priority Non-Tax Claims, Other Secured Claim, or General Unsecured Claim that has not been resolved or paid by the Debtor in the ordinary course, including paid in such amount as may be agreed by the party and the Reorganized Debtor, as of the date of this Order, shall not be discharged and shall be liquidated and paid in the ordinary course pursuant to Section 4.2, 4.3 or 4.4 of the Prepackaged Plan, respectively, subject to all defenses or disputes the Debtor or Reorganized Debtor may have with respect to such Claims which shall be retained

56

by the Reorganized Debtor.  Nothing in the Prepackaged Plan or in this Order shall affect in any respect the rights of any entity in respect of any complaint filed or action commenced against the Debtor prior to the Petition Date or that could have been filed or commenced against the Debtor prepetition (other than in respect of the Prepetition Credit Agreement), to prosecute such action in the court or tribunal in which such action was commenced on and after the Effective Date; *provided that,* the Debtor reserves the right to object to the validity, priority, or classification of such Claim or Interest.  To the extent that an entity is successful either in prosecuting such an action or settling such an action, such entity will be deemed to have an Allowed Claim or Allowed Interest, as the case may be, in the amount approved by final order of the applicable court, as applicable, as of the date of such settlement or successful prosecution of the action and shall be afforded the treatment set forth in the Prepackaged Plan, as applicable.  Notwithstanding any other provision in the Prepackaged Plan, as currently exists or as may be modified or amended, the release and the injunction in Sections 10.6(b) and 10.5 shall not apply to the non-derivative causes of action and claims for relief which are or may be asserted against any non-debtor defendant in the securities class action pending in the United States District Court for the Eastern District of Pennsylvania titled *Elkin v. Walter Investment Management Corp.*, et. al., No. 2:17-cv-02025-JCJ (the "**Elkin Class Action**") or the ability of the Plaintiffs in the Elkin Class Action to obtain discovery from the Debtors or the Reorganized Debtor post-confirmation.

32.    Survival of Debtor's Indemnification Obligations.  Pursuant to Section 8.5 of the Prepackaged Plan, any obligations of the Debtor pursuant to its corporate charters, bylaws, or other organizational documents to indemnify current and former officers, directors, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtor or such directors, officers, agents, and/or employees, based upon any act or omission for

57

or on behalf of the Debtor will not be discharged or impaired by confirmation of the Prepackaged Plan or the occurrence of the Effective Date. All such obligations will be deemed and treated as executory contracts assumed by the Debtor under the Prepackaged Plan and will continue as obligations of the Reorganized Debtor. In addition, after the Effective Date, the Reorganized Debtor will not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect as of the Petition Date, and all members, managers, directors and officers of the Debtor who served in such capacity at any time prior to the Effective Date will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date. On the Effective Date, all guarantees, indemnities, or other credit support provided by the Debtor in support of the primary obligations of its Affiliates or any other Entity shall be Unimpaired by the Prepackaged Plan and Reinstated to their position immediately prior to the Petition Date.

33.    <u>Insurance Policies</u>.  All insurance policies pursuant to which the Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Prepackaged Plan and shall be assumed by the Debtor and Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms. All other insurance policies shall vest in the Reorganized Debtor.

34.    <u>Intellectual Property Licenses and Agreements</u>.  All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtor has any rights or obligations in effect as of the date of this Order shall be deemed and treated as executory contracts pursuant to the Prepackaged Plan and shall be assumed by the Debtor and Reorganized Debtor and shall continue in full force and effect unless any such intellectual property contract,

58

license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtor in accordance with Section 8.1 of the Prepackaged Plan. Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtor and the Reorganized Debtor may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

35.    <u>Settlement with U.S. Trustee Regarding Certain Employee Matters</u>. Notwithstanding anything set forth in the Prepackaged Plan, the Plan Supplement, or in this Order to the contrary, this Order shall not authorize, or be deemed to authorize, the Debtor (or the Reorganized Debtor, as applicable) to enter into, or assume, key employee retention agreements or the Management Incentive Plan and confirmation of the Prepackaged Plan shall not be deemed to be approval of the key employee retention agreements or the Management Incentive Plan in any respect; provided that the foregoing shall not (i) prejudice or be deemed to prejudice the Reorganized Debtor's rights to consider or enter into the Employee Arrangements or the Management Incentive Plan after the Effective Date, or (ii) modify section 5.14(b) of the Prepackaged Plan.

36.    <u>Plan Implementation</u>.

(a)    In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction (collectively, the "**Reorganization Effectuation Statutes**"), without further action by the Bankruptcy Court or the equity holders, officers, or directors of any Debtor or Reorganized Debtor, the Debtor and the Reorganized Debtor, as well as the officers of the Debtor or Reorganized Debtor are authorized to: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate

59

the Prepackaged Plan, the Plan Supplement, the Plan Documents and Agreements, the Definitive Documents, this Order, and the transactions contemplated thereby or hereby, including, without limitation, the transactions identified in Article V of the Prepackaged Plan; and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate, and consummate the Prepackaged Plan and the Plan Supplement, including, without limitation, those contracts, instruments, releases, agreements and documents identified in Article V of the Prepackaged Plan.

(b)     Except as set forth in the Prepackaged Plan, all actions authorized to be taken pursuant to the Prepackaged Plan, the Plan Supplement, and the Plan Documents and Agreements including, without limitation, (i) the adoption or assumption, as appropriate, of any Executory Contracts, (ii) selection of directors and officers for the Reorganized Debtor, (iii) issuances and distributions of New Common Stock, and (iv) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Prepackaged Plan, including, without limitation, those contracts, instruments, releases, agreements and documents identified in Article V of the Prepackaged Plan, shall be effective prior to, on, or after the Effective Date pursuant to this Order, without further notice, application to, or order of this Bankruptcy Court, or further action by the respective managers, officers, directors, members or equity holders of the Debtor or Reorganized Debtor.

(c)     To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers or directors of any of the Debtor or Reorganized Debtor, this Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by

60

unanimous action of the directors, managers, members and equity holders of the appropriate Debtor or Reorganized Debtor, as applicable.

(d)    All such transactions effected by the Debtor during the pendency of the Chapter 11 Case from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

37.    <u>Payment of Statutory Fees</u>.    On the Effective Date and thereafter as may be required, the Reorganized Debtor shall pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case, or until such time as a final decree is entered closing the Debtor's case, a Final Order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtor's case is entered.

38.    <u>Documents, Mortgages, and Instruments</u>.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Prepackaged Plan (including but not limited to the Amended and Restated Credit Facility Documents, the Exit Warehouse Facilities Documents, the New Second Lien Notes Documents, the Amended Organizational Documents) and this Order.

39.    <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.    Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter

WEIL:\96402908\1\79607.0003

reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.    Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Prepackaged Plan or any amendments or modifications thereto.

40.    <u>Retention of Jurisdiction</u>.    On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Bankruptcy Court, except as otherwise provided in the Prepackaged Plan or in this Order, shall retain non-exclusive jurisdiction over all matters arising in, arising under and related to, the Chapter 11 Case including, but not limited to, jurisdiction over the matters set forth in Article XI of the Prepackaged Plan.

41.    <u>Modifications and Amendments</u>.    Subject to the terms of the Restructuring Support Agreements and the Master Refinancing Amendment, after entry of this Order, the Debtor may, upon order of the Court, amend, modify or supplement the Prepackaged Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.    In addition, after entry of this Order, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Prepackaged Plan and subject to the reasonable consent of the Requisite RSA Parties and the DIP Lenders, the Debtor may remedy any defect or omission or reconcile any inconsistencies in the Prepackaged

62

Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Prepackaged Plan, and any holder of a Claim or Interest that has accepted the Prepackaged Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

42.    <u>Provisions of Prepackaged Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  The provisions of the Prepackaged Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

43.    <u>Applicable Non-bankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Prepackaged Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

44.    <u>Waiver of Filings</u>.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Bankruptcy Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

45.    <u>Governmental Approvals Not Required</u>.  Without limiting any other part of this Order, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Prepackaged Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Prepackaged Plan and the Disclosure Statement.

46.     <u>Notice of Entry of Confirmation Order and Effective Date</u>.  On or before the fourteenth (14th) day following the date of entry of this Order, the Debtor shall serve notice of entry of this Order (which may be combined with the Notice of the Effective Date) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all known creditors and interest holders, the U.S. Trustee, and other parties in interest, by causing notice of entry of this Order (the "**Notice of Confirmation**"), to be delivered to such parties by first-class mail, postage prepaid. The Debtor shall also post the Notice of Confirmation on the website maintained by Prime Clerk, at https://cases.primeclerk.com/Walter/Home-Index (the "**Case Website**").  The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

47.     <u>Notice of Effective Date</u>.  On the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date ("**Notice of Effective Date**") with the Bankruptcy Court.  As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtor shall serve the Notice of Effective Date on all holders of Claims and Interests, the U.S. Trustee, and other parties in interest, by causing the Notice of Effective Date to be delivered to such parties by first-class mail.  The Reorganized Debtor shall also post the Notice of Effective Date on the Case Website.

48.     <u>Substantial Consummation</u>.  On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

49.     <u>Final Order</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

WEIL:\96402908\1\79607.0003

50.    <u>Inconsistency</u>.  To the extent of any inconsistency between this Order and the Prepackaged Plan, this Order shall govern; *provided that*, nothing in this Order shall be deemed to alter, modify, or amend Section 9.2 of the Prepackaged Plan.

51.    <u>No Stay of Confirmation</u>.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062, or otherwise.

52.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Prepackaged Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Prepackaged Plan is confirmed in its entirety and incorporated herein by this reference.

53.    <u>Closure of the Chapter 11 Case</u>.  As soon as practicable after the Effective Date, the Reorganized Debtor is authorized to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes and issues a final decree for each of the Chapter 11 Case.


Dated:  _____, 2018
         New York, New York

                                    _____
                                    HONORABLE JAMES L. GARRITY, JR.
                                    UNITED STATES BANKRUPTCY JUDGE


65

## Exhibit 1

**Amended Plan**

**<u>Exhibit A</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                                   :
                                                        :        **Chapter 11**
**WALTER INVESTMENT MANAGEMENT**         :
**CORP.,**                                              :        **Case No. 17-13446 (JLG)**
                                                        :
            Debtor.[1]                                  :
                                                        :
-------------------------------------------------------------x

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING DEBTOR'S (A) DISCLOSURE STATEMENT, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (C) FORM OF BALLOTS, AND (II) CONFIRMING AMENDED PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF WALTER INVESTMENT MANAGEMENT CORP. AND THE AFFILIATE CO-PLAN PROPONENTS

Walter Investment Management Corp. as debtor and debtor in possession in the

above-captioned chapter 11 case (the "**Debtor**" and, together with its non-debtor affiliates,

"**Walter**" or the "**Company**") and the Affiliate Co-Plan Proponents[2] as "proponents of the plan"

within the meaning of section 1129 of title 11 of the United States Code (the "**Bankruptcy**

**Code**") having proposed and filed (A) the *Prepackaged Chapter 11 Plan of Reorganization of*

*Walter Investment Management Corp. and the Affiliate Co-Plan Proponents* dated November 6,

2017 and filed with the Bankruptcy Court on November 30, 2017 (ECF No. 11) and the

*Amended Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management*

*Corp. and the Affiliate Co-Plan Proponents*, dated January 5, 2018 and filed with the Bankruptcy

Court (as the same has been or may be amended, modified, supplemented, or restated, the

---

[1] The last four digits of the Debtor's federal tax identification number are 0486. The location of the Debtor's corporate headquarters is 1100 Virginia Drive, Suite 100, Fort Washington, PA 19034.

[2] The Affiliate Co-Plan Proponents are Ditech, DF Insurance Agency LLC, Green Tree Credit LLC, Green Tree Credit Solutions LLC, Green Tree Insurance Agency of Nevada, Inc., Walter Management Holding Company LLC, Green Tree Servicing Corp., Mortgage Asset Systems, LLC, REO Management Solutions, LLC, RMS, and Walter Reverse Acquisition LLC.

"**Prepackaged Plan**"), a copy of which is annexed hereto as **Exhibit 1**,[3] and that certain supplement to the Prepackaged Plan, dated and filed with the Bankruptcy Court on December 22, 2017 (ECF No. 121) (as the documents contained therein have been or may be further amended or supplemented, the "**Plan Supplement**"), and (B) the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents*, dated November 6, 2017 and filed with the Bankruptcy Court on November 30, 2017 (ECF No. 12) (the "**Disclosure Statement**"); and the Bankruptcy Court having entered an order on December 7, 2017 (ECF No. 77) (the "**Scheduling Order**"), which (i) scheduled a combined hearing (the "**Combined Hearing**") to consider approval of the Disclosure Statement, the Debtor's solicitation procedures (the "**Solicitation Procedures**"), and the forms of ballots[4] (the "**Ballots**") transmitted to classes of Claims voting on the Prepackaged Plan, (ii) established procedures for objecting to approval of the Disclosure Statement, the Solicitation Procedures, and confirmation of the Prepackaged Plan, (iii) approved the form, manner, and sufficiency of notice of the Combined Hearing, which included, among other things, information with respect to the commencement of the above-captioned chapter 11 case (the "**Chapter 11 Case**"), (iv) scheduled the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") for January 8, 2018, (v) extended the time for the Debtor to file its schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules and SOFAs**"), and waived the requirement that the Debtor file the Schedules and SOFAs unless the Prepackaged Plan is not confirmed by January 29, 2018 at 1:00

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed in the Prepackaged Plan, or as the context otherwise requires.

[4] The forms were attached as Exhibits B, C-1, C-2, D-1, and D-2 to the motion to approve the Solicitation Procedures (ECF No. 6).

WEIL:\96402908\1\79607.0003

p.m. (Prevailing Eastern Time), and (vi) granted related relief; and the Ballots having been duly transmitted to holders of Class 4 Claims (Term Loan Claims), holders of Class 5 Claims (Senior Notes Claims), and holders of Class 6 Claims (Convertible Notes Claims), respectively, in compliance with the Solicitation Procedures as set forth in the *Declaration of Christine Pullo of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents*, filed on November 30, 2017 (ECF No. 13) (the "**Voting Certification**"); and the Ballots having been tabulated in the manner set forth in the Voting Certification and in compliance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 1007-1, 3017-1, 3018-1, 3018-2, 3020-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the Southern District of New York (the "**Local Rules**"), the Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York, as amended, effective December 1, 2009 (as adopted by General Order M-454) (the "**Guidelines**"), the Scheduling Order, and all other applicable laws, rules, and regulations; the Combined Hearing having been held before the Bankruptcy Court on January 12, 2018, after due and sufficient notice was given to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654 (Attn: Patrick Nash Jr., P.C. and Gregory Pesce, Esq.), as counsel to an ad hoc group of Consenting Term Lenders, (iv) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq. and Michelle McGreal, Esq.), as counsel to Credit Suisse AG, Cayman Islands Branch, as administrative agent under the Amended and Restated Credit Facility

3

Agreement, (v) Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067 (Attn:  Gregory A. Bray, Esq. and Haig M. Maghakian, Esq.), 28 Liberty Street, New York, NY 10005 (Attn: Dennis F. Dunne, Esq.), as counsel to an ad hoc group of Consenting Senior Noteholders, (vi) Pryor Cashman, 7 Times Square, New York, NY 10036 (Attn: Patrick Sibley, Esq., Seth H. Lieberman, Esq., and Matthew Silverman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, a national banking association, as successor trustee under the Prepetition Senior Notes Indenture, (vii) Thompson Hine, 335 Madison Avenue, 12th Floor, New York, NY 10017 (Attn: Curtis L. Tuggle, Esq.), as counsel to Wells Fargo Bank, National Association, as trustee under the Prepetition Convertible Notes Indenture, (viii) Alston & Bird LLP, 90 Park Avenue, New York, NY 10016 (Attn: Gerard S. Catalanello, Esq., Karen Gelernt, Esq., and James J. Vincequerra, Esq.), as counsel to Credit Suisse First Boston Mortgage Capital LLC, as administrative agent under the DIP Warehouse Facilities, (ix) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Sarah M. Ward, Esq. and Mark A. McDermott, Esq.), as counsel to certain DIP Lenders; (x) O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071 (Attn: Darren L. Patrick, Esq. and Steve Warren, Esq.), Two Embarcadero Center, 28th Floor, San Francisco, CA 94111 (Attn: Jennifer Taylor), as counsel to Fannie Mae; (xi) McKool Smith, 600 Travis Street, Suite 7000, Houston, TX 77002 (Attn: Paul D. Moak, Esq.), One Bryant Park, 47th Floor, New York, NY 10036 (Attn: Kyle A. Lonergan, Esq.), as counsel to Freddie Mac; (xii) Ginnie Mae, 451 Seventh Street SW, Washington, DC 20410 (Attn: Harlan Jones, Senior Account Executive); (xiii) the Securities and Exchange Commission; (xiv) the Internal Revenue Service; (xv) the United States Attorney's Office for the Southern District of New York;, and (xvi) all other parties-in-interest entitled to notice (collectively, the "**Master Service List**") in

WEIL:\96402908\1\79607.0003

accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, in each case established by the affidavits of service, mailing, and/or publication filed with the Bankruptcy Court, including (1) the *Affidavit of Service of Solicitation Materials Regarding Notice of the Combined Hearing*, dated December 1, 2017 (ECF No. 40); (2) the *Affidavit of Service Regarding the Scheduling Order* dated December 13, 2017 (ECF No. 87); (3) the *Affidavit of Publication* dated December 12, 2017 (ECF No. 81), (collectively, the "**Notice Affidavits**"), and such notice being sufficient under the circumstances and no further notice being required; and due notice of the Plan Supplement having been given to the Master Service List and all holders of Claims in Class 4 (Term Loan Claims), holders of Claims in Class 5 (Senior Notes Claims), and holders of Claims in Class 6 (Convertible Notes Claims) in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Procedures; and based upon and after full consideration of the entire record of the Combined Hearing, including (A) the Disclosure Statement, the Prepackaged Plan (including the Plan Supplement), and the Voting Certification; (B) the Debtor's *Memorandum of Law in Support of (I) Approval of (A) Disclosure Statement, (B) Solicitation of Votes and Voting Procedures, and (C) Form of Ballots, and (II) Confirmation of Amended Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents* dated January 5, 2018; (C) the *Declaration of David Coles in Support of Confirmation of the Prepackaged Plan* (the "**Coles Confirmation Declaration**"), dated January 5, 2018; the Declaration of James Page in Support of Confirmation of the Prepackaged Plan dated January 5, 2018, (the "**Page Declaration**", and collectively with the First Day Declaration,[5] the Coles Confirmation Declaration, and the Notice Affidavits, the "**Supporting**

---

[5] The "**First Day Declaration**" means the *Declaration of David Coles Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* (ECF No. 3), filed on November 30, 2017.

5

**Declarations**") and (D) the Notice Affidavits; and the Bankruptcy Court being familiar with the Disclosure Statement and the Prepackaged Plan and other relevant factors affecting the Debtor's Chapter 11 Case, and the Bankruptcy Court being fully familiar with, and having taken judicial notice of, the entire record of the Debtor's Chapter 11 Case; and upon the arguments of counsel and the evidence proffered and adduced at the Combined Hearing; and the Bankruptcy Court having found and determined that the Disclosure Statement and the Solicitation Procedures should be approved and the Prepackaged Plan should be confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Proska, C.J).   Approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Prepackaged Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Bankruptcy Court has jurisdiction to enter a final order with respect thereto. The Debtor is

6

an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor and the Affiliate Co-Plan Proponents are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    Chapter 11 Petition.  On November 30, 2017 (the "**Petition Date**"), the Debtor commenced with this Bankruptcy Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The Debtor is authorized to continue to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

D.    Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

E.    Burden of Proof.  The Debtor has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

F.    Adequacy of Disclosure Statement.  The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "**Securities Act**"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code)

7

with respect to the Debtor, the Prepackaged Plan, and the transactions contemplated therein, and (c) is approved in all respects.

        G.    <u>Solicitation</u>.    Prior to the Petition Date, the Debtor, through its administrative agent, Prime Clerk, LLC ("**Prime Clerk**"), caused the Prepackaged Plan, Disclosure Statement (which included as exhibits thereto, among other things, the Restructuring Support Agreements, the Restructuring Term Sheet, the Commitment Letter and New Facilities Warehouse Facilities Term Sheet, the Amended and Restated Credit Facility Agreement, the New Second Lien Term Sheet, the Mandatorily Convertible Preferred Stock Term Sheet, the Warrants Term Sheet, and a Liquidation Analysis (as each term is described in the Disclosure Statement), and the Ballots (collectively the "**Solicitation Package**"), to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Local Rules, the Scheduling Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations applicable to such solicitation.  As set forth in the Voting Certification, the Solicitation Package was transmitted to and served on all holders of Claims in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims), which are the only Classes of Claims entitled to vote to accept or reject the Prepackaged Plan, on November 6, 2017. *See Declaration of Christine Pullo of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Chapter 11 Plan of Reorganization of Walter Investment Management Corp. and the Affiliate Co-Plan Proponents* (ECF No. 13).  Each eligible holder of a Claim in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claim) received a Ballot.  The forms of the Ballots adequately addressed the particular needs of the Chapter 11 Case and were appropriate

8

for holders of Class 4 Claims (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 Claims (Convertible Notes Claims), as applicable. The instructions on the Ballots advised parties that for a Ballot to be counted, the Ballot must be properly executed, completed, and delivered to Prime Clerk so that it, or the Master Ballot transmitting such vote (as defined and described herein), was received by Prime Clerk no later than 5:00 p.m. (Prevailing Eastern Time) on November 28, 2017 (the "**Voting Deadline**"), unless such time was extended by the Debtor. As set out in the *Affidavit of Service of Solicitation* (ECF No. 40), certain ballots that were received after the Voting Deadline were accepted by the Debtor and tabulated by Prime Clerk. The period during which the Debtor solicited acceptances to the Prepackaged Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Prepackaged Plan and complied with the Guidelines. The Debtor was not required to solicit votes from the holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) (collectively, the "**Unimpaired Classes**"), as each such class is Unimpaired under the Prepackaged Plan. The Debtor also was not required to solicit votes from the holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) (the "**Non-Voting Impaired Class**") as each Class is deemed to reject the Prepackaged Plan. As described in and, as evidenced by, the Voting Certification and the Notice Affidavits, the transmittal and service of the Solicitation Package (all of the foregoing, the "**Solicitation**") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules,

9

the Local Rules, the Guidelines, the Scheduling Order, and any other applicable rules, laws, and regulations. The Exculpated Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

H.     Mailing and Publication of Combined Notice. On December 5, 2017, the Debtor caused to be mailed the *Notice of (I) Commencement of Case Under Chapter 11 of Walter Investment Management Corp., Summary of Prepackaged Plan of Reorganization and (II) Combined Hearing to Consider (A) Approval of the Disclosure Statement, (B) Approval of Solicitation Procedures and Forms of Ballots, and (C) Confirmation of the Prepackaged Plan and Related Matters* (ECF No. 30) (the "**Combined Notice**") to the Master Service List and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, and the Solicitation Procedures, and published a notice substantially similar to the Combined Notice in the New York Times and USA Today on December 8, 2017. *See* Notice Affidavits (ECF Nos. 79 and 80). The Debtor has given proper, adequate, and sufficient notice of the Combined Hearing, as required by Bankruptcy Rule 3017(a) and (d), Local Rule 3017-1, and the Scheduling Order. Proper, adequate, and sufficient notice of the Disclosure Statement, the Prepackaged Plan, and the deadlines for filing objections to the Disclosure Statement and Prepackaged Plan has been given to all known holders of Claims or Interests and all parties on the Master Service List, substantially in accordance with the Scheduling Order. No other or further notice was or shall be required.

I.     Tabulation Results. On November 30, 2017, the Debtor filed the Voting Certification (ECF No. 13) certifying the method and results of the Ballots tabulated for Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims).

10

As of the Voting Deadline, 100% in amount and 100% in number of holders of Claims in Class 4 (Term Loan Claims) that timely voted on the Prepackaged Plan voted to accept the Prepackaged Plan, 99.24% in amount and 96.84% in number of holders of Claims in Class 5 (Senior Notes Claims) that timely voted on the Prepackaged Plan voted to accept the Prepackaged Plan, and 99.99% in amount and 96.67% in number of holders of Claims in Class 6 (Convertible Notes Claims) that voted on the Prepackaged Plan voted to accept the Prepackaged Plan. Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, the Bankruptcy Court finds that Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) accepted the Prepackaged Plan. All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and all other applicable rules, laws and regulations.

J.    Plan Supplement.  On December 22, 2017, the Debtor filed the Plan Supplement, consisting of drafts of (A) (1) Amended Organizational Documents, (2) the Amended and Restated Credit Facility Agreement, (3) certain of the Exit Warehouse Facilities Documents, (4) Schedule of Rejected Contracts, (5) Notice of Initial Directors and Officers of Reorganized Debtor Pursuant to Bankruptcy Code Section 1129(a)(5) (ECF No. 121).   On January [●], 2018, the Debtor filed the Supplemental Plan Supplement, consisting of drafts of (B) (1) [●], (2) [●].  All such materials comply with the terms of the Prepackaged Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and all other applicable rules, laws, and regulations and no other or further notice is or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the

11

Prepackaged Plan.  The Debtor reserves the right to alter, amend, update, or modify the Plan Supplement prior to the Effective Date subject to the terms of this Order, the Restructuring Support Agreements, and the DIP Documents.

K.      <u>Modifications of the Prepackaged Plan</u>.  Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor and the Affiliate Co-Plan Proponents proposed certain modifications to the Prepackaged Plan as reflected herein and/or in modified or amended versions of the Prepackaged Plan and Plan Supplement filed with the Court prior to entry of this Order (collectively, the "**Plan Modifications**").  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (i) constitute material modifications of the Prepackaged under section 1127 of the Bankruptcy Code, (ii) cause the Prepackaged Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (iii) materially and adversely change the treatment of any Claims or Interests, (iv) require re-solicitation of any holders of Claims or Interests, or (v) require that any such holders be afforded an opportunity to change previously cast acceptances or rejections of the Prepackaged Plan.  Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Prepackaged Plan or who are conclusively presumed to have accepted the Prepackaged Plan are deemed to have accepted the Prepackaged Plan as modified by the Plan Modifications. No holder of a Claim that has voted to accept the Prepackaged Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

12

L.    Bankruptcy Rule 3016(a).  In accordance with Bankruptcy Rule 3016, the Prepackaged Plan is dated and identifies the Debtor and the Affiliate Co-Plan Proponents as proponents of the Prepackaged Plan.    The discharge, release, injunction and exculpation provisions of the Prepackaged Plan are set forth in bold, thereby complying with Bankruptcy Rule 3016(c).

## Compliance with Requirements of Section 1129 of Bankruptcy Code

M.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code and thereby satisfies section 1129(a)(1) of the Bankruptcy Code.  More particularly:

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).    In addition to Administrative Expense Claims (Section 2.1 of the Prepackaged Plan), Fee Claims (Section 2.2 of the Prepackaged Plan), Priority Tax Claims (Section 2.3 of the Prepackaged Plan), DIP Claims (Section 2.4 of the Prepackaged Plan), and Restructuring Expenses (Section 2.5 of the Prepackaged Plan), which need not be classified, Articles III and IV of the Prepackaged Plan classify ten (10) Classes of Claims and Interests of the Debtor.  The Claims or Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims or Interests created under the Prepackaged Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.  The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).    Articles III and IV of the Prepackaged Plan specify that holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured

13

Claims), and Class 8 (Intercompany Claims) are Unimpaired under the Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Prepackaged Plan designate holders of Claims and Interests in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims), Class 9 (Existing Equity Interests), and Class 10 (Other Interests) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)).   The Prepackaged Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of Prepackaged Plan (11 U.S.C. § 1123(a)(5)).   The Prepackaged Plan, including the various documents and agreements set forth in the Plan Supplement, provides adequate and proper means for the implementation of the Prepackaged Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including:  (i) all corporate action set forth in Article V of the Prepackaged Plan, including the adoption and filing of the Amended Organizational Documents pursuant to applicable law, (ii) the issuance of New Common Stock, (iii) issuance of the Mandatorily Convertible Preferred Stock, (iv) the issuance of the New Second Lien Notes and entry into the New Second Lien Notes Documents, (v) the issuance of the New Warrants, (vi) entry into the Amended and Restated Credit Facility

14

Documents, (vii) entry into the Exit Warehouse Facilities Documents, and (viii) provisions governing distributions under the Prepackaged Plan.

(f)    <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>.  The certificate of incorporation, articles of incorporation,  articles of amendment and restatement, bylaws, or similar governing document, as applicable, of the Debtor has been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities in accordance with section 1123(a)(6) of the Bankruptcy Code.

(g)    <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.    On December 22, 2017, the Debtor filed with the Court the Notice of Initial Directors and Officers of Reorganized Debtor Pursuant to Bankruptcy Code Section 1129(a)(5) (Docket No. 121) (as updated, modified or supplemented, the "**Notice of D&O**") as Exhibit E to the Plan Supplement, identifying the directors and officers who will serve in such capacity with respect to the Debtor. The Prepackaged Plan provisions governing the manner of selection of any officer, director, or manager under the Prepackaged Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

(h)    <u>Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>.  As contemplated by section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Articles III and IV of the Prepackaged Plan classify and describe the treatment for the Unimpaired Classes and Impaired Classes.

(i)    <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Article VIII of the Prepackaged Plan governing the assumption or rejection of executory contracts and unexpired

WEIL:\96402908\1\79607.0003

leases satisfies the requirements of sections 365(b) of the Bankruptcy Code and 1123(b)(2) of the Bankruptcy Code.

(j)    Retention of Causes of Action/Reservation of Rights (11 U.S.C. § 1123(b)(3)). Pursuant to Section 10.8 of the Prepackaged Plan and in compliance with section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise set forth in or released by the Prepackaged Plan, the Prepackaged Plan preserves the Debtor's rights, Claims, Causes of Action, rights of setoff or recoupment or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, and any other affirmative Causes of Action against parties with a relationship with the Debtor.

(k)    Modification of Rights (11 U.S.C. § 1123(b)(5)). The Prepackaged Plan modifies the rights of holders of Claims or Interests in Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), Class 6 (Convertible Notes Claims), Class 9 (Existing Equity Interests), and Class 10 (Other Interests), and leaves Unimpaired the rights of holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims).

(l)    Additional Prepackaged Plan Provisions (11 U.S.C. § 1123(b)(6)). The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and applicable law, including (a) the release, discharge, injunction and exculpation provisions set forth in Article X of the Prepackaged Plan, and (b) the exemption, pursuant to section 1145 of the Bankruptcy Code, of the offer, issuance, and distribution of New Common Stock, the New Second Lien Notes, the Mandatorily Convertible Preferred Stock, and the New Warrants, which will be freely tradable by the recipients thereof, subject to (i) the

16

provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) any restrictions on the transferability or ownership of the New Common Stock and the Mandatorily Convertible Preferred Stock contained in the Amended Organizational Documents, and (iv) applicable regulatory approval, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(m)    Debtor Is Not an Individual (11 U.S.C. § 1123(c)).  The Debtor is not an individual and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

(n)    Cure of Defaults (11 U.S.C. § 1123(d)).  Section 8.2 of the Prepackaged Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Prepackaged Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  The Debtor has paid or will pay valid cure amounts in the ordinary course.

N.    Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).
The Debtor has complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)    The Debtor is an eligible debtor under section 109 of the Bankruptcy Code;

(b)    The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)    The Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, Local Rules, the Guidelines,

the Scheduling Order, applicable non-bankruptcy law and all other applicable laws, rules, and regulations in transmitting the Prepackaged Plan, Plan Supplement, Disclosure Statement, Ballots and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan.

        O.    <u>Prepackaged Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtor has proposed the Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan), the Plan Supplement, and the Definitive Documents in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in the Chapter 11 Case.  The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan), the Plan Supplement, and the Definitive Documents were proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and to effectuate a successful reorganization of the Debtor.  The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan), the Plan Supplement, and the Definitive Documents were negotiated in good faith and at arm's length among the Debtor, the Requisite RSA Parties, the Affiliate Co-Plan Proponents, the Prepetition Administrative Agent, the DIP Lenders, and the Amended and Restated Credit Facility Agent.  Further, the Prepackaged Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Prepackaged Plan, supported by valuable consideration (including, but not limited to, consideration provided by the Affiliate Co-Plan Proponents), and necessary for the Debtor's successful reorganization.

P.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Chapter 11 Case, or in connection with the Prepackaged Plan and incident to the Chapter 11 Case, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Q.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The Prepackaged Plan provides that, from and after the Effective Date, the board of directors and officers of the Reorganized Debtor shall consist of those individuals listed in the Notice of D&O, which includes information about the directors' and officers' affiliations and constitutes adequate disclosure of such information. Except as set forth in the Prepackaged Plan, provisions regarding members of the Reorganized Debtor's board of directors shall be as set forth in the Amended Organizational Documents. Accordingly, the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against or Interests in the Debtor and with public policy.

R.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Prepackaged Plan does not provide for rate changes by any of the Reorganized Debtor. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Case.

S.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Prepackaged Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis included in the Disclosure Statement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of an impaired Claim or Interest either has accepted the Prepackaged Plan or will receive or retain under the Prepackaged Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the

19

amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

T.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).    Holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Revolving Loan Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims) are not Impaired under the Prepackaged Plan and are, therefore, conclusively presumed to have accepted the Prepackaged Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders (as defined in section 101(31) of the Bankruptcy Code) of the Debtor. Holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are deemed to have rejected the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Prepackaged Plan may be confirmed notwithstanding that holders of Interests in Class 9 (Existing Equity Interests) and Class 10 (Other Interest) are Impaired and are deemed to have rejected the Prepackaged Plan.

U.    Treatment of Administrative Expense Claims, Priority Tax Claims, DIP Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).    The treatment of Allowed Administrative Expense Claims (which include the DIP Claims and the Fee Claims) pursuant to Sections 2.1, 2.2, and 2.4 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Non-Tax Claims pursuant to Section 4.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to

20

Section 2.3 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

V.       Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims) and Class 6 (Convertible Notes Claims) are Impaired and each voted to accept the Prepackaged Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Prepackaged Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

W.       Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure Statement, the Coles Confirmation Declaration (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) together with the record of the Chapter 11 Case and the evidence presented at the Combined Hearing, establishes that the Prepackaged Plan is feasible, that there is a reasonable prospect of the Reorganized Debtor being able to meet its financial obligations under the Prepackaged Plan and its business in the ordinary course, that the incurrence of the obligations contemplated by the Prepackaged Plan will not result in the insolvency of the Debtor, and that confirmation of the Prepackaged Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

X.       Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Section 12.1 of the Prepackaged Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

WEIL:\96402908\1\79607.0003

Y.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 5.14 of the Prepackaged Plan provides that on the Effective Date, and subject to the limitations set forth in Section 5.14, the Reorganized Debtor shall be deemed to have assumed all employee compensation plans, Benefit Plans, employment agreements, offer letters, or award letters (collectively, the "**Employee Arrangements**"). Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

Z.    <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

AA.    <u>Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15))</u>. The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

BB.    <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Debtor is a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

CC.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. Class 9 (Existing Equity Interests) and Class 10 (Other Interests) are deemed to have rejected the Prepackaged Plan. Based upon the evidence proffered, adduced, and presented by the Debtor at the Combined Hearing, the Prepackaged Plan does not discriminate unfairly and is fair and equitable with respect to Class 9 (Existing Equity Interests) and Class 10 (Other Interests) as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Prepackaged Plan

22

may be confirmed notwithstanding the deemed rejection of the Prepackaged Plan by Class 9 (Existing Equity Interests) and Class 10 (Other Interests).

DD.    Only One Plan (11 U.S.C. § 1129(c)).  The Prepackaged Plan is the only plan filed in the Chapter 11 Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

EE.    Principal Purpose of Prepackaged Plan (11 U.S.C. § 1129(d)).    The principal purpose of the Prepackaged Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Prepackaged Plan on any such grounds.  The Prepackaged Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Bankruptcy Court in the Chapter 11 Case, including evidence presented at the Combined Hearing, the Debtor and the other Exculpated Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Prepackaged Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Prepackaged Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the

23

Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, Section 10.9 of the Prepackaged Plan, and the exculpation provisions set forth in Section 10.7 of the Prepackaged Plan.

GG.    Satisfaction of Confirmation Requirements.    Based upon the foregoing, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    Contribution of Affiliate Co-Plan Proponents.    As consideration for, among other things, the releases provided pursuant to the Prepackaged Plan and this Order, the Affiliate Co-Plan Proponents have agreed, for the benefit of the Debtor and the Debtor's Estate, to make the following contributions, among others, to enable the implementation of the Prepackaged Plan, such contributions being fundamentally necessary to the implementation of the Prepackaged Plan: (a) the Affiliate Co-Plan Proponents have consented to the treatment set forth in the Prepackaged Plan as applicable to them, (b) the Affiliate Co-Plan Proponents shall make or fund all payments required to be paid by the Debtor under the Prepackaged Plan on account of any Allowed Claims and the Affiliate Co-Plan Proponents have consented to the repayment of such intercompany transactions with consideration other than Cash, (c) the Affiliate Co-Plan Proponents shall make or fund all necessary disbursements on behalf of the Debtor in the ordinary course of business and the Affiliate Co-Plan Proponents have consented to the repayment of such intercompany transactions with consideration other than Cash, (d) in relation to the Amended and Restated Credit Facility Agreement, the Affiliate Co-Plan Proponents have agreed to enter into guarantees in support of the Debtor's obligations thereunder and shall, pursuant to the Prepackaged Plan, grant Liens over their assets in support of, and to the

24

extent set forth in, such guarantees; and (e) in relation to the New Second Lien Notes Indenture, the Affiliate Co-Plan Proponents have agreed to enter into guarantees in support of the Debtor's obligations thereunder and shall, pursuant to the Prepackaged Plan, grant Liens over all or substantially all of their assets in support of such guarantee.

II.    <u>Implementation</u>. All documents and agreements necessary to implement the Prepackaged Plan, including the documents contained in and contemplated by the Plan Supplement, the Definitive Documents, and all other relevant and necessary documents and agreements that are necessary to implement the Prepackaged Plan, the Plan Supplement and the Definitive Documents are essential elements of the Prepackaged Plan (collectively, the "**Plan Documents and Agreements**"), consummation of each such Plan Document and Agreement is in the best interests of the Debtor, the Debtor's Estate and holders of Claims and Interests, and such Plan Documents and Agreements are hereby approved.    The Debtor has exercised reasonable business judgment in determining to enter into the Plan Documents and Agreements, and the Plan Documents and Agreements have been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

JJ.    <u>Executory Contracts and Unexpired Leases</u>.    The Debtor has exercised reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to Article VIII of the Prepackaged Plan.    Each assumption of an executory contract or unexpired lease pursuant to Article VIII of the Prepackaged Plan shall be legal, valid, and binding upon the Debtor or Reorganized Debtor and its successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or

25

unexpired lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Order.  Moreover, the Debtor has cured, or provided adequate assurance that the Debtor or Reorganized Debtor or its successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Prepackaged Plan.  The rejection of the contracts set out in the Schedule of Rejected Contracts, Exhibit D to the Plan Supplement, was in the proper exercise of the Debtor's business judgment and the best interests of the Debtor's Estate.

KK.    <u>Injunction, Exculpation, and Releases</u>.    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Prepackaged Plan, releases, and exculpation set forth in in the Prepackaged Plan, including in Sections 10.5, 10.6 and 10.7 of the Prepackaged Plan, respectively.  As has been established here based upon the record in the Chapter 11 Case and the evidence presented at the Combined Hearing, such provisions (i) were given in exchange for good and valuable consideration, (ii) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Prepackaged Plan, as provided in section 1123 of the Bankruptcy Code, (iii) confer substantial benefits on the Debtor's Estate, (iv) are fair, equitable and reasonable, (v) are in the best interests of the Debtor, its Estate, and parties in interest, and (vi) failure to implement the injunctions, exculpation, and releases would seriously jeopardize the Debtor's ability to confirm and implement the Prepackaged Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions, releases, and exculpation set forth in the Prepackaged Plan and implemented by this

26

Order are fair, equitable, reasonable, and in the best interest of the Debtor, the Reorganized Debtor and its Estate, creditors and equity holders and supported by adequate consideration.

(a)    The releases contained in Section 10.6(b) of the Prepackaged Plan are consensual because they are provided only by the (i) holders of Impaired Claims who voted to accept the Prepackaged Plan, (ii) the Consenting Term Lenders and the Consenting Senior Noteholders, (iii) any Significant Equity Holder, and (iv) with respect to any Entity in the foregoing clauses (i) through (iii), such Entity's Related Parties.

(b)    The releases contained in section 10.6(c) of the Prepackaged Plan are limited to releases by holders of Claims in Class 4 (Term Loan Claims) and Class 5 (Senior Notes Claims) against the Affiliate Co-Plan Proponents for liability relating to the Prepetition Credit Agreement, the Prepetition Senior Notes Indenture, or agreements related thereto and satisfy the legal standard of approval of such third party releases established by *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136, 142 (2d Cir. 2005). Such releases are non-consensual only as to the Term Loan Lenders and the holders of Senior Unsecured Notes who are not parties to the Restructuring Support Agreements.

(c)    The releases granted by the Debtor and its Estate under the Prepackaged Plan represent a valid exercise of the Debtor's business judgment.

(d)    The exculpations granted under the Prepackaged Plan are reasonable in scope and do not relieve any party of liability for an act or omission to the extent such act or omission is the result of willful misconduct or gross negligence.

(e)    The record of the Combined Hearing and the Chapter 11 Case is sufficient to support the injunctions, releases, and exculpation provided for in the Prepackaged Plan, including Sections 10.5, 10.6 and 10.7 of the Prepackaged Plan. Accordingly, based upon the

27

record of the Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Combined Hearing, the injunctions, exculpation, and releases set forth in Article X of the Prepackaged Plan are consistent with the Bankruptcy Code and applicable law and are approved.

LL.    <u>Good Faith</u>.    The Debtor and the Released Parties have been and will be acting in good faith if they proceed to (i) consummate the Prepackaged Plan and the agreements, settlements, transactions and transfers contemplated thereby and (ii) take the actions authorized and directed by this Order.

MM.    <u>Exit Warehouse Facilities Agreements</u>.    The Exit Warehouse Facilities Agreements are the best financing alternative available to the Debtor.    The availability of the Exit Warehouse Facilities is necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor and its affiliates.    On the Effective Date, in accordance with, and subject to, the terms and conditions of the Exit Warehouse Facilities Documents, the Debtor, subject to the Amended and Restated Credit Facility Agreement, will act as guarantor under the New Forward Origination Facility Agreement,  the New Reverse Mortgage Facility Agreement,  and the MSFTAs (as defined in the DIP Warehouse Master Refinancing Amendment), as well as limited guarantor with respect to Ditech's obligations under certain receivables sale agreements required to implement structured financing of Ditech's advance receivables (the "**Limited RSA Guaranties**"), without the need for any further corporate action and without further action by the holders of Claims or Interests.    The terms of the (a) Exit Warehouse Facilities, and (b) the Exit Warehouse Facilities Documents, to the extent the Reorganized Debtor is a party thereto, are fair and reasonable.    The decision by the Debtor to provide a guarantee thereunder, (i) reflects the Debtor's exercise of proper business judgment

28

that is consistent with the Debtor's fiduciary duties, (ii) is supported by reasonably equivalent value and fair consideration, and (iii) is in the best interests of the Estate and its creditors.  The execution, delivery, or performance by the Debtor of its guaranties of the New Forward Origination Facility Agreement, the New Reverse Mortgage Facility Agreement, and the MSFTAs, as well as the Limited RSA Guaranties, without the need for any further corporate action, and without further action by the holders of Claims or Interests, is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order.   The financial accommodations to be extended pursuant to the Debtor's guaranty under the New Forward Origination Facility Agreement, the New Reverse Mortgage Facility Agreement, and the MSFTAs, and pursuant to the Limited RSA Guaranties, are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.  The Exit Warehouse Facilities Document, to the extent the Reorganized Debtor is a party thereto, are hereby approved and shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor enforceable in accordance with their terms.

NN.   Amended and Restated Credit Facility.  The incurrence of indebtedness under, and the granting of security interests pursuant to, the Amended and Restated Credit Facility Agreement is in the best interests of the Reorganized Debtor and necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor, and constitutes reasonably equivalent value and fair consideration.  The terms and conditions of the Amended and Restated Credit Facility, as set forth in the Amended and Restated Credit Facility Documents, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment

29

consistent with its fiduciary duties, were negotiated at arm's length and in good faith and without intent to hinder, delay or defraud any creditor of the Debtor, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtor's Estate and its creditors.  The execution, delivery, or performance by the Debtor or Reorganized Debtor, as the case may be, of the Amended and Restated Credit Facility Documents and any other documents in connection with the Amended and Restated Credit Facility and compliance by the Debtor or Reorganized Debtor, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order.  The financial accommodations to be extended pursuant to the Amended and Restated Credit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual, or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable nonbankruptcy law.   The Debtor has provided sufficient and adequate notice of Amended and Restated Credit Facility Documents to all parties in the Chapter 11 Case.

OO.    New Second Lien Notes.  The incurrence of indebtedness under, and the granting of the security interests pursuant to, the New Second Lien Notes is in the best interests of the Reorganized Debtor and necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor, and constitutes reasonably equivalent value and fair consideration.  The terms and conditions of the New Second Lien Notes, as set forth in the New Second Lien Notes Documents, are fair and reasonable, reflect the Debtor's exercise of prudent

WEIL:\96402908\1\79607.0003

business judgment consistent with its fiduciary duties, were negotiated at arm's length and in good faith and without intent to hinder, delay or defraud any creditor of the Debtor, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtor's Estate and its creditors. The execution, delivery, or performance by the Debtor or Reorganized Debtor, as the case may be, of the New Second Lien Notes Documents and any other documents in connection with the New Second Lien Notes and compliance by the Debtor or Reorganized Debtor, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order. The financial accommodations to be extended pursuant to the New Second Lien Notes Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, and shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual, or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable law. The Debtor has provided sufficient and adequate notice of the New Second Lien Notes Documents to all parties in the Chapter 11 Case.

PP.    New Intercreditor Agreement. On the Effective Date, the Amended and Restated Credit Facility Agent and the New Second Lien Notes Trustee shall enter into the New Intercreditor Agreement. Each lender under the Amended and Restated Credit Facility and each holder of the New Second Lien Notes shall be deemed to have directed the Amended and Restated Credit Facility Agent or the New Second Lien Notes Trustee, as applicable, to execute the New Intercreditor Agreement and shall be bound to the terms of the New Intercreditor Agreement from and after the Effective Date as if it were a signatory thereto.

31

QQ.    _Amended Organizational Documents_.  The Amended Organizational Documents are necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtor.  The terms of the Amended Organizational Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtor's Estate and its creditors.  The Amended Organizational Documents are the result of good faith, arm's-length negotiations among the Debtor and the Requisite RSA Parties, are appropriate and consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, Bankruptcy Code sections 1123, 1129, and 1142, and are necessary to the Debtor's successful emergence from chapter 11.  The execution, delivery, or performance by the Debtor or Reorganized Debtor, as the case may be, of any documents in connection with the Amended Organizational Documents and compliance by the Debtor or Reorganized Debtor, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Order.  The Amended Organizational Documents are hereby approved and shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor enforceable in accordance with their terms.

RR.    _Exemption from Securities Laws_. The offer, issuance, and distribution of the New Common Stock, New Second Lien Notes, Mandatorily Convertible Preferred Stock, and New Warrants to holders of Senior Notes Claims, Convertible Notes Claims or holders Existing Equity Interests, as applicable, under Sections 4.5 and 4.6, and 4.7 respectively, of the Prepackaged Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (a) the Securities Act, as amended,

32

and all rules and regulations promulgated thereunder, and (b) any state or local law requiring registration for the offer, issuance, or distribution of securities. The New Common Stock, New Second Lien Notes, Mandatorily Convertible Preferred Stock, and New Warrants will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments, (iii) the restrictions, if any, on the transferability or ownership of the New Common Stock and Mandatorily Convertible Preferred Stock contained in the Amended Organizational Documents, and (iv) applicable regulatory approval.  All securities described above were (or are designated to be) offered, distributed and sold pursuant to the Prepackaged Plan.

SS.    <u>Conditions Precedent to Confirmation and Effective Date</u>.  The conditions precedent to the confirmation of the Prepackaged Plan and the Effective Date, set forth in Section 9.1 and 9.2, of the Prepackaged Plan may be waived in writing by the Debtor with the prior written consent of the Requisite RSA Parties and the DIP Lenders without leave of or order of the Bankruptcy Court.

TT.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court may properly, and upon the Effective Date shall, retain non-exclusive jurisdiction over all matters arising in, arising under, and related to, the Chapter 11 Case, including the matters set forth in Article XI of the Prepackaged Plan and section 1142 of the Bankruptcy Code.

UU.    <u>Waiver of Stay</u>.  Given the facts and circumstances of the Chapter 11 Case, it is appropriate that this Order shall not be stayed pursuant to Bankruptcy Rules 3020(e),

33

6004(g), 6006(d), or 7062, and the Confirmation Order shall take effect immediately upon its entry.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.     _Findings of Fact and Conclusions of Law_.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.     _Combined Notice_.  The Combined Notice complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code; the Bankruptcy Rules, the Guidelines, the Local Rules, and applicable non-bankruptcy law.

3.     _Solicitation_.  The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, the Guidelines, and applicable non-bankruptcy law.

4.     _Ballots_.  The forms of Ballots annexed to the Scheduling Motion are adequate and appropriate, are in compliance with Bankruptcy Rule 3018(c), substantially conform to Official Form B 314 and are approved in all respects.

WEIL:\96402908\1\79607.0003

5.      <u>Solicitation of Disclosure Statement</u>.    The Disclosure Statement (a) contains adequate information of a kind that is consistent with the disclosure requirements of applicable non-bankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Prepackaged Plan, and the transactions contemplated therein, and (c) is approved in all respects.    To the extent that the Debtor's solicitation was deemed to constitute an offer of new securities, such Solicitation is exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act.    Specifically, section 4(a)(2) and Regulation D of the Securities Act creates an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering."    15 U.S.C. § 77d(a)(2).    The Debtor has complied with the requirements of section 4(a)(2) and Regulation D of the Securities Act as the prepetition solicitation of acceptances would constitute a private placement of securities.    The solicitation was made only to those holders of Class 4 (Term Loan Claims), Class 5 (Senior Notes Claims), and Class 6 (Convertible Notes Claims) who are "Accredited Investors" (within the meaning of rule 501(a) of Regulation D of the Securities Act), as creditors were required to certify on their Ballots that they belonged to such category. Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtor's prepetition solicitation.

6.      <u>Confirmation of Prepackaged Plan</u>.    The Prepackaged Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in or contemplated by the Prepackaged Plan, including, without limitation, the Plan Supplement and Definitive Documents, are hereby authorized and approved

WEIL:\96402908\1\79607.0003

(to the extent the Debtor is a party thereto).  The terms of the Prepackaged Plan are incorporated by reference into and are an integral part of this Order.

7.      Objections.  All objections to confirmation of the Prepackaged Plan and other responses or reservation of rights with respect to confirmation of the Prepackaged Plan or the Plan Supplement (i) have been withdrawn, waived, or otherwise resolved by the Debtor prior to entry of this Order, or (ii) to the extent that any objections (including any reservations of rights contained therein) to confirmation of the Prepackaged Plan or the Plan Supplement or other responses or reservation of rights with respect to confirmation of the Prepackaged Plan or the Plan Supplement have not been withdrawn prior to entry of this Order, such objections shall be, and hereby are, overruled on the merits.

8.      Binding Effect.  As of the Effective Date, the Prepackaged Plan and this Order shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, whether or not any such holders were (a) Impaired or Unimpaired under the Prepackaged Plan, (b) deemed to accept or reject the Prepackaged Plan, (c) failed to vote to accept or reject the Prepackaged Plan, or (d) voted to reject the Prepackaged Plan.

9.      Free and Clear.  On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Prepackaged Plan, this Order, the Exit Warehouse Facilities Documents, the Amended and Restated Credit Facility Documents, and the New Second Lien Notes Documents.  On and after the Effective Date, the Reorganized Debtor may take any action, including, without limitation, the operation of its business, the use, acquisition, sale, lease and disposition of property and the entry into transactions, agreements, understandings, or

36

arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided in this Order or the Prepackaged Plan.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.    Approval of the Amended Organizational Documents. The Amended Organizational Documents are hereby approved. The Debtor and the Reorganized Debtor, as applicable, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments, and certificates relating to the Amended Organizational Documents, including the Registration Rights Agreement, and take such other actions as reasonably deemed necessary to perform their obligations thereunder.  On the Effective Date, Reorganized Debtor and all of the holders of New Common Stock, Mandatorily Convertible Preferred Stock, and the New Warrants shall be deemed to be parties to the Registration Rights Agreement without the need for execution by any such holder.  The Registration Rights Agreement shall be binding on Reorganized Debtor and all parties receiving, and all holders of, New Common Stock, Mandatorily Convertible Preferred Stock and the New Warrants; *provided, that*, regardless of whether such parties execute the Registration Rights Agreement, such parties will be deemed to have signed the Registration Rights Agreement, which shall be as binding on such parties as if they had actually signed it.

WEIL:\96402908\1\79607.0003

11.    <u>Designation of Directors and Officers Approved</u>. On the Effective Date, the initial board of directors and officers of the Reorganized Debtor shall consist of those individuals identified in the Notice of D&O, and such directors and officers shall be deemed elected or appointed (as applicable) and authorized to serve as directors or officers of the Reorganized Debtor pursuant to the terms of the Amended Organizational Documents.  Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtor and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court, the Reorganized Debtor or its security holders.

12.    <u>DIP Claims</u>.  On the Effective Date, subject to the satisfaction or waiver of all conditions precedent to effectiveness herein and in the DIP Warehouse Master Refinancing Amendment, the DIP Guaranties shall terminate, and the DIP Lenders will receive among other things, the payment of the Exit Warehouse Facilities Fees, and the Exit Guarantees shall become effective.

13.    <u>Amended and Restated Credit Facility Approved</u>.

(a)    On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the Amended and Restated Credit Facility Agreement, the Amended and Restated Credit Facility Documents and all related documents. All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)    The Bankruptcy Court hereby (i) approves the Amended and Restated Credit Facility, the Amended and Restated Credit Facility Agreement and the Amended and Restated Credit Facility Documents and all transactions contemplated thereby and thereof, and

38

all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders and administrative agent), losses, damages, indemnities and other amounts provided for by Amended and Restated Credit Facility Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into, deliver and fully perform its obligations under the Amended and Restated Credit Facility Documents, as well as any notes, documents or agreements contemplated thereby, including, without limitation, any documents required in connection with the creation, continuation, or perfection of Liens, mortgages, or other security interests contemplated thereby.

(c)    Upon their execution, the Amended and Restated Credit Facility Documents shall constitute legal, valid, binding and authorized debt obligations of the Reorganized Debtor, and the terms and provisions set forth in the Amended and Restated Credit Facility Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Amended and Restated Credit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, and are reasonable, and shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable nonbankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

WEIL:\96402908\1\79607.0003

(d)    On the Effective Date, all Liens, mortgages, deeds of trust, pledges and other security interests securing the obligations arising under the Amended and Restated Credit Facility Agreement and the other Amended and Restated Credit Facility Documents that were Collateral securing the Term Loan Claims as of the Commencement Date are unaltered by the Prepackaged Plan, and all such Liens, mortgages, deeds of trust, pledges and other security interests are continued and perfected with respect to the Amended and Restated Credit Facility Documents to the same extent, in the same manner and on the same terms and priorities as they were with respect to the Term Loan Claims, except as the foregoing may be modified pursuant to the Amended and Restated Credit Facility Documents and the New Intercreditor Agreement.

(e)    On the Effective Date, all of the Liens, mortgages, deeds of trust, pledges and other security interests to be granted in accordance with the Amended and Restated Credit Facility Documents (i) shall be deemed to be approved and granted in good faith, for good and valuable consideration, for reasonably equivalent value, and for legitimate business purposes as an inducement to lenders to extend credit thereunder and are reasonable, (ii) shall be valid, legal, binding, and enforceable Liens on, and security interests in, the collateral granted under and in accordance with the terms of the respective Amended and Restated Credit Facility Documents, (iii) shall be deemed fully perfected on the Effective Date to the extent required by the Amended and Restated Credit Facility Documents, and the priorities of such Liens, mortgages, deeds of trust and other security interests shall be as set forth in the respective Amended and Restated Credit Facility Documents and the New Intercreditor Agreement, and (iv) shall not be subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) or any other challenge for any purposes whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent conveyances or

40

other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtor, the Reorganized Debtor and the secured parties (and their designees and agents) under such Amended and Restated Credit Facility Documents are hereby authorized to make, and to the extent contemplated by the Amended and Restated Credit Facility Documents, the Debtor, the Reorganized Debtor and their respective affiliates shall make, all filings and recordings, and to obtain all governmental approvals and consents to evidence, establish, continue and perfect all such Liens, mortgages, deeds of trust and other security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Prepackaged Plan and this Order (it being understood that perfection of the Liens, mortgages, deeds of trust and other security interests granted under the Amended and Restated Credit Facility Documents shall occur automatically on the Effective Date by virtue of the entry of this Order, and any such filings, recordings, approvals and consents shall not be necessary or required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens, mortgages, deeds of trust and other security interests to third parties. For purposes of all mortgages and deposit account control agreements that secured the obligations arising under the Prepetition Credit Agreement, the Amended and Restated Credit Facility Agreement is deemed an amendment and restatement of the Prepetition Credit Agreement, and such mortgages and control agreements shall survive the Effective Date, shall not be cancelled, and shall continue to secure the Amended and Restated Credit Facility Agreement, except as expressly set forth in the Amended and Restated Credit Facility Agreement. The Reorganized Debtor shall be authorized to execute, deliver, and enter into and perform under the Amended and Restated Credit Facility Documents without the need for any further corporate action and without further action by the

41

holders of Claims or Interests.  On the Effective Date, all letters of credit and similar forms of credit support funded directly or indirectly by the revolver commitments under the Prepetition Credit Agreement will be refinanced in full.

14.    Exit Warehouse Facilities Approved.

(a)    On the Effective Date, the Reorganized Debtor shall execute and deliver, to the extent the Reorganized Debtor is a party thereto, the Exit Warehouse Facility Agreements, and all related documents, including the Exit Warehouse Facilities Documents.  All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)    The Bankruptcy Court hereby approves (i) to the extent the Reorganized Debtor is a party thereto, the Exit Warehouse Facilities, the Exit Warehouse Facilities Agreements and the Exit Warehouse Facilities Documents and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders), losses, damages, indemnities and other amounts provided for by the Exit Warehouse Facilities Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into and fully perform its obligations under the Exit Warehouse Facilities Agreements Documents (to the extent the Reorganized Debtor is a party thereto).

(c)    Upon their execution, to the extent the Reorganized Debtor is a party thereto, the Exit Warehouse Facilities Documents shall constitute legal, valid, binding and

WEIL:\96402908\1\79607.0003

authorized debt obligations of the Reorganized Debtor, and the terms and provisions set forth in the Exit Warehouse Facilities Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Warehouse Facilities Documents are being extended, and shall be deemed to have been extended, to the extent the Reorganized Debtor is a party thereto, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

15.    New Second Lien Notes Approved.

(a)    On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the New Second Lien Notes Indenture, the New Second Lien Notes Documents, and all related documents, including the New Second Lien Notes. All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)    The Bankruptcy Court hereby (i) approves the New Second Lien Notes, the New Second Lien Notes Indenture, and the New Second Lien Notes Documents, and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the noteholders and indenture trustee), losses, damages, indemnities and other amounts provided for by New Second Lien Notes Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy

43

Court and without the need for any further corporate or shareholder action, to enter into, deliver and fully perform its obligations under the New Second Lien Notes Documents, as well as any notes, documents or agreements contemplated thereby, including, without limitation, any documents required in connection with the creation, continuation, or perfection of Liens, mortgages, or other security interests contemplated thereby.

(c)    Upon their execution, the New Second Lien Notes Documents shall constitute legal, valid, binding and authorized debt obligations of the Reorganized Debtor, and the terms and provisions set forth in the New Second Lien Notes Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Second Lien Notes Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, and are reasonable, and shall not be subject to challenge, avoidance, recharacterization or subordination (whether equitable, contractual or otherwise) for any purpose whatsoever under the Bankruptcy Code or any other applicable nonbankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

(d)    On the Effective Date, all of the Liens, mortgages, deeds of trust, pledges and other security interests to be granted in accordance with the New Second Lien Notes Documents (i) shall be deemed to be approved and granted in good faith, for good and valuable consideration, for reasonably equivalent value, and for legitimate business purposes as an inducement to noteholders to extend credit thereunder and are reasonable, (ii) shall be valid, legal, binding, and enforceable Liens on, and security interests in, the collateral granted under and in accordance with the terms of the respective New Second Lien Notes Documents, (iii) shall

44

be deemed fully perfected on the Effective Date to the extent required by the New Second Lien
Notes Documents, and the priorities of such Liens, mortgages, deeds of trust and other security
interests shall be as set forth in the respective New Second Lien Notes Documents and the New
Intercreditor Agreement, and (iv) shall not be subject to avoidance, recharacterization, or
subordination (whether equitable, contractual or otherwise) or any other challenge for any
purposes whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law and shall
not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the
Bankruptcy Code or any applicable non-bankruptcy law.  The Debtor, the Reorganized Debtor
and the secured parties (and their designees and agents) under such New Second Lien Notes
Documents are hereby authorized to make, and to the extent contemplated by the New Second
Lien Notes Documents, the Debtor, the Reorganized Debtor and their respective affiliates shall
make, all filings and recordings, and to obtain all governmental approvals and consents to
evidence, establish, continue and perfect all such Liens, mortgages, deeds of trust and other
security interests under the provisions of the applicable state, provincial, federal or other law
(whether domestic or foreign) that would be applicable in the absence of the Prepackaged Plan
and this Order (it being understood that perfection of the Liens, mortgages, deeds of trust and
other security interests granted under the New Second Lien Notes Documents shall occur
automatically on the Effective Date by virtue of the entry of this Order, and any such filings,
recordings, approvals and consents shall not be necessary or required), and will thereafter
cooperate to make all other filings and recordings that otherwise would be necessary under
applicable law to give notice of such Liens, mortgages, deeds of trust and other security interests
to third parties.  The Reorganized Debtor shall be authorized to execute, deliver, and enter into

45

and perform under the New Second Lien Notes Documents without the need for any further corporate action and without further action by the holders of Claims or Interests.

16.    <u>New Warrants Approved</u>.

(a)    On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the New Warrant Agreements, and all related documents (the "**New Warrant Documents**"). All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)    The Bankruptcy Court hereby (i) approves the New Warrants, the New Warrant Agreements, the New Warrant Documents, and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders), losses, damages, indemnities and other amounts provided for by the New Warrant Documents Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into and fully perform their obligations under the New Warrant Documents.

17.    Upon their execution, the New Warrant Documents shall constitute legal, valid, binding and authorized debt obligations of each of the Reorganized Debtor, and the terms and provisions set forth in the New Warrant Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Warrant Documents are being extended, and shall be deemed to have been extended, in good faith, for

46

legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

18.    Mandatorily Convertible Preferred Stock Approved

(a)    On the Effective Date, the Reorganized Debtor shall execute and deliver, as applicable, the Articles Supplementary for the Mandatorily Convertible Preferred Stock, and all related documents (the "**Mandatorily Convertible Preferred Stock Documents**"). All such documents (including the schedules thereto) are incorporated in the Prepackaged Plan and this Order by reference, and shall become effective in accordance with their terms and the Prepackaged Plan.

(b)    The Bankruptcy Court hereby (i) approves the Mandatorily Convertible Preferred Stock, Articles Supplementary for the Mandatorily Convertible Preferred Stock and the Mandatorily Convertible Preferred Stock Documents and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor contemplated thereby, including the payment of all other fees and expenses (including payment of legal fees and expenses of counsel to the lenders), losses, damages, indemnities and other amounts provided for by the Mandatorily Convertible Preferred Stock Documents, and (ii) authorizes the Reorganized Debtor, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into and fully perform their obligations under the Mandatorily Convertible Preferred Stock Documents.

WEIL:\96402908\1\79607.0003

19.     Upon their execution, the Mandatorily Convertible Preferred Stock Documents shall constitute legal, valid, binding and authorized debt obligations of each of the Reorganized Debtor, and the terms and provisions set forth in the Mandatorily Convertible Preferred Stock Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Mandatorily Convertible Preferred Stock Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

20.     Issuance of New Common Stock, Mandatorily Convertible Preferred Stock and the New Warrants.  On the Effective Date, the Debtor or Reorganized Debtor, as applicable, are authorized to issue or cause to be issued and shall issue the New Common Stock, the Mandatorily Convertible Preferred Stock, and the New Warrants in accordance with the terms of the Prepackaged Plan without the need for any further corporate or shareholder action. All of the New Common Stock, Mandatorily Convertible Preferred Stock and New Warrants, issuable under the Prepackaged Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.

21.     Cancellation of Liens.  Except as otherwise specifically provided in the Prepackaged Plan, including with respect to the Amended and Restated Credit Facility Agreement, upon the Effective Date, any Lien securing a Secured Claim shall be deemed released, and the holder of such Secured Claim (or any agent for such holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any Cash

48

collateral) held by such holder and to take such actions as may be requested by the Debtor, Reorganized Debtor, or applicable administrative agent to cancel, extinguish, and release such Liens, if they have been or will be satisfied or discharged in full pursuant to the Prepackaged Plan. Upon the payment or other satisfaction of an Allowed Other Secured Claim, the holder of such Allowed Other Secured Claim shall deliver to the Debtor or Reorganized Debtor (as applicable) any Collateral or other property of the Debtor held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

22. <u>Assumption of Contracts and Leases</u>.  Pursuant to Article VIII of the Prepackaged Plan, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure amount then due, payment of any applicable Cure amount then due, all executory contracts and unexpired leases to which the Debtor is a party, and which have not expired by their own terms on or prior to the Confirmation Date, including the Employee Arrangements (subject to Section 5.14 of the Prepackaged Plan), shall be deemed assumed except for any executory contract or unexpired lease that (a) previously has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (b) is the subject of a separate (i) assumption motion filed by the Debtor or (ii) rejection motion filed by the Debtor under section 365 of the Bankruptcy Code before the Confirmation Date, (c) is identified for rejection on the schedule of rejected contracts annexed to the Plan Supplement, or (d) is the subject of a pending Cure Dispute.  Subject to the occurrence of the Effective Date, entry of this Order by the Bankruptcy Court shall constitute approval of the assumptions provided for in the Prepackaged Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the

49

Bankruptcy Court that the Reorganized Debtor has provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed pursuant to the Prepackaged Plan shall vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provision of the Prepackaged Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

23.    Cure Notice.    On December 22, 2017, the Debtor filed and served the *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtor and Related Procedures* (the "**Cure Notice**") (ECF No. 122) notifying counterparties of the Debtor's intention to assume their contract or unexpired lease with the Debtor in connection with the Prepackaged Plan except as provided in section 8.14 of the Prepackaged Plan. Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease within ten (10) days of the service thereof, shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease, (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Prepackaged Plan, (iii) increase, accelerate, or otherwise alter any obligations or liabilities of the Debtor or the Reorganized Debtor under such executory contract or unexpired lease, or (iv) create or impose a Lien upon any property or Asset of the Debtor or the Reorganized Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or

50

unexpired lease pursuant to the Prepackaged Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in Section 8.2 of the Prepackaged Plan**Error! Reference source not found.**, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Prepackaged Plan.

24.    <u>Rejection of Contracts and Unexpired Leases</u>.    Subject to the occurrence of the Effective Date, entry of this Order by the Bankruptcy Court shall constitute approval of the rejection of the executory contracts and unexpired leases identified in the Schedule of Rejected Contracts exhibited to the Plan Supplement pursuant to section 365(a) and 1123 of the Bankruptcy Code.

25.    <u>Fannie Mae:</u>    Notwithstanding any other provision of this Order, the Prepackaged Plan, the Plan Supplement, the Exit Warehouse Facilities Documents, the Amended and Restated Credit Facility Documents, the DIP Orders or any other order in the Chapter 11 Case,[6] (1) Fannie Mae's rights, powers, prerogatives, remedies, payment or lien priorities, and claims against the Debtor, any non-Debtor affiliate (including Ditech and RMS) or any other person or entity under the Fannie Mae Lender Contracts (including, without limitation, any guaranty by the Debtor of the obligations thereunder) shall not be impaired, released, modified, or limited in any respect, except as otherwise expressly agreed in writing by Fannie Mae; (2) no

---

[6] Terms contained within this paragraph that are not otherwise defined shall have the meaning attributed to them in the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (A) Authorizing Debtor to Guarantee Warehouse Financing of Certain Non-Debtor Subsidiaries and Use Cash Collateral; (B) Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection; (D) Modifying Automatic Stay; and (E) Granting Related Relief (ECF No. 118) (the "**Final DIP Order**").

WEIL:\96402908\1\79607.0003

lien or security interest shall attach to, modify, prime or otherwise affect (a) mortgage servicing rights with respect to mortgages which are now or hereafter serviced by Ditech or RMS (or any of their affiliates) for Fannie Mae, except as otherwise expressly authorized by Fannie Mae pursuant to the applicable Fannie Mae Acknowledgment Agreement, (b) any other rights related to the Fannie Mae Lender Contracts including the "Purchased Servicing Advance Receivables" as defined and referenced in, and except as otherwise expressly authorized by, the Fannie Mae Acknowledgment Agreements, or (c) any cash, accounts, securities, or other collateral (and any proceeds thereof) pledged to Fannie Mae pursuant to any collateral pledge agreement or other security agreement between Ditech and Fannie Mae (including the Collateral as defined in that certain Pledge and Security Agreement in favor of Fannie Mae dated as of December 19, 2014 (as amended, the "Pledge Agreement"); (3) the term of Fannie Mae Acknowledgment Agreements shall remain unchanged, and any extension of the term or changes to other provisions of the Fannie Mae Acknowledgment Agreements must be expressly agreed to by the parties in a separate written agreement, (4) Fannie Mae does not, and shall not be deemed to, release any Released Party or any other person or entity from any claims or causes of action that it may have, nor shall Fannie Mae be enjoined from pursuing any such claims or causes of action; and (5) Fannie Mae shall not be required to file a proof of claim, or take any other action in this Bankruptcy Case, to preserve any of its rights, claims, or defenses against the Debtor or any other person or entity, all of which are hereby expressly preserved and shall survive the entry of this Order and the effectiveness of the Prepackaged Plan.

26.    <u>Freddie Mac</u>:    Notwithstanding any other provision of this Order, the Prepackaged Plan, the Plan Supplement, the Exit Warehouse Facilities Documents, the Amended and Restated Credit Facility Documents, the Final DIP Order or any other order in the Chapter

52

11 Case,[7] (1) Freddie Mac's rights, powers, prerogatives, remedies, payment or lien priorities,

and claims against the Debtor, any non-Debtor affiliate (including Ditech) or any other person or

entity under the Freddie Mac Master Agreement or the Freddie Mac Purchase Agreement shall

not be impaired, released, modified, or limited in any respect, except as otherwise expressly

agreed in writing by Freddie Mac; (2) no lien or security interest shall attach to, modify, prime,

or otherwise affect (a) mortgage servicing rights with respect to mortgages which are now or

hereafter serviced by Ditech (or any of its affiliates) for Freddie Mac, (b) the "Servicing

Collateral" as defined and referenced in, and except as otherwise expressly authorized by, the

Freddie Mac Acknowledgment Agreement, or (c) any cash, accounts, securities, or other

collateral (and any proceeds thereof) pledged to Freddie Mac pursuant to any collateral pledge

agreement or other security agreement between Ditech and Freddie Mac (including, without

limitation, the Amended and Restated Collateral Pledge Agreement, dated as of January 17,

2014, between Freddie Mac and Ditech (the "Freddie Mac Pledge Agreement")); (3) the term of

the Freddie Mac Acknowledgment Agreement shall remain unchanged, and any extension of the

term or changes to other provisions of the Freddie Mac Acknowledgment Agreement must be

expressly agreed to by the parties in a separate written agreement, (4) Freddie Mac does not, and

shall not be deemed to, release any Released Party or any other person or entity from any claims

or causes of action that it may have, nor shall Freddie Mac be enjoined from pursuing any such

claims or causes of action; and (5) Freddie Mac shall not be required to file a proof of claim, or

take any other action in this Bankruptcy Case, to preserve any of its rights, claims, or defenses

---

[7] Terms contained within this paragraph that are not otherwise defined shall have the meaning attributed to them in the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (A) Authorizing Debtor to Guarantee Warehouse Financing of Certain Non-Debtor Subsidiaries and Use Cash Collateral; (B) Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection; (D) Modifying Automatic Stay; and (E) Granting Related Relief (ECF No. 118) (the "**Final DIP Order**").

WEIL:\96402908\1\79607.0003

against the Debtor or any other person or entity, all of which are hereby expressly preserved and shall survive entry of this Order and the effectiveness of the Prepackaged Plan.

        27.   <u>Professional Compensation</u>.   All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtor, the U.S. Trustee, and counsel to the Requisite RSA Parties, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date.  Objections to any Fee Claims must be filed and served on counsel to the Debtor, counsel to the Requisite RSA Parties, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).  Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which a Final Order relating to any such Allowed Fee Claim is entered, in each case, or as soon as reasonably practicable thereafter, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor or the Reorganized Debtor, as applicable.  The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  On or about the date that is not later than the third Business Day prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of such Fee Claims to the Debtor or the Reorganized Debtor, counsel to the Consenting Term Lenders, and counsel to the Consenting Senior Noteholders, and the Debtor or Reorganized Debtor shall either escrow or separately reserve for and segregate such estimated amounts for the benefit of the holders of the

54

Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.

28.     <u>Discharge of Claims and Termination of Interests</u>.   Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided under the Prepackaged Plan or this Order, including with respect to Unimpaired Claims, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities that arose prior to the Effective Date.   Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor against the Debtor, the Reorganized Debtor, or any of its Assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

29.     <u>Release and Exculpation Provisions</u>.   All injunctions, releases, and exculpation provisions set forth in the Prepackaged Plan, including but not limited to those contained in Sections 10.5, 10.6 and 10.7 of the Prepackaged Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided therein, and as if fully set forth herein.

30.     <u>Retention of Causes of Action/Reservation of Rights</u>.   Except as otherwise provided in Section 10.6(a) of the Prepackaged Plan, nothing contained in the Prepackaged Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights,

WEIL:\96402908\1\79607.0003

Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor, other than the Released Parties.  The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced.  Notwithstanding the foregoing, the Debtor and the Reorganized Debtor shall not retain any Claims or Causes of Action released pursuant to the Prepackaged Plan against the Released Parties or arising under chapter 5 of the Bankruptcy Code (except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise).

31.     <u>Limitation or Discharge and Modification of Automatic Stay and Injunction for Prepetition Actions</u>.  Notwithstanding anything to the contrary in the Prepackaged Plan or this Order, any Priority Non-Tax Claims, Other Secured Claim, or General Unsecured Claim that has not been resolved or paid by the Debtor in the ordinary course, including paid in such amount as may be agreed by the party and the Reorganized Debtor, as of the date of this Order, shall not be discharged and shall be liquidated and paid in the ordinary course pursuant to Section 4.2, 4.3 or 4.4 of the Prepackaged Plan, respectively, subject to all defenses or disputes the Debtor or Reorganized Debtor may have with respect to such Claims which shall be retained

56

by the Reorganized Debtor.  Nothing in the Prepackaged Plan or in this Order shall affect in any respect the rights of any entity in respect of any complaint filed or action commenced against the Debtor prior to the Petition Date or that could have been filed or commenced against the Debtor prepetition (other than in respect of the Prepetition Credit Agreement), to prosecute such action in the court or tribunal in which such action was commenced on and after the Effective Date; *provided that,* the Debtor reserves the right to object to the validity, priority, or classification of such Claim or Interest.  To the extent that an entity is successful either in prosecuting such an action or settling such an action, such entity will be deemed to have an Allowed Claim or Allowed Interest, as the case may be, in the amount approved by final order of the applicable court, as applicable, as of the date of such settlement or successful prosecution of the action and shall be afforded the treatment set forth in the Prepackaged Plan, as applicable.  Notwithstanding any other provision in the Prepackaged Plan, as currently exists or as may be modified or amended, the release and the injunction in Sections 10.6(b) and 10.5 shall not apply to the non-derivative causes of action and claims for relief which are or may be asserted against any non-debtor defendant in the securities class action pending in the United States District Court for the Eastern District of Pennsylvania titled *Elkin v. Walter Investment Management Corp.*, et. al., No. 2:17-cv-02025-JCJ (the "**Elkin Class Action**") or the ability of the Plaintiffs in the Elkin Class Action to obtain discovery from the Debtors or the Reorganized Debtor post-confirmation.

32.    Survival of Debtor's Indemnification Obligations.  Pursuant to Section 8.5 of the Prepackaged Plan, any obligations of the Debtor pursuant to its corporate charters, bylaws, or other organizational documents to indemnify current and former officers, directors, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtor or such directors, officers, agents, and/or employees, based upon any act or omission for

57

or on behalf of the Debtor will not be discharged or impaired by confirmation of the Prepackaged Plan or the occurrence of the Effective Date.  All such obligations will be deemed and treated as executory contracts assumed by the Debtor under the Prepackaged Plan and will continue as obligations of the Reorganized Debtor.  In addition, after the Effective Date, the Reorganized Debtor will not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect as of the Petition Date, and all members, managers, directors and officers of the Debtor who served in such capacity at any time prior to the Effective Date will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.  On the Effective Date, all guarantees, indemnities, or other credit support provided by the Debtor in support of the primary obligations of its Affiliates or any other Entity shall be Unimpaired by the Prepackaged Plan and Reinstated to their position immediately prior to the Petition Date.

33.    <u>Insurance Policies</u>.  All insurance policies pursuant to which the Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Prepackaged Plan and shall be assumed by the Debtor and Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.  All other insurance policies shall vest in the Reorganized Debtor.

34.    <u>Intellectual Property Licenses and Agreements</u>.  All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtor has any rights or obligations in effect as of the date of this Order shall be deemed and treated as executory contracts pursuant to the Prepackaged Plan and shall be assumed by the Debtor and Reorganized Debtor and shall continue in full force and effect unless any such intellectual property contract,

58

license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtor in accordance with Section 8.1 of the Prepackaged Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtor and the Reorganized Debtor may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

35.    <u>Settlement with U.S. Trustee Regarding Certain Employee Matters</u>. Notwithstanding anything set forth in the Prepackaged Plan, the Plan Supplement, or in this Order to the contrary, this Order shall not authorize, or be deemed to authorize, the Debtor (or the Reorganized Debtor, as applicable) to enter into, or assume, key employee retention agreements or the Management Incentive Plan and confirmation of the Prepackaged Plan shall not be deemed to be approval of the key employee retention agreements or the Management Incentive Plan in any respect; provided that the foregoing shall not (i) prejudice or be deemed to prejudice the Reorganized Debtor's rights to consider or enter into the Employee Arrangements or the Management Incentive Plan after the Effective Date, or (ii) modify section 5.14(b) of the Prepackaged Plan.

36.    <u>Plan Implementation</u>.

(a)    In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction (collectively, the "**Reorganization Effectuation Statutes**"), without further action by the Bankruptcy Court or the equity holders, officers, or directors of any Debtor or Reorganized Debtor, the Debtor and the Reorganized Debtor, as well as the officers of the Debtor or Reorganized Debtor are authorized to: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate

59

the Prepackaged Plan, the Plan Supplement, the Plan Documents and Agreements, the Definitive Documents, this Order, and the transactions contemplated thereby or hereby, including, without limitation, the transactions identified in Article V of the Prepackaged Plan; and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate, and consummate the Prepackaged Plan and the Plan Supplement, including, without limitation, those contracts, instruments, releases, agreements and documents identified in Article V of the Prepackaged Plan.

(b)    Except as set forth in the Prepackaged Plan, all actions authorized to be taken pursuant to the Prepackaged Plan, the Plan Supplement, and the Plan Documents and Agreements including, without limitation, (i) the adoption or assumption, as appropriate, of any Executory Contracts, (ii) selection of directors and officers for the Reorganized Debtor, (iii) issuances and distributions of New Common Stock, and (iv) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Prepackaged Plan, including, without limitation, those contracts, instruments, releases, agreements and documents identified in Article V of the Prepackaged Plan, shall be effective prior to, on, or after the Effective Date pursuant to this Order, without further notice, application to, or order of this Bankruptcy Court, or further action by the respective managers, officers, directors, members or equity holders of the Debtor or Reorganized Debtor.

(c)    To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers or directors of any of the Debtor or Reorganized Debtor, this Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by

60

unanimous action of the directors, managers, members and equity holders of the appropriate Debtor or Reorganized Debtor, as applicable.

(d)    All such transactions effected by the Debtor during the pendency of the Chapter 11 Case from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

37.    <u>Payment of Statutory Fees</u>.  On the Effective Date and thereafter as may be required, the Reorganized Debtor shall pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case, or until such time as a final decree is entered closing the Debtor's case, a Final Order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtor's case is entered.

38.    <u>Documents, Mortgages, and Instruments</u>.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Prepackaged Plan (including but not limited to the Amended and Restated Credit Facility Documents, the Exit Warehouse Facilities Documents, the New Second Lien Notes Documents, the Amended Organizational Documents) and this Order.

39.    <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.    Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter

reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.    Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Prepackaged Plan or any amendments or modifications thereto.

40.    <u>Retention of Jurisdiction</u>.    On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Bankruptcy Court, except as otherwise provided in the Prepackaged Plan or in this Order, shall retain non-exclusive jurisdiction over all matters arising in, arising under and related to, the Chapter 11 Case including, but not limited to, jurisdiction over the matters set forth in Article XI of the Prepackaged Plan.

41.    <u>Modifications and Amendments</u>.    Subject to the terms of the Restructuring Support Agreements and the Master Refinancing Amendment, after entry of this Order, the Debtor may, upon order of the Court, amend, modify or supplement the Prepackaged Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.    In addition, after entry of this Order, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Prepackaged Plan and subject to the reasonable consent of the Requisite RSA Parties and the DIP Lenders, the Debtor may remedy any defect or omission or reconcile any inconsistencies in the Prepackaged

62

Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Prepackaged Plan, and any holder of a Claim or Interest that has accepted the Prepackaged Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

42.    <u>Provisions of Prepackaged Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  The provisions of the Prepackaged Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

43.    <u>Applicable Non-bankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Prepackaged Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

44.    <u>Waiver of Filings</u>.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Bankruptcy Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

45.    <u>Governmental Approvals Not Required</u>.  Without limiting any other part of this Order, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Prepackaged Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Prepackaged Plan and the Disclosure Statement.

46.    <u>Notice of Entry of Confirmation Order and Effective Date</u>.  On or before the fourteenth (14th) day following the date of entry of this Order, the Debtor shall serve notice of entry of this Order (which may be combined with the Notice of the Effective Date) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all known creditors and interest holders, the U.S. Trustee, and other parties in interest, by causing notice of entry of this Order (the "**Notice of Confirmation**"), to be delivered to such parties by first-class mail, postage prepaid. The Debtor shall also post the Notice of Confirmation on the website maintained by Prime Clerk, at https://cases.primeclerk.com/Walter/Home-Index (the "**Case Website**").  The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

47.    <u>Notice of Effective Date</u>.  On the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date ("**Notice of Effective Date**") with the Bankruptcy Court.  As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtor shall serve the Notice of Effective Date on all holders of Claims and Interests, the U.S. Trustee, and other parties in interest, by causing the Notice of Effective Date to be delivered to such parties by first-class mail.  The Reorganized Debtor shall also post the Notice of Effective Date on the Case Website.

48.    <u>Substantial Consummation</u>.  On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

49.    <u>Final Order</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

64

50.    <u>Inconsistency</u>.  To the extent of any inconsistency between this Order and the Prepackaged Plan, this Order shall govern; *provided that*, nothing in this Order shall be deemed to alter, modify, or amend Section 9.2 of the Prepackaged Plan.

51.    <u>No Stay of Confirmation</u>.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062, or otherwise.

52.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Prepackaged Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Prepackaged Plan is confirmed in its entirety and incorporated herein by this reference.

53.    <u>Closure of the Chapter 11 Case</u>.  As soon as practicable after the Effective Date, the Reorganized Debtor is authorized to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes and issues a final decree for each of the Chapter 11 Case.


Dated:  _____, 2018
        New York, New York

                        _____
                        HONORABLE JAMES L. GARRITY, JR.
                        UNITED STATES BANKRUPTCY JUDGE

WEIL:\96402908\1\79607.0003

## **Exhibit 1**

**Amended Plan**